UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

**Jerry Rodriguez**,

        Plaintiff,

v.

**Remy Coeytaux**,

        Defendant.

Case No. 3:25-cv-225

## FIRST AMENDED COMPLAINT

Under the law of Texas, a person who aids or abets another person's self-managed abortion commits the crime of murder and can be sued for wrongful death. *See* Texas Penal Code § 1.07; *id.* at § 19.02; *id.* at § 19.06 (murder statute); Tex. Civ. Prac. & Rem. Code § 71.001 *et seq.* (wrongful-death statute). It is also a state jail felony for anyone other than a Texas-licensed physician to provide an abortion-inducing drug for the purpose of inducing an abortion. *See* Tex. Health & Safety Code § 171.063(a); Tex. Health & Safety Code § 171.065(a).

In violation of these and many other laws, defendant Remy Coeytaux mailed abortion-inducing drugs into Texas that were used to murder Jerry Rodriguez's unborn child. Mr. Rodriguez sues to recover damages from Coeytaux for this wrongful death. Mr. Rodriguez also seeks an injunction to stop Coeytaux from distributing abortion-inducing drugs in violation of Texas law. *See* Tex. Health & Safety Code § 171A.101.

### JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367, as the parties are diverse and the amount in controversy exceeds $75,000.00.

2. The Court has personal jurisdiction over defendant Coeytaux because he purposefully and knowingly mailed abortion-inducing drugs into Texas in violation of state law, and Mr. Rodriguez's claim arises out of those minimum contacts with the forum state.

3. Venue is proper in this district and division because a substantial part of the events giving rise to the claims occurred in the Galveston Division of the Southern District of Texas. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff Jerry Rodriguez is a citizen of Texas.

5. Defendant Remy Coeytaux is a citizen of California, where he operates a solo medical practice.

## STATEMENT OF FACTS

6. Plaintiff Jerry Rodriguez began dating Kendal Garza in June of 2024.

7. In July of 2024, Kendal became pregnant with Mr. Rodriguez's child.

8. Although Kendal was happy about the pregnancy and told Mr. Rodrigez that she planned to give birth, her estranged husband (Adam Garza) was displeased and wanted the baby murdered. Kendal had legally separated from Adam years before she started dating Mr. Rodriguez but had not yet divorced him.

9. On September 16, 2024, at 9:10 p.m. central time, Adam Garza ordered abortion-inducing drugs online from Coeytaux with the intent of using them to murder Mr. Rodriguez's unborn child. A Venmo receipt confirming Adam's purchase of the drugs from Coeytaux is attached as Exhibit 1. The receipt indicates that the drugs were purchased for $150.00 from "Remy Coeytaux MD PC" and describes the purchase as "'Aed axes Kendal Garza.'" The first two words ("Aed axes") are homophones for "Aid Access," an organization that illegally ships abortion-inducing drugs into jurisdictions where abortion has been outlawed. Payment was made with a Visa Debit

card whose last four digits are 1012. The payment was remitted to a Venmo account with the handle "@RemyCoeytaux."

10. After receiving this order, Coeytaux shipped the abortion-inducing drugs to Adam Garza's house in Galveston County, Texas.

11. On September 19, 2024, Kendal Garza used the drugs that Adam had purchased from Coeytaux to kill the unborn child that she conceived with Mr. Rodriguez. Kendal told Mr. Rodriguez that Adam Garza provided her with the abortion drugs, and that Adam pressured her to kill the baby with the drugs obtained from Coeytaux. Kendal ingested the abortion-inducing drugs and killed Mr. Rodriguez's unborn child at her mother's house in Galveston County. Kendal was more than 10 weeks pregnant when she took the pills.

12. In late October 2024, Kendal became pregnant for a second time with Mr. Rodriguez's child. Kendal was again happy about the pregnancy and told Mr. Rodrigez that she planned to give birth to their child, a son. On January 18, 2025, Kendal and Mr. Rodriguez together went to a doctor's appointment and were provided with sonograms of the baby boy, which are attached as Exhibit 2.

