UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **Jerry Rodriguez,** | |
| Plaintiff, | |
| v. | Case No. 3:25-cv-225 |
| **Remy Coeytaux,** | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of contents ................................................................................. i

Table of authorities ............................................................................ ii

Rodriguez is entitled to a preliminary injunction ................................ 2

    I.   Rodriguez will likely succeed on the merits of his request for an anti-clawback injunction ........................................................... 2

        A.  The law of Texas applies to this case ...................................... 3

        B.  Rodriguez will likely succeed on his claim that Texas law requires the issuance of an anti-clawback injunction ............................ 4

    II.  The remaining preliminary-injunction factors support relief ...................... 6

        A.  Rodriguez will suffer irreparable harm absent a preliminary injunction.......................................................................... 6

        B.  The balance of equities favors a preliminary injunction.......................... 7

        C.  The public interest favors a preliminary injunction ................................ 8

    III. If The Court concludes that Rodriguez has failed to satisfy the four-part test for preliminary injunctive relief, it should still issue a preliminary injunction in accordance with the command of section 171A.151(c)........................... 10

        A.  There is no federal statute or rule of civil procedure that prevents diversity courts from fully enforcing the requirements of section 171A.151(c)................................................................................12

        B.  The mandatory antisuit injunction in section 171a.151(c) is a substantive rule of decision.................................................................13

Conclusion ........................................................................................15

Certificate of word count ...................................................................16

Certificate of conference ....................................................................17

Certificate of service ..........................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Berk v. Choy*, No. 24-440 (2026) ............................................................... 12, 13

*Berman v. Parker*, 348 U.S. 26 (1954) ......................................................... 9

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) .......................... 14

*Hanna v. Plumer*, 380 U.S. 460 (1965) .................................................... 12, 14

*Howard Gault Co. v. Texas Rural Legal Aid, Inc.*,
848 F.2d 544 (5th Cir. 1988) ................................................................. 7

*Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*,
313 U.S. 487 (1941) ...................................................................... 2, 3, 4

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) ............................. 7

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ....................... 2

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ............. 2, 6, 11

**Statutes**

18 U.S.C. § 1461–1462 ............................................................................ 1

28 U.S.C. § 1652 ............................................................................... 12, 13

Cal. Civil Code § 1798.300 *et seq.* ............................................................. 1

Cal. Civil Code § 1798.300(a) .............................................................. 1, 5

Cal. Civil Code § 1798.300(a)(1)–(2) ......................................................... 1

Cal. Civil Code § 1798.300(d) ................................................................... 5

Cal. Civil Code § 1798.303 ................................................................... 1, 5

Cal. Civil Code § 1798.305 ....................................................................... 1

Tex. Health & Safety Code § 171A.106(b) .................................................... 3

Tex. Health & Safety Code § 171A.151(a)(1) ................................................ 5

Tex. Health & Safety Code § 171A.151(a)–(b) .............................................. 4

Tex. Health & Safety Code § 171A.151(b) ................................................. 2, 4

Tex. Health & Safety Code § 171A.151(b)(1) ................................................ 4

Tex. Health & Safety Code § 171A.151(b)(2) ................................................ 4

Tex. Health & Safety Code § 171A.151(c) ............................................. passim

Tex. Health & Safety Code § 171A.151(c)(2) ................................................. 8

**Rules**

Fed. R. Civ. P. 65(a)(1) ...................................................................... 13

Fed. R. Civ. P. 65(c) ......................................................................... 13

Fed. R. Civ. P. 65(d)(1) ..................................................................... 13

California's shield law allows abortion providers to file revenge lawsuits against anyone who sues or prosecutes them over their illegal abortion-pill shipments into other states. *See* Cal. Civil Code § 1798.300 *et seq.* (attached as Exhibit 1). It authorizes these lawsuits even when the abortion provider is sued or prosecuted in a state or federal court outside California—and even when the provider is sued or prosecuted for conduct that indisputably violates the laws of another state or the federal laws that criminalize abortion-pill shipments.[1] *See* Cal. Civil Code § 1798.300(a)(1)–(2).