13. But later in January Kendal killed Mr. Rodriguez's unborn son with abortion pills that were illegally obtained and provided by Adam Garza. This time Kendal took the abortion-inducing drugs at Adam's house in Galveston County. Kendal proceeded with this self-managed abortion even though she was nearly three months pregnant and even though Mr. Rodriguez pleaded with her not to do it. After the abortion, Kendal texted Mr. Rodriguez and told him that she had to cut the baby boy's umbilical cord and bury him (although she did not say where).

## CLAIM FOR RELIEF NO. 1 — WRONGFUL DEATH

14. The wrongful-death statute allows surviving parents to sue those who cause the death of an unborn child by a wrongful act, neglect, carelessness, unskillfulness,

or default. *See* Tex. Civ. Prac. & Rem. Code § 71.002(b) ("A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."); Tex. Civ. Prac. & Rem. Code § 71.001(4) ("'Individual' includes an unborn child at every stage of gestation from fertilization until birth.").

15. Defendant Coeytaux caused the death of Mr. Rodriguez's unborn child through his wrongful acts, which violated the law in each of the following respects:

16. Section 171.063(a)(1) of the Texas Health and Safety Code prohibits anyone other than a Texas-licensed physician from providing abortion-inducing drugs to a pregnant woman for the purpose of inducing an abortion. *See* Tex. Health & Safety Code § 171.063(a) ("A person may not knowingly provide an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion in the pregnant woman or enabling another person to induce an abortion in the pregnant woman unless: (1) the person who provides the abortion-inducing drug is a physician"). A violation of section 171.063(a)(1) is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux is not a Texas-licensed physician, so he violated section 171.063(a)(1) by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.063(a)(1) because Coeytaux knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

17. Section 171.063(a)(2) of the Texas Health and Safety Code prohibits individuals from providing abortion-inducing drugs to a pregnant woman for the purpose of abortion unless they comply with the protocols in subchapter D of chapter 171 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code § 171.063(a) ("A person may not knowingly provide an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion in the pregnant woman or enabling another

person to induce an abortion in the pregnant woman unless: . . . (2) the provision of the abortion-inducing drug satisfies the protocol authorized by this subchapter"). A violation of section 171.063(a)(2) is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux violated section 171.063(a)(2) by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.063(a)(2) because he knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

18.  Section 171.0631 of the Texas Health and Safety Code prohibits any person from providing abortion-inducing drugs to a pregnant woman without complying with the informed-consent requirements of subchapter B of chapter 171 of the Texas Health and Safety Code, which include a mandatory ultrasound. *See* Tex. Health & Safety Code § 171.0631 ("A person may not provide an abortion-inducing drug to a pregnant woman without satisfying the applicable informed consent requirements of Subchapter B."). A violation of section 171.0631 is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux violated section 171.0631 by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.0631 because he knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

19.  Section 171.003 of the Texas Health and Safety Code prohibits anyone other than a Texas-licensed physician to perform abortions. *See* Tex. Health & Safety Code § 171.003 ("An abortion may be performed only by a physician licensed to practice medicine in this state."). Coeytaux is not a Texas-licensed physician, and he performed an abortion in violation of section 171.003 by arranging for the delivery and provision

of the abortion pills that Kendal Garza used in her self-managed abortion. Coeytaux further violated section 171.003 by knowingly aiding an illegal self-managed abortion in Texas. *See* Tex. Penal Code § 7.02.

20. Section 171.011 of the Texas Health and Safety Code prohibits any person from performing an abortion without complying with the informed-consent requirements of subchapter B of chapter 171 of the Texas Health and Safety Code, which include a mandatory ultrasound. *See* Tex. Health & Safety Code § 171.011 ("A person may not perform an abortion without the voluntary and informed consent of the woman on whom the abortion is to be performed."). Coeytaux performed an abortion in violation of section 171.011 by arranging for the delivery and provision of the abortion pills that Kendal Garza used in her self-managed abortion, which did not comply with the mandatory ultrasound and other statutory informed-consent requirements in Texas law. Coeytaux has further violated section 171.011 by aiding an illegal self-managed abortion in Texas without complying with the mandatory ultrasound and other statutory informed-consent requirements.