California allows these lawsuits to be filed against any person who "engages or attempts to engage"[2] in litigation over Coeytaux's illegal abortion-pill shipments or his violations of Texas's murder laws, which includes not only Mr. Rodriguez but anyone who testifies as a witness or otherwise assists Mr. Rodriguez in litigating his claims. If Coeytaux were to sue Rodriguez (or anyone else) under this clawback provision, California law would entitle Coeytaux to recover three times the amount of any judgment that Rodriguez obtains against him in this lawsuit—plus three times the amount of any "expenses, costs, or reasonable attorney's fees" or other "actual damages" that Coeytaux incurs on account of that lawsuit. *See* Cal. Civil Code § 1798.305.

Rodriguez respectfully moves for a preliminary injunction that will restrain Coeytaux from suing Rodriguez, his attorneys, or any person providing legal representation or any type of assistance to Rodriguez under these clawback provisions of California law. Rodriguez is entitled to a preliminary injunction because the law of Texas

---

1.   *See* 18 U.S.C. § 1461–1462.
2.   Cal. Civil Code § 1798.303.

applies to this case,[3] and it requires this Court to issue an antisuit injunction to prevent Coeytaux from suing Rodriguez or any person providing legal representation or any type of assistance to Rodriguez under these clawback provisions. *See* Tex. Health & Safety Code § 171A.151(c). Rodriguez also satisfies the remaining elements of the preliminary-injunction inquiry, as he will suffer irreparable harm absent preliminary relief, the balance of equities weigh in his favor, and the public interest supports preliminary injunctive relief.

## RODRIGUEZ IS ENTITLED TO A PRELIMINARY INJUNCTION

There are four factors to consider when deciding whether to issue a preliminary injunction: (1) whether Rodriguez will likely succeed on the merits of his request for an anti-clawback injunction; (2) whether Rodriguez will suffer irreparable harm absent preliminary relief; (3) whether the balance of equities favors a preliminary injunction; and (4) the public interest. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). Each of these four factors favors preliminary relief.

## I.  Rodriguez Will Likely Succeed On The Merits Of His Request For An Anti-Clawback Injunction

Rodriguez will likely succeed on the merits of his request for an anti-clawback injunction because Texas law applies to this diversity action,[4] and section 171A.151(c) of the Texas Health and Safety Code requires this Court to enjoin Coeytaux from

---

3.  *See* Tex. Health & Safety Code § 171A.151(b).
4.  *See* Tex. Health & Safety Code § 171A.151(b); *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941) (federal diversity courts must apply the forum state's choice-of-law rules).

suing Rodriguez under California's clawback provisions. *See* Tex. Health & Safety Code § 171A.151(c) (attached as Exhibit 2).

### A.    The Law Of Texas Applies To This Case

A federal diversity court must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941). And Texas's HB 7 makes clear that Texas law applies not only to Rodriguez's qui tam claim against Coeytaux,[5] but also to any ancillary litigation surrounding the enforceability of California's clawback law against Rodriguez or any person providing him with legal representation or assistance.

Section 171A.151 of the Texas Health and Safety Code provides, in relevant part:

> (a)  For purposes of this section, the term "clawback provision" refers to any law of another state or jurisdiction that authorizes the bringing of a civil action against a person for:
>
> > (1)  bringing or engaging in an action authorized by this chapter, including Subsection (f );
> >
> > (2)  bringing or engaging in an action that alleges a violation of Section 171A.051;
> >
> > (3)  attempting, intending, or threatening to bring or engage in an action described by Subdivision (1) or (2); or
> >
> > (4)  providing legal representation or any type of assistance to a person who brings or engages in an action described by Subdivision (1) or (2).
>
> (b)  Notwithstanding any other law and except as otherwise provided by federal law or the Texas Constitution, the laws of this state apply to:

---

5.    *See* Tex. Health & Safety Code § 171A.106(b) ("Notwithstanding any other law, the law of this state applies to an action brought under Section 171A.101 to the maximum extent permitted by the Texas Constitution and federal law, including the United States Constitution.").

(1)  conduct described by Subsection (a);

(2)  an action brought against a person for engaging in conduct described by Subsection (a);

(3)  an action brought under a clawback provision against a resident of this state; and

(4)  an action brought under Subsection (f).