21. Chapter 245 of the Texas Health and Safety Code requires abortions in Texas to be performed in licensed abortion facilities (subject to exceptions not applicable here). *See* Tex. Health & Safety Code § 245.002(2) ("'Abortion facility' means a place where abortions are performed."); *id.* at § 245.003(a) ("Except as provided by Section 245.004, a person may not establish or operate an abortion facility in this state without an appropriate license issued under this chapter."). Coeytaux violated chapter 245 of the Texas Health and Safety Code by performing and assisting an abortion that took place outside a licensed abortion facility.

22. Federal law imposes criminal liability on any person who:

    a. Knowingly uses the mails for the mailing, carriage, or delivery of abortion-inducing drugs;

  b. Knowingly uses any express company, common carrier, or interactive computer service for carriage of abortion-inducing drugs in interstate or foreign commerce; or

  c. Knowingly takes or receives abortion-inducing drugs from an express company, a common carrier, or an interactive computer service.

18 U.S.C. §§ 1461–1462. Coeytaux violated these federal criminal laws by sending abortion-inducing drugs into Texas with the intent of aiding an illegal abortion.

  23. Articles 4512.1–4512.6 of the Texas Revised Civil Statutes make abortion a felony criminal offense unless the life of the mother is endangered. Violations of articles 4512.1–4512.6 are punishable by two to five years imprisonment. Coeytaux violated articles 4512.1–4512.6 by performing or assisting an abortion in Texas that was not needed to save the life of the mother.

  24. Section 170A.002 of the Texas Health and Safety Code also makes abortion a felony criminal offense unless the abortion is performed to avert the risk of death or a serious risk of substantial impairment of a major bodily function. *See* Tex. Health & Safety Code § 170A.002. Violations of section 170A.002 are punishable by five to 99 years imprisonment. *See* Tex. Penal Code § 12.32. Coeytaux violated section 170A.002 by performing or assisting an abortion in Texas that was not needed to avert the risk of death or a serious risk of substantial impairment of a major bodily function.

  25. Aiding or abetting another person's self-managed abortion in Texas is an act of murder. *See* Texas Penal Code § 1.07; *id*. at § 19.02; *id*. at § 19.06 (murder statute). Although Kendal Garza cannot be charged with murder for her role in killing her unborn child,[1] her immunity does not shield Coeytaux from liability for aiding or abetting or directly participating in the murder. *See* Tex. Penal Code § 7.03 ("In a

---

1. *See* Texas Penal Code § 19.06 ("This chapter does not apply to the death of an unborn child if the conduct charged is: (1) conduct committed by the mother of the unborn child").

prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense: (1) that the actor belongs to a class of persons that by definition of the offense is legally incapable of committing the offense in an individual capacity; or (2) that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution."). Coeytaux directly committed murder under section 19.02(b)(1) because he "intentionally and knowingly caused the death" of Mr. Rodriguez's unborn child by delivering abortion pills that he knew would be used in an illegal self-managed abortion. *See* Tex. Penal Code § 19.02(b) ("A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual"). And Coeytaux directly committed murder under section 19.02(b)(2) because he "intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death" of Mr. Rodriguez's unborn child. *See* Tex. Penal Code § 19.02(b) ("A person commits an offense if he: . . . (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual").

26. Coeytaux is also guilty of felony murder under section 19.02(b)(3) of the Texas Penal Code. Coeytaux's shipment of abortion pills to Adam Garza was a felony. *See* Tex. Health & Safety Code § 171.063(a); Tex. Health & Safety Code § 171.065(a); 18 U.S.C. §§ 1461–1462. Coeytaux also committed an act "clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b)(3); Texas Penal Code § 1.07 (defining "individual" to include "an unborn child at every stage of gestation from fertilization until birth."). Coeytaux therefore committed felony murder under section 19.02(b)(3).