Tex. Health & Safety Code § 171A.151(a)–(b). After subsection (a) defines "clawback provision," subsection (b) declares that Texas law will govern:

- The "bringing" of or the "engaging in" the qui tam action filed by Rodriguez against Coeytaux;[6]

- The provision of "legal representation or any type of assistance" to Rodriguez;[7] and

- Any clawback action that might be brought against Rodriguez or any person providing legal representation or any type of assistance to Rodriguez in this litigation.[8]

So the enforceability of California's clawback provision against Rodriguez or any person providing legal representation or any type of assistance to Rodriguez in this litigation is governed by Texas law. *See Klaxon*, 313 U.S. at 496–97.

## B.    Rodriguez Will Likely Succeed On His Claim That Texas Law Requires The Issuance Of An Anti-Clawback Injunction

Section 171A.151 of the Texas Health and Safety Code goes on to require the issuance of anti-clawback injunction in any case brought under the qui tam provisions of HB 7:

(c)  Notwithstanding any other law, in an action described by Subsection (a)(1) or (2), the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant in the

---

6.    *See* Tex. Health & Safety Code § 171A.151(b)(1).

7.    *See* Tex. Health & Safety Code § 171A.151(b)(1).

8.    *See* Tex. Health & Safety Code § 171A.151(b)(2).

action, each person in privity with the defendant, and each person with whom the defendant is in active concert or participation from:

> (1)  bringing an action under any clawback provision against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor; and

> (2)  continuing to litigate an action under any clawback provision that has been brought against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor.

Tex. Health & Safety Code § 171A.151(c).

The provisions of California law that authorize Coeytaux to file retaliatory lawsuits satisfy the definition of "clawback provision" in subsection (a). Rodriguez has brought "an action authorized by this chapter"[9] by suing Coeytaux under section 171A.101(a) of the Texas Health and Safety Code,[10] and California's shield law authorizes Coeytaux to bring a civil action against Rodriguez for "engaging"[11] in this action. *See* Cal. Civil Code § 1798.303 (authorizing retaliatory lawsuits against anyone who "engages or attempts to engage in abusive litigation that infringes on or interferes with, or attempts to infringe on or interfere with, a legally protected health care activity"); Cal. Civil Code § 1798.300(d) (defining "legally protected health care activity" to include the mailing of abortion pills from California to patients in other states); Cal. Civil Code § 1798.300(a) (defining "abusive litigation" to encompass "litigation or other legal action to deter, prevent, sanction, or punish a person engaging in legally protected health care activity by . . . (1) Filing or prosecuting an

---

9.    *See* Tex. Health & Safety Code § 171A.151(a)(1).
10.   *See* First Amended Complaint, ECF No. 16, at ¶¶ 30–33.
11.   *See* Tex. Health & Safety Code § 171A.151(a)(1).

action in a state other than California where liability, in whole or part, directly or indirectly, is based on a legally protected health care activity that was legal in the state in which it occurred, including an action in which liability is based on a theory of vicarious, joint, or several liability.").

Rodriguez is therefore entitled to a preliminary antisuit injunction that restrains Coeytaux from suing Mr. Rodriguez, a person in privity with Mr. Rodriguez, or any person providing legal representation or any type of assistance to Mr. Rodriguez under California's shield law or any similar "clawback" provision. *See* Tex. Health & Safety Code § 171A.151(c).

## II.    The Remaining Preliminary-Injunction Factors Support Relief

The Court must also consider whether Rodriguez will suffer irreparable harm absent a preliminary injunction, the balance of equities, and where the public interest lies. *See Winter*, 555 U.S. at 20. Each of these factors supports Rodriguez's request for a preliminary injunction.

### A.    Rodriguez Will Suffer Irreparable Harm Absent A Preliminary Injunction

Rodriguez will suffer irreparable harm absent a preliminary injunction because he will be unable to litigate his wrongful-death and HB 7 claims against Coeytaux without exposing himself to ruinous civil liability. His only choices will be to abandon his wrongful-death lawsuit against Coeytaux, or else forge ahead and face a future clawback lawsuit from Coeytaux for three times the amount of any judgment that Rodriguez *wins* against Coeytaux in this case—*plus* three times the amount of any "expenses, costs, or reasonable attorney's fees" or other "actual damages" that Coeytaux incurs on account of this lawsuit. This is not an injury that can be remedied