27. The manufacturers and distributors of the abortion pills that Kendal used are jointly and severally liable for the wrongful death of Mr. Rodriguez's unborn child, and they will be added as defendants once identified. The manufacturers and distributors caused the death of Mr. Rodriguez's unborn child through a "wrongful act" because they violated 18 U.S.C. §§ 1461–1462, which imposes federal criminal liability on anyone who knowingly sends or receives abortion pills through the mail or by using any express company, common carrier, or interactive computer service.

28. None of the exceptions in Texas's wrongful-death statute shield the defendants (or the manufacturers and distributors of the abortion pills) from liability. Sections 71.003(c)(2) and (c)(4) of the Texas Civil Practice and Remedies Code are inapplicable because assisting a self-managed abortion is not a "lawful medical procedure," nor is it a "lawful medical or health care practice or procedure." Section 71.003(c)(3) is inapplicable because the abortion pills were not dispensed or administered "in accordance with law." Coeytaux is therefore liable under section 71.003 and must pay damages to Mr. Rodriguez for murdering his unborn child.

29. Mr. Rodriguez seeks damages in excess of $75,000.00, the minimum amount in controversy required for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

### CLAIM FOR RELIEF NO. 2 — INJUNCTION UNDER HB 7

30. Coeytaux intends to continue mailing abortion-inducing drugs into Texas unless a federal court restrains him from doing so.

31. Texas's HB 7, which took effect on December 4, 2025, authorizes Mr. Rodriguez to sue as a qui tam relator and seek an injunction against Coeytaux or anyone else who intends to mail, transport, deliver, prescribe, or provide an abortion-inducing drug to any person or location in Texas. *See* Tex. Health & Safety Code § 171A.051(a)(2); *id.* at § 171A.101(a)(2); *id.* at 171A.104(a)(1) (attached as Exhibit 4).

32. Mr. Rodriguez has Article III standing to sue Coeytaux as an assignee of the state's claim for relief, regardless of whether Mr. Rodriguez is suffering injury in fact on account of Coeytaux's actions or intended actions. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000); Tex. Health & Safety Code § 171A.101 (attached as Exhibit 4).

33. If discovery reveals that Coeytaux has mailed, transported, delivered, prescribed, or provided any abortion-inducing drug to any person or location in Texas since HB 7 took effect on December 4, 2025, then Mr. Rodriguez will seek to recover at least $100,000.00 for each of those statutory violations. *See* Tex. Health & Safety Code § 171A.104(a)(2) (attached as Exhibit 4).

**CLAIM FOR RELIEF NO. 3 — ANTI-CLAWBACK INJUNCTION**

34. California law allows Coeytaux to file revenge lawsuits against any person who files or prosecutes an action against him over his murder of Mr. Rodriguez's unborn child or his illegal abortion-pill shipments into Texas or other states. *See* Cal. Civil Code § 1798.300 *et seq.* (attached as Exhibit 3).

35. This "clawback" provision of California's abortion-shield law allows abortion providers such as Coeytaux to file these retaliatory lawsuits even when they are sued in a state or federal court outside California—and even when they are sued for conduct that indisputably violates the laws of other states or the federal laws that criminalize abortion-pill shipments. *See* Cal. Civil Code § 1798.300(a)(1) (defining "abusive litigation" to include "[f]iling or prosecuting an action *in a state other than California* where liability, in whole or part, directly or indirectly, is based on a legally protected health care activity that was legal in the state in which it occurred. . . ." (emphasis added)) (attached as Exhibit 3); *see also* Cal. Civil Code § 1798.300(a)(2) ("An action shall be considered to be based on conduct that was legal in the state in which it occurred if *a part of* an act or omission involved in the course of conduct

that forms the basis for liability in the action occurs or is initiated in a state in which the health care was legal" (emphasis added)) (attached as Exhibit 3).