with an award of damages against Coeytaux, because Coeytaux is not subject to damages liability for the California legislature's decision to enact a statute authorizing private civil lawsuits. *See Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 555 (5th Cir. 1988) ("[P]urely private individuals. . . cannot be held liable in a § 1983 suit simply because they filed suit under Texas statutes and obtained a temporary restraining order"); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) ("If a state merely allows private litigants to use its courts, there is no state action within the meaning of § 1983 unless 'there is corruption of judicial power by the private litigant.'" (quoting *Earnest v. Lowentritt,* 690 F.2d 1198, 1200 (5th Cir. 1982)).

Rodriguez's lawyer will also be facing a conflict of interest if this Court denies a preliminary injunction. If he zealously represents Rodriguez and wins a favorable judgment on his client's behalf, that will *increase* the clawback liability that Rodriguez's lawyer will face if Coeytaux decides to file a revenge lawsuit for treble damages. California's clawback regime means that a lawyer's success on behalf of his client winds up *increasing* the lawyer's exposure (and his client's exposure) to clawback liability, while a lawyer who loses or bungles the job *reduces* the treble-damages liability that he (and his client) will face in a subsequent clawback lawsuit. It is hard to see how a lawyer could ethically represent a client under these circumstances, which only underscores the need for an immediate anti-clawback injunction.

### B.    The Balance of Equities Favors A Preliminary Injunction

Coeytaux will not be harmed by a preliminary injunction because Texas law requires this Court to enter a permanent anti-clawback injunction against Coeytaux at the conclusion of this litigation. *See* Tex. Health & Safety Code § 171A.151(c). So the

preliminary injunction will merely restrain Coeytaux from filing lawsuits that are doomed to fail as soon as the permanent anti-clawback injunction is entered against him, which will bar him from continuing to litigate any clawback claims that he had previously initiated against Rodriguez or those assisting him. *See* Tex. Health & Safety Code § 171A.151(c)(2).

If Coeytaux argues that this should qualify as "harm," it is more than outweighed by the harms that will be inflicted on Rodriguez in the absence of a preliminary injunction. Denying relief will leave Rodriguez exposed to clawback litigation in which he will be unable to recoup the costs of defending himself even if he eventually defeats the lawsuits. And it will leave Rodriguez unable to recruit or obtain attorneys to represent him in this lawsuit who are free from conflicts of interest. Those harms outweigh any burdens that might be imposed on Coeytaux from taking away his ability to file revenge lawsuits during the pendency of this litigation, especially when Coeytaux will be permanently restrained from filing these clawback lawsuits when the litigation concludes. *See* Tex. Health & Safety Code § 171A.151(c).

### C.    The Public Interest Favors A Preliminary Injunction

The law of Texas, which applies in this diversity action,[12] requires the issuance of an antisuit injunction that restrains Coeytaux from suing Rodriguez or his lawyers under California's clawback regime. *See* Tex. Health & Safety Code § 171A.151(c) (requiring courts to issue antisuit injunctions to restrain the enforcement of clawback regimes "upon request"); *see also* pp. 3–6, *supra*. Because the legislature has instructed courts to issue an antisuit injunction in these circumstances, the requested preliminary injunction is by definition in the public interest. *See Berman v. Parker*,

---

12.    *See* note 4, *supra*.

348 U.S. 26, 32 (1954) ("Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, whether it be Congress legislating concerning the District of Columbia . . . or the States legislating concerning local affairs.").

A preliminary injunction will also serve the public interest by allowing Rodriguez's lawyer to zealously represent his client without fearing that effective advocacy will jeopardize his (or his client's) personal assets. Our judicial system depends on adversarial presentations in which lawyers vigorously argue and contest the legal and factual issues and hammer the weaknesses that they perceive in the other side's position. California's law is designed to subvert effective advocacy by allowing lawyers to be sued for three times the amount of any favorable judgment that they obtain on their client's behalf—plus three times the amount of attorneys' fees that the other side incurs in defending against their client's claims. The public interest is never served when lawyers are discouraged from providing the zealous representation to which their clients are entitled.