36. A revenge lawsuit can be filed against any person who "engages or attempts to engage" in litigation over the murders or illegal abortion-pill shipments that Coeytaux has committed in violation of both state and federal law. *See* Cal. Civil Code § 1798.303. If Coeytaux were to sue Rodriguez under this clawback provision, California law would entitle Coeytaux to recover three times the amount of any judgment that Rodriguez obtains against him in this lawsuit—plus three times the amount of any "expenses, costs, or reasonable attorney's fees" or other "actual damages" that Coeytaux incurs on account of that lawsuit:

> If the court finds for the petitioner in an action authorized by Section 1798.303, recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation.

Cal. Civil Code § 1798.305 (attached as Exhibit 3).

37. The law of Texas applies to this case, and it applies to any action that might be brought against a person for bringing or engaging in this lawsuit. *See* Tex. Health & Safety Code § 171A.151(b) (attached as Exhibit 4); *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941) (federal diversity courts must apply the choice-of-law rules of the forum state).

38. The law of Texas requires this Court to issue an immediate anti-suit injunction that will restrain Coeytaux, and every person in privity or in active concert or participation with him, from suing Mr. Rodriguez, his attorneys, or any person providing legal representation or any type of assistance to Mr. Rodriguez, under California's clawback law or any other type of clawback provision. *See* Tex. Health & Safety Code § 171A.151(c).

39. The All Writs Act also authorizes this Court to enjoin Coeytaux from filing clawback lawsuits against Mr. Rodriguez, his attorneys, or any person providing legal representation or any type of assistance to Mr. Rodriguez, as this anti-suit injunction is necessary and appropriate in aid of this Court's jurisdictions and agreeable to the usages and principles of law. *See* 28 U.S.C. § 1651(a); *SAS Institute Inc. v. World Programming Limited*, 952 F.3d 513 (4th Cir. 2020) (invoking the All Writs Act to enjoin a defendant from pursuing clawback remedies that were authorized by the laws of a foreign county).

## DEMAND FOR RELIEF

40. Mr. Rodriguez respectfully requests that the court:

    a. order Coeytaux to pay nominal, compensatory, and punitive damages for the wrongful death of Mr. Rodriguez's unborn child;

    b. permanently enjoin Coeytaux from distributing, mailing, transporting, delivering, prescribing, or providing abortion-inducing drugs in any manner to or from any person or location in Texas;

    c. issue preliminary and permanent injunctions that restrain Coeytaux, as well as every person in privity or in active concert or participation with him, from suing Mr. Rodriguez, his attorneys, or any person providing legal representation or any type of assistance to Mr. Rodriguez, under California's clawback law or any other type of clawback provision;

    e. award Mr. Rodriguez court costs and attorneys' fees; and

    f. grant all other relief that the Court deems just, proper, or equitable.

        Respectfully submitted.

        /s/ Jonathan F. Mitchell
        JONATHAN F. MITCHELL
        *Attorney in Charge*
        Texas Bar No. 24075463
        S.D. Tex. Bar No. 1133287
        Mitchell Law PLLC
        111 Congress Avenue, Suite 400
        Austin, Texas 78701
        (512) 686-3940 (phone)
        (512) 686-3941 (fax)
        jonathan@mitchell.law

Dated: February 1, 2026        *Counsel for Plaintiff*

## CERTIFICATE OR SERVICE

  I certify that on February 1, 2026, I served this document through CM/ECF upon:

Christopher M. Odell
Leah Schultz
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)
christopher.odell@arnoldporter.com
leah.schultz@arnoldporter.com

Marc Hearron
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3600 (phone)
(917) 637-3666 (fax)
mhearron@reprorights.org

Jenna Hudson
Center for Reproductive Rights
1600 K Street NW
Washington, DC 20002
(202) 628-0286 (phone)
jhudson@reprorights.org

      /s/ Jonathan F. Mitchell
      Jonathan F. Mitchell
      *Counsel for Plaintiff*