Nor is the public interest served by state laws that threaten to subvert the judgments entered by a federal court. California's regime goes beyond the effective nullification of federal-court judgments; it turns those judgments upside down. The net result under California's law is that the federal-court *victor* winds up *paying* the defeated litigant twice the amount that the federal court ordered the defeated litigant to pay to him. The functional effect is to invert the federal court's judgment and create a state-law boomerang that hits the prevailing party with at least three times

the force of his federal-court victory. The public interest is not served by a regime that leaves federal-court judgments at the mercy of state legislatures.

There is also no stopping point to the type of clawback regimes that state legislatures could enact. If this Court denies a preliminary injunction and allows California's clawback statute to thwart and deter litigants and lawyers from bringing meritorious claims in courts outside California, then anti-abortion states can authorize clawback lawsuits for protestors who get sued or prosecuted for violating the Freedom of Access to Clinic Entrances Act or other states' clinic-access laws. Other states could authorize clawback lawsuits by politically influential businesses or industries whenever they get sued in a state or federal court. Washington could authorize Microsoft or Amazon to bring clawback suits against anyone who sues them for antitrust violations. North Carolina could authorize clawback lawsuits by tobacco companies. New York could do the same for the banking and finance industry. The federal judicial power would be left at the mercy of individual state legislatures, each of which has its own set of powerful constituencies that would be delighted to receive the clawback prerogatives that California has given to abortion providers. The public interest does not favor a regime in which federal-court judgments are defeasible by state legislatures, or in which states create mechanisms that give their favored litigants de facto immunity from damages awards in the courts of other states.

## III. If The Court Concludes That Rodriguez Has Failed To Satisfy The Four-Part Test For Preliminary Injunctive Relief, It Should Still Issue A Preliminary Injunction In Accordance With The Command Of Section 171A.151(c)

The law of Texas requires courts to issue, "on request," a "temporary, preliminary, or permanent injunction that restrains" Coeytaux from suing Rodriguez or those assisting him under California's clawback statute:

(c)  Notwithstanding any other law, in an action described by Subsection (a)(1) or (2), the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant in the action, each person in privity with the defendant, and each person with whom the defendant is in active concert or participation from:

(1)  bringing an action under any clawback provision against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor; and

(2)  continuing to litigate an action under any clawback provision that has been brought against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor.

Tex. Health & Safety Code § 171A.151(c). Texas law does not allow courts to consider or weigh the four prongs of the traditional preliminary-injunction test in these circumstances. Instead, it instructs courts to issue a preliminary antisuit injunction in response to a litigant's "request."

This presents an *Erie* question: Should a federal diversity court issue the preliminary injunction "on request," as provided in section 171A.151(c)? Or should it apply or the four-part test that typically governs requests for preliminary injunctions in federal court? *See, e.g.*, *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). In other words, is the mandatory antisuit injunction described in section 171A.151(c) a "substantive" rule of decision that federal diversity

courts must apply under the Rules of Decision Act,[13] or is it a mere "procedural" requirement that federal diversity courts can safely ignore?

The Court need not resolve the *Erie* question if it concludes (as it should) that Rodriguez has satisfied the four-part test that federal courts typically apply when issuing preliminary injunctions. *See* pp. 2–10, *supra*. The Court can simply assume for the sake of argument that the four-part test applies and then hold that Rodriguez has satisfied it. But if the Court needs or wants to resolve whether the injunction-upon-request regime described in section 171A.151(c) applies in a federal diversity court, then it should hold that federal diversity courts must honor and enforce section 171A.151(c) as a substantive legal entitlement.

### A.    There Is No Federal Statute Or Rule Of Civil Procedure That Prevents Diversity Courts From Fully Enforcing The Requirements Of Section 171A.151(c)

The first question to ask when conducting an *Erie* inquiry is whether a federal statute or rule of civil procedure requires diversity courts to depart from the relevant state-law rule. *See Berk v. Choy*, No. 24-440 (2026), slip op. at 3–4 ("[T]he Rules of Decision Act dictates that state substantive law must yield if the Constitution, a treaty, or a statute 'otherwise require[s] or provide[s].'" (quoting 28 U.S.C. § 1652)); *id.* at 4 ("[A] valid Rule of Civil Procedure displaces contrary state law"); *Hanna v. Plumer*, 380 U.S. 460, 463–64 (1965). But there is no statute or rule of procedure that codifies (or purports to codify) the traditional four-part test for determining when a preliminary injunction should issue. Rule 65, which governs "injunctions and restraining orders," has nothing to say on the standard that courts should apply when deciding whether to award preliminary relief. Rule 65 merely requires that

---

13.    *See* 28 U.S.C. § 1652.

courts: (1) provide notice to the adverse party before issuing a preliminary injunction;[14] (2) require the movant to post appropriate security;[15] and (3) state the reasons for issuing a preliminary injunction, state its terms specifically, and describe in reasonable detail the act or acts restrained or required.[16] There is nothing in Rule 65 that establishes a test for determining when a preliminary injunction should issue, so there is nothing in Rule 65 (or any rule of civil procedure) that preempts or displaces section 171A.151(c)'s instruction to issue a preliminary antisuit injunction upon request.

### B.    The Mandatory Antisuit Injunction In Section 171A.151(c) Is A Substantive Rule Of Decision

Because the traditional four-part test for preliminary injunctions is a judge-created rule rather than a codified statutory command, the federal diversity courts must fully enforce section 171A.151(c) so long as it qualifies as a substantive rule of decision under 28 U.S.C. § 1652. A rule is substantive if it regulates "'the *rights* themselves, the available *remedies*, or the *rules of decision*,'" as opposed to merely "'the process for enforcing those rights.'" *Berk*, No. 24-440 (2026), slip op. at 11 (quoting *Shady Grove Orthopedic Associates, P. A. v. Allstate Insurance Co.*, 559 U. S. 393, 407–08 (2010) (plurality opinion) (emphasis added)). The mandatory anti-clawback preliminary injunction required under section 171A.151(c) is substantive because it establishes an "right" to a particular "remedy"—a preliminary antisuit injunction—and it provides a "rule of decision" for determining when that remedy must issue,

---

14.    *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

15.    *See* Fed. R. Civ. P. 65(c).

16.    *See* Fed. R. Civ. P. 65(d)(1).

*i.e.*, upon the request of a litigant. Statutorily guaranteed remedies of this sort will qualify as substantive under any formulation of the *Erie* test.[17] The "process" for enforcing that right, by contrast, is described in Rule 65, which requires courts to provide notice, require appropriate security, and issue reasoned decisions when granting preliminary injunctions,[18] but does not in any way dictate or purport to resolve the substantive standard that courts use in determining *whether* a preliminary injunction should issue.

Section 171A.151(c) also qualifies as substantive under the two-part test of *Hanna v. Plumer*, 380 U.S. 460 (1965), which requires courts to consider "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468. Allowing federal diversity courts to displace a state's mandatory antisuit injunction regime will lead to forum-shopping, as plaintiffs will prefer the certainty of preliminary injunctive relief in state court over rolling the dice how a federal judge might apply the more discretionary *Winter* test. It will also lead to inequitable administration of the laws, as state-court plaintiffs will be given a substantial advantage over plaintiffs who sue in diversity. The former will get an immediate antisuit injunction whenever state law requires it, while the latter will obtain preliminary relief only if they meet the more demanding four-part test of

---

17. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) ("[T]he intent of [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."); *Hanna v. Plumer*, 380 U.S. 460, 467 (1965) ("The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court.").

18. *See* notes 14–16 and accompanying text.

*Winter*. The mandatory antisuit injunction of section 171A.151(c) is a substantive entitlement rather than a procedural rule, and it should be given full force and effect in a federal diversity court.

## CONCLUSION

The motion for preliminary injunction should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: February 2, 2026                    *Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify that this motion contains 4,132 words.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Christopher M. Odell, counsel for the defendant, and we were unable to agree about the disposition of this motion.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on February 2, 2026, I served this document through CM/ECF

upon:

CHRISTOPHER M. ODELL
LEAH SCHULTZ
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)
christopher.odell@arnoldporter.com
leah.schultz@arnoldporter.com

MARC HEARRON
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3600 (phone)
(917) 637-3666 (fax)
mhearron@reprorights.org

JENNA HUDSON
Center for Reproductive Rights
1600 K Street NW
Washington, DC 20002
(202) 628-0286 (phone)
jhudson@reprorights.org

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Plaintiff*