**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 3:25-cv-00225 |
| | § | |
| v. | § | |
| | § | |
| REMY COEYTAUX | § | |
| | § | |
| Defendant. | § | |

_____

**DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    **Plaintiff Lacks Standing to Assert Any of His Claims.** ............................................. 8

  A.    **Plaintiff Lacks Standing to Bring His Wrongful Death Claim.** ......................... 9

  B.    **Plaintiff Lacks Standing to Assert an HB7 "*Qui Tam*" Claim.** ........................ 11

    1.    **Texas Has No Claim to Assign to Plaintiff.** ........................................................ 11

    2.    **HB7 Does Not Fall into the *Qui Tam* Exception Under *Vermont Agency*.** ..... 15

  C.    **Plaintiff Lacks Standing to Seek an Anti-Suit Injunction.** ................................ 19

II.   **Plaintiff Failed to State a Claim for Wrongful Death.** .................................... 21

  A.    **Plaintiff Failed to Allege Facts Establishing that Dr. Coeytaux Proximately Caused the September 2024 Abortion.** .................................................................. 22

    1.    **Dr. Coeytaux was not a but-for cause of Mrs. Garza's abortion.** ................. 22

    2.    **Mrs. Garza's decision to have an abortion, not the mailing of pills, was the substantial factor that caused the abortion.** ......................................................... 22

  B.    **The Amended Complaint's Allegations of Statutory Violations Do Not Support a Wrongful Death Claim.** .................................................................. 24

    1.    **Plaintiff fails to plead sufficient facts as to the alleged statutory violations.** ............................................................................................................................. 24

    2.    **Alleged violations of these statutes do not give rise to tort liability under Texas law.** ................................................................................................................. 25

    3.    **The Court Should Decline to Create a New Duty in Tort for the Alleged Statutory Violations.** .......................................................................................... 26

III.  **Plaintiff Failed to State a "*Qui Tam*" Claim Under Texas House Bill 7.** ......... 32

  A.    **Plaintiff's Family Violence Conviction Bars His HB7 Claims.** ........................ 32

  B.    **Plaintiff's Allegations Are Conclusory.** .............................................................. 32

  C.    **HB7 Violates the Texas Constitution.** ................................................................. 33

  D.    **HB7 Violates the Dormant Commerce Clause of the U.S. Constitution.** ........ 36

IV.   **Rodriguez Failed to State an Anti-Clawback Claim Under HB7.** ................... 39

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Abbott v. Harris Cnty.*,
  672 S.W.3d 1 (Tex. 2023) ..................................................................................... 34

*Abecassis v. Wyatt*,
  704 F. Supp. 2d 623 (S.D. Tex. 2010) ............................................................ 9, 10

*Agey v. American Liberty Pipe Line Co.*,
  172 S.W.2d 972 (Tex. 1943) ................................................................................ 34

*Allen v. Walmart Stores, L.L.C.*,
  907 F.3d 170 (5th Cir. 2018) ............................................................................... 26

*Am. Liberty Pipe Line Co. v. Agey*,
  167 S.W.2d 580 (Tex. Civ. App. 1942) .............................................................. 35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 7, 33

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007) ..................................................................... 8, 13, 25, 33

*Bell v. Campbell*,
  *434 S.W.2d 117 (Tex. 1968)* .............................................................................. 23

*Bendix Autolite Corp. v. Midwesco Enters., Inc.*,
  486 U.S. 888 (1988) ............................................................................................ 38

*Brighthouse Life Ins. Co. v. Daboub*,
  577 F. Supp. 3d 504 (N.D. Tex. 2021) ................................................................ 31

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
  476 U.S. 573 (1986) ............................................................................................ 37

*Burt v. Playtika, Ltd.*,
  132 F.4th 398 (6th Cir. 2025) ........................................................................ passim

*Carter v. William Sommerville & Son, Inc.*,
  584 S.W.2d 274 (Tex. 1979) ............................................................................... 30

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)................................................................................12, 13, 14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..............................................................................12, 20, 21

*Cort v. Ash*,
  422 U.S. 66 (1975)................................................................................................31

*Deep S. Ctr. for Env't Just. v. EPA*,
  138 F.4th 310 (5th Cir. 2025).............................................................................11

*Dickerson v. Bailey*,
  336 F.3d 388 (5th Cir. 2003)...................................................................37, 38, 39

*Ducksworth v. Rook*,
  647 F. App'x 383 (5th Cir. 2016).......................................................................32

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993).........................................................................7, 8, 14

*FTC v. AdvoCare Int'l, L.P.*,
  2020 WL 6741968 (E.D. Tex. Nov. 16, 2020)...................................................33

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011)...............................................................................32

*Galindo v. Precision Am. Corp.*,
  754 F.2d 1212 (5th Cir. 1985)............................................................................26

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
   66 F.4th 578 (5th Cir. 2023)...............................................................................20

*George v. SI Grp., Inc.*,
  36 F.4th 611 (5th Cir. 2022).................................................................................7

*Graff v. Beard*,
  858 S.W.2d 918 (Tex. 1993)...............................................................................24

*Granholm v. Heald*,
  544 U.S. 460 (2005)..............................................................................................37

*Hill Cnty. v. Sheppard*,
  178 S.W.2d 261 (Tex. 1944)...............................................................................34

iii

*Hollingsworth v. Perry*,
570 U.S. 693 (2013).................................................................................................15

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
520 U.S. 939 (1997).................................................................................................36

*In re Labatt Food Serv., L.P.*,
279 S.W.3d 640 (Tex. 2009) .............................................................................21, 24

*In re Xerox Corp.*,
555 S.W.3d 518, 530 (Tex. 2018) ...........................................................................19

*John Havlir & Assocs., Inc. v. Tacoa*, Inc.,
810 F. Supp. 752 (N.D. Tex. 1993).........................................................................38

*Johnson v. Sawyer*,
47 F.3d 716 (5th Cir. 1995)......................................................................................26

*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009)......................................................................................9

*Little v. Shell Expl. & Prod. Co.*,
690 F.3d 282 (5th Cir. 2012)..............................................................................12, 15

*Loki Brands, LLC v. Platkin*,
2024 WL 4457485 (D.N.J. Oct. 10, 2024)..............................................................38

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................passim

*Magadia v. Wal-Mart Assocs., Inc.*,
999 F.3d 668 (9th Cir. 2021)............................................................................passim

*Malouf v. State ex rel. Ellis*,
694 S.W.3d 712 (Tex. 2024) ....................................................................................19

*Maud v. Terrell*,
200 S.W. 375 (Tex. 1918) .............................................................................17, 34, 35

*McCorvey v. Hill*,
385 F.3d 846 (5th Cir. 2004)....................................................................................25

*Michaels v. Avitech, Inc.*,
202 F.3d 746 (5th Cir. 2000)....................................................................................30

iv

*Morrison v. Le Tourneau Co. of Ga.*,
    138 F.2d 339 (5th Cir. 1943) ................................................................................ 30

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................................... 12

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
    48 F.4th 306 (5th Cir. 2022) ................................................................................ 37

*Ore. Waste Sys., Inc. v. Dep't of Envt'l Quality of Ore.*,
    511 U.S. 93 (1994) ............................................................................................... 37

*Pediatrics Cool Care v. Thompson*,
    649 S.W.3d 152 (Tex. 2022) ................................................................................ 22

*Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*,
    128 F.3d 910 (5th Cir. 1997) ............................................................................... 39

*Perry v. S.N.*,
    973 S.W.2d 301 (Tex. 1998) ......................................................................... passim

*Plumley v. Landmark Chevrolet, Inc.*,
    122 F.3d 308 (5th Cir. 1997) ............................................................................... 13

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................................. 7

*Reeder v. Daniel*,
    61 S.W.3d 359 (Tex. 2001) .................................................................................. 26

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749  (5th Cir. 2001) .............................................................................. 16

*Roberts v. TXU Energy Retail Co.*,
    171 S.W.3d 901 (Tex. App. 2005) ....................................................................... 23

*Rodriguez v. Garza*,
    No. 25-CV-1294 (212th Dist. Ct., Galveston Cnty., Tex. July 21, 2025) ............. 4

*Rodriguez-Escobar v. Goss*,
    392 S.W.3d 109 (Tex. 2013) ................................................................................ 22

*Smith v. Merritt*,
    940 S.W.2d 6027 (Tex. 1996) .............................................................................. 31

*Spokeo Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................................. 16

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
  524 F.3d 1229 (11th Cir. 2008) ................................................................................ 18

*Stalley v. Methodist Healthcare*,
  517 F.3d 911 (6th Cir. 2008) .................................................................................... 18

*Staples v. State*,
  245 S.W. 639 (Tex. 1922) ................................................................................... 34, 36

*State ex rel. White v. Griffin*,
  604 F. Supp. 3d 1143 (D.N.M. 2022) .................................................... 15, 16, 17, 19

*State v. Hunter*,
  624 S.W.3d 589 (Tex. Crim. App. 2021) .................................................................. 25

*Stean v. Texas Right to Life*,
  2021 WL 12394878 (98th Dist. Ct., Travis County., Tex. Dec. 9, 2021) ...................... 35

*Stringer v. Whitley*,
  942 F.3d 715 (5th Cir. 2019) ................................................................................. 8, 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .................................................................................................. 12

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
  588 U.S. 504 (2019) .................................................................................................. 37

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
  952 S.W.2d 454 (Tex. 1997) ............................................................................... 35, 36

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
  No. 1:11-cv-00486-SS (W.D. Tex. Dec. 7, 2011) ...................................................... 27

*TF-Harbor, LLC v. City of Rockwall*,
  18 F. Supp. 3d 810 (N.D. Tex. 2014) ...................................................................... 9, 10

*Transcon. Ins. Co. v. Crump*,
  330 S.W.3d 211 (Tex. 2010) ..................................................................................... 23

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................................... passim

vi

*Turaani v. Wray*,
    988 F.3d 313 (6th Cir. 2021)...............................................................................................9

*Umphress v. Hall*,
    133 F.4th 455 (5th Cir. 2025) .............................................................................................7

*United Seniors Ass'n, Inc. v. Philip Morris USA*,
    500 F.3d 19 (1st Cir. 2007) ...............................................................................................18

*United States ex rel. Yellowtail v. Little Horn State Bank*,
    828 F. Supp. 780 (D. Mont. 1992) .....................................................................................12

*United States v. Huntsberry*,
    956 F.3d 270 (5th Cir. 2020)..............................................................................................32

*Van Winkle v. Houcon Partners, L.P.*,
    2018 WL 3543908 (S.D. Tex. July 03, 2018) ............................................................. 13, 14

*Viera v. Hudman*,
    2024 WL 111353 (5th Cir. Jan. 10, 2024)...........................................................................7

*Vt. Agency of Nat. Res. v. Stevens*,
    529 U.S. 765 (2000)......................................................................................................passim

*Werner Enters., Inc. v. Blake*,
    719 S.W.3d 525, 528 (Tex. 2025) .............................................................21, 22, 23, 24

*Whole Woman's Health v. Hellerstedt*,
    579 U.S. 582 (2016)............................................................................................................27

*Williams v. Bienville Orthopaedic Specialists, LLC*,
    737 F. Supp. 3d 411 (S.D. Miss. 2024)............................................................................. 11

*Women's Med. Ctr. of Nw. Houston v. Bell*,
    248 F.3d 411 (5th Cir. 2001) (No. 00–20037) ..................................................................27

*Woods v. Empire Health Choice, Inc.*,
    574 F.3d 92 (2d Cir. 2009)................................................................................................18

*Wright v. Bd. of Comm'rs of Cap. Area Transit Sys.*,
    551 F. Supp. 3d 607 (M.D. La. 2021) ...............................................................................33

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018).........................................................................................20, 21

## Statutes

Cal. Lab. Code § 2699 ........................................................................................... 17

Cal. Civ. Code § 1798.300 ..................................................................................... 19

Cal. Civ. Code § 1798.300(d)(1)(C) ........................................................................ 7

Cal. Civ. Code §§ 1798.300(a) ................................................................................ 7

Code of Criminal Procedure Article 42.013 ............................................................ 5

Tenn. Code § 29-19-105 ........................................................................................ 17

Tex. Civ. Prac. & Rem. Code § 71.002(a)–(b) ....................................................... 21

Tex. Civ. Prac. & Rem. Code § 71.003(a) .............................................................. 21

Tex. Civ. Prac. & Rem. Code Ann. § 71.003(c)(1) ................................................ 30

Tex. Health & Safety Code § 170A.102 ................................................................. 32

Tex. Health & Safety Code § 171.061 .................................................................... 27

Tex. Health & Safety Code § 171A.001(6) ......................................................... 6, 39

Tex. Health & Safety Code § 171A.001(8) ......................................................... 6, 38

Tex. Health & Safety Code § 171A.002(a) ..................................................... 6, 38, 39

Tex. Health & Safety Code § 171A.051(a)(2) ...................................................... 4, 38

Tex. Health & Safety Code § 171A.052(b) .......................................................... 4, 35

Tex. Health & Safety Code § 171A.101(a) ..................................................... 14, 35, 36

Tex. Health & Safety Code § 171A.101(b) ............................................................. 18

Tex. Health & Safety Code § 171A.101(b) ........................................................... 5, 18

Tex. Health & Safety Code § 171A.101(d)(3) ...................................................... 5, 32

Tex. Health & Safety Code § 171A.101(d)(7) .......................................................... 6

Tex. Health & Safety Code § 171A.101(d)(8) ...................................................... 6, 38

Tex. Health & Safety Code § 171A.104(a)(2) ......................................................... 19

Tex. Health & Safety Code § 171A.104(b) ........................................................... 18

Tex. Health & Safety Code § 171A.151(a) ........................................................... 20

Tex. Health & Safety Code § 171A.151(b) ........................................................... 21

Tex. Health & Safety Code § 171A.151(c) ............................................................. 7

Tex. Health & Safety Code § 171A.151(f) ............................................................ 21

Tex. Health & Safety Code §§ 171.006(a)–(b) ..................................................... 27

Tex. Health & Safety Code §§ 171.201–171.212 .................................................. 35

Tex. Penal Code Ann. § 19.02(b) .......................................................................... 25

Tex. Penal Code Ann. § 19.06(1) .......................................................................... 25

Tex. Penal Code Ann. § 6.04(a) ............................................................................ 25

Tex. Penal Code Ann. § 7.02(a)(1) ....................................................................... 25

**Other Authorities**

H. Comm. on State Affs., Bill Analysis, H.B. 15, 78th Leg., R.S. (Tex. 2003) ............... 27

H. Comm. On State Affs., Bill Analysis, H.B. 15, 82d Leg., R.S. (Tex. 2011) ................ 27

H. Comm. On State Affs., Bill Analysis, H.B. 2, R.S. (Tex. 2013) .................................. 27

*H.R. Compilation of Pub. Comments Submitted to the Comm. on State Affs. For HB 7*
     (Tex. 2025) ................................................................................................................. 6

*Hearing of the H. Comm. on State Affs.*, 89th Leg., 2d Special Session at 2:38:25-2:39:15
     (Tex. 2025) (statement of Dr. Zeke Silva, Chair, Texas Medical Association Council on
     Legislation) ............................................................................................................... 6

Myriam E. Gilles, *Representational Standing:* U.S. ex rel. Stevens *and the Future of
     Public Law Litigation*, 89 Calif. L. Rᴇᴠ. 315 (2001) ................................................ 17

Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 579, 588–90
     (2005) ....................................................................................................................... 16

Texas Heartbeat Act, Senate Bill 8 ................................................................................ 35

Texas House Bill 7 ..................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)...................................................................................2, 7, 21, 39

Fed. R. Evid. 201(b)(2)................................................................................... 32

**Constitutional Provisions**

Tex. Const. art. IV, § 22 ...............................................................................34

Tex. Const. art. V, § 21 ................................................................................33

U.S. Const. art. I, § 8 ...................................................................................37

x

## INTRODUCTION

This case seeks to stretch federal jurisdiction to provide a remedy, including an *automatic* anti-suit injunction, to a plaintiff with no injury, even though he is statutorily barred from recovery because he is also a domestic abuser. That plaintiff, Jerry Rodriguez, filed this lawsuit because he is angry—he is angry that Kendal Garza decided to end her pregnancy by taking abortion pills. But because he cannot sue Mrs. Garza directly under Texas law, Plaintiff instead filed one lawsuit against Mrs. Garza's husband, Adam Garza, who allegedly procured the abortion pills Mrs. Garza took, and he filed this lawsuit against Defendant Dr. Remy Coeytaux, an out-of-state doctor who allegedly sent the pills to Mr. Garza.[1] In addition to seeking an anti-suit injunction, Plaintiff seeks damages from *Dr. Coeytaux* for the outcome of the independent decisions of Mrs. and Mr. Garza— Mrs. Garza, to end her pregnancy, and Mr. Garza, to help her obtain the pills.

Plaintiff seeks damages from Dr. Coeytaux for wrongful death and seeks an injunction under Texas House Bill 7 ("HB7") on two separate grounds. HB7, which did not take effect until over a year after Mrs. Garza's abortion, prohibits sending abortion-inducing medication into Texas, but government officials are barred from enforcing the law; instead, it is enforceable solely through so-called "*qui tam*" lawsuits. But Plaintiff's complaint is littered with substantive and procedural defects and fails many times over.

To start, this Court lacks subject-matter jurisdiction because Plaintiff cannot

---

[1] Plaintiff was careful not to name Mr. Garza, whose inclusion would destroy this Court's diversity jurisdiction, as a defendant in this case.

establish standing for any of his claims. He lacks standing to sue Dr. Coeytaux for wrongful death because Plaintiff's injury—Mrs. Garza's self-managed abortion—was the result of the independent actions of Mr. Garza and Mrs. Garza. With respect to HB7, Plaintiff invokes the statute's so-called "*qui tam*" provision not to recover any damages but solely to restrain Dr. Coeytaux from sending abortion-inducing medication to *anyone* in Texas. Plaintiff alleges no injury of his own, and he also cannot rely on relator standing because the state has no injury itself and because HB7 is not a genuine *qui tam* statute. And while he also invokes HB7's anti-suit clawback provision to enjoin Dr. Coeytaux from filing a so-called clawback action in California, Plaintiff cannot escape the reality that Dr. Coeytaux has not filed such an action and there are no allegations to show a clawback action is certainly impending.

Plaintiff's claims should also be dismissed under Rule 12(b)(6). For wrongful death, Plaintiff failed to allege facts establishing that (1) Dr. Coeytaux was both a but-for cause and the substantial-factor cause of the abortion, and (2) Dr. Coeytaux's conduct was tortious. As to HB7, it bars suit by any person who has been convicted of a family-violence offense. Plaintiff failed to allege that he is not such a person—for good reason; he has been convicted of assault against a family member. Additionally, HB7 violates the Texas Constitution by purporting to delegate enforcement authority to the general public, and it violates the Dormant Commerce Clause by facially discriminating against out-of-state physicians: Texas physicians are exempt from liability for the exact same conduct that gives rise to liability for out-of-state physicians.

## BACKGROUND

### A.  Plaintiffs' First Amended Complaint

Plaintiff filed his Original Complaint in July 2025, two months before HB7 was enacted. *See* ECF No. 1. Two months after HB7 took effect, Plaintiff filed his First Amended Complaint ("Amended Complaint"), alleging essentially the same facts. *See* ECF No. 16.

Plaintiff began dating Mrs. Garza in June 2024, though she was "not yet divorced" from her husband. *Id.* ¶¶ 6, 8. Plaintiff alleges that, in July 2024, Mrs. Garza became pregnant by him. *Id.* ¶ 7. Plaintiff acknowledges that Mr. Garza "was displeased" and ordered "abortion-inducing drugs" from Dr. Coeytaux to be shipped to his house in Galveston County. *Id.* ¶¶ 8–10. Plaintiff further alleges that Mr. Garza—*not Dr. Coeytaux*—"provided" those drugs to Mrs. Garza, who took them on September 19, 2024, with Mr. Garza's encouragement. *Id.* ¶ 11. The Amended Complaint does not allege that Dr. Coeytaux played any role in Mrs. Garza's decision to ingest the medication that Mr. Garza obtained and provided to her.

In October 2024, Mrs. Garza became pregnant a second time. *Id.* ¶ 12. Plaintiff alleges that Mrs. Garza also terminated this pregnancy with abortion medication provided to her by her husband, Mr. Garza. *Id.* ¶ 13. Plaintiff does not allege that Dr. Coeytaux provided or prescribed the medication or played any role in Mrs. Garza's second abortion.

3

Mr. Garza is not a Defendant in this case.[2] Plaintiff's claims here are against only Dr. Coeytaux, who is alleged to have shipped abortion medications once to Mr. Garza and who allegedly "intends to continue mailing abortion-inducing drugs into Texas." *Id.* ¶ 30. Plaintiff seeks (1) damages for wrongful death, (2) an injunction under HB7 to prevent Dr. Coeytaux from distributing abortion-inducing drugs into Texas in the future, and (3) an additional injunction under HB7's "anti-clawback" provision to prevent Dr. Coeytaux from initiating a lawsuit against Plaintiff or his attorney under California's abortion-shield law. *Id.* ¶¶ 29-40.

### B. Texas HB7

In September 2025, the Texas legislature enacted HB7, which took effect on December 4, 2025. Notably, all conduct involving Dr. Coeytaux allegedly occurred in September 2024—more than a year before HB7 took effect.

HB7 provides that, as of its effective date, no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code Ann. § 171A.051(a)(2) (West 2025). A violation of HB7 is not a prosecutable crime and it may not be enforced by the State of Texas or any state official or employee. *Id.* § 171A.052(b). Instead, HB7 "may be enforced only through" a civil lawsuit that the statute refers to as "a qui tam action." *Id.* § 171A.052(a). HB7 purports to confer "standing" on any "person" (other than the State or

---

[2] The day after he filed his initial complaint in federal court, Plaintiff filed a nearly identical wrongful death suit against Mr. Garza and Mrs. Garza's mother in state court. *Compare* ECF No. 1, *with Rodriguez v. Garza*, No. 25-CV-1294 (212th Dist. Ct., Galveston Cnty., Tex. July 21, 2025).

4

state officials) to "bring a qui tam action against" someone who either "violates" or "intends to violate" the statutory prohibition. *Id.* § 171A.101(a). HB7 prohibits certain people from bringing suit, including those who "committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure." *Id.* § 171A.101(d)(3)(B).

HB7 labels its enforcement mechanism a "qui tam" action, but it departs in fundamental ways from traditional *qui tam* statutes. In other statutory schemes with *qui tam* actions, like the False Claims Act ("FCA"), (1) the government can bring an action for damages or (2) a private person—the relator—can bring a *qui tam* action for himself and for the government, with such suit filed in the name of the government. *See Vt. Agency of Nat. Res. v. Stevens*, 529 U.S. 765, 769 (2000). If the relator files a *qui tam* suit, the government can intervene and take over prosecuting the suit. *Id.* Regardless of whether it intervenes, the proceeds of a successful suit belong to the government, and the relator receives a portion. *Id.* at 769–70.

By contrast, under HB7, the so-called *qui tam* action "must be brought in the name of the qui tam relator, who is an assignee of this state's claim for relief." Tex. Health & Safety Code Ann. § 171A.101(b) (West 2025). Notably, "the transfer of this state's claim to the qui tam relator is absolute, with the state retaining no interest" in the claim. *Id.* A successful HB7 relator's award is not tied to any damages suffered by the State. Instead, a successful HB7 relator is awarded "(1) injunctive relief sufficient to prevent the defendant from violating" HB7, (2) at least "$100,000 for each violation" of HB7, and (3) "costs and reasonable attorney's fees." *Id.* § 171A.104(a).

5

At the urging of physician and hospital groups, HB7 includes special protections for Texas physicians and hospitals.[3] HB7 "does not apply to and a civil action under [HB7] may not be brought against" any "physician," *id.* § 171A.002(a)(4)—defined as an "individual licensed to practice medicine in this state," *id.* § 171A.001(8)—"unless the qui tam relator pleads and proves that the provider or physician engaged in conduct constituting a violation of [HB7] while located outside this state." *Id.* § 171A.101(d)(8). Thus, mailing abortion-inducing medication to someone in Texas violates HB7 if mailed (1) from outside Texas or (2) by a physician licensed in another state. But a Texas-licensed physician does not violate HB7 by mailing abortion medication from Texas to someone in Texas. Also exempt is any "hospital," *id.* § 171A.002(a)(1), defined as hospitals licensed under Texas law or owned, maintained, or operated by the State of Texas, *id.* § 171A.001(6). Out-of-state hospitals can be sued.

Finally, HB7 includes provisions intended to negate statutory rights available under other states' "shield" laws. Relevant here, California's shield law provides for a "clawback" lawsuit against a person who brings litigation to "deter, prevent, sanction, or punish a person engaging in legally protected health care activity," including providing reproductive health care that is lawful in California, regardless of the patient's location. Cal. Civ. Code

---

[3] *Hearing of the H. Comm. on State Affs.*, 89th Leg., 2d Special Session at 2:38:25-2:39:15 (Tex. 2025) (statement of Dr. Zeke Silva, Chair, Texas Medical Association Council on Legislation), https://house.texas.gov/videos/22507 (advocating for an "exemption carve-out" for Texas-licensed physicians); *H.R. Compilation of Pub. Comments Submitted to the Comm. on State Affs. For HB 7*, at 199 (Tex. 2025), https://capitol.texas.gov/tlodocs/892/publiccomments/billhistory/HB00007H.pdf#navpane s=0 (statement of Heather De La Garza-Barone, Associate General Counsel, Texas Hospital Association) ("Our opposition to the bill as filed is largely centered around the fact that it does not provide a full exemption for all licensed Texas doctors and licensed Texas health care providers from having a *qui tam* filed against them in proposed Section 171A.101(d)(7)." (emphasis added))

6

§§ 1798.300(a), (d)(1)(C) (West 2026). HB7 states that, if a person brings a so-called *qui tam* suit, "the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant" from "bringing" or "continuing to litigate" a clawback suit. Tex. Health & Safety Code Ann. § 171A.151(c).

## LEGAL STANDARD

On a Rule 12(b)(1) motion to dismiss, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In a facial challenge, the court must dismiss if "it appears certain that [the plaintiff] cannot prove a plausible set of facts that establish subject matter jurisdiction." *Umphress v. Hall*, 133 F.4th 455, 462 (5th Cir. 2025) (internal quotation omitted). While the court "must accept [ ] as true the complaint's factual allegations," *id.* (internal quotation omitted), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Viera v. Hudman*, 2024 WL 111353, at *2 (5th Cir. Jan. 10, 2024) (dismissing complaint when plaintiffs "presented only conclusory allegations and legal conclusions" to establish standing).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must accept all well-pleaded facts as true

7

and view them in the light most favorable to the plaintiff, it cannot accept "conclusory allegations." *Fernandez-Montes*, 987 F.2d at 284. The complaint must allege "more than labels and conclusions," a "formulaic recitation of the elements of a cause of action," or facts "merely consistent with" liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

**ARGUMENT**

**I.      Plaintiff Lacks Standing to Assert Any of His Claims.**

Plaintiff lacks standing to bring any of his asserted claims. "To have Article III standing, a plaintiff must show [1] an injury in fact that is [2] fairly traceable to the challenged action of the defendant and [3] likely to be redressed by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff "bears the burden of establishing all three elements," *id.*, "for each claim . . . and for each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

None of Plaintiff's three claims—wrongful death and two injunctive relief claims— satisfy the threshold requirement of standing. Plaintiff's own allegations confirm that he lacks standing to bring wrongful death claims because the "wrongful death" he complains of is not "fairly traceable" to Dr. Coeytaux and is instead the result of the actions of third parties: Mrs. Garza and Mr. Garza, who made the independent decision to obtain and administer the abortion-inducing drugs at issue. For HB7, Plaintiff's allegations place Dr. Coeytaux's involvement solely before HB7's enactment and never allege any impending clawback action. The allegations confirm that any conceivable injury Plaintiff or Texas

8

might suffer is purely speculative and not "certainly impending," as Article III requires. Finally, because HB7 is not a true *qui tam* action, Plaintiff cannot avail himself of relator standing.

### A.    Plaintiff Lacks Standing to Bring His Wrongful Death Claim.

Plaintiff lacks standing for his wrongful death claim because he cannot show that his alleged injury is "fairly traceable" to Dr. Coeytaux. To the contrary, Plaintiff's allegations make clear that his alleged injury was caused by the independent actions of two other parties, neither of whom is a defendant here.

Under Article III, it is Plaintiff's burden to show that his injury—Mrs. Garza's alleged decision to end her first pregnancy—is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 637 (S.D. Tex. 2010) (quoting *Lujan*, 504 U.S. at 560). "An injury is generally insufficient to 'confer standing when the injury's existence depends on the decisions of third parties not before the court.'" *Id.* (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)). In those cases, the plaintiff must show that the "defendant's actions had a determinative or coercive effect upon the action of the third party." *TF-Harbor, LLC v. City of Rockwall,* 18 F. Supp. 3d 810, 820 (N.D. Tex. 2014) (internal quotations and brackets omitted), *aff'd*, 592 F. App'x 323 (5th Cir. 2015). Where the defendant "merely makes it possible for a third party to take an action but neither requires nor encourages that action," then the causal chain is broken. *Id*. at 821. In such circumstances, the plaintiff's "quarrel is with the third party, not the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021).

Here, Mrs. Garza's self-managed abortion resulted from the independent acts of two third parties not before the court: Mr. Garza and Mrs. Garza. The Amended Complaint alleges a series of independent events. Mr. Garza first "ordered" the abortion-inducing drugs "with the intent of using them to murder Mr. Rodriguez's unborn child." ECF No. 16 ¶ 9. Dr. Coeytaux allegedly then shipped the drugs to Mr. Garza. *Id.* ¶ 10. Dr. Coeytaux's alleged involvement ends there. Next, Mr. Garza, not Dr. Coeytaux, "provided [Mrs. Garza] with the abortion drugs" and "pressured" her to take them. *Id.* ¶ 11. Mrs. Garza then made the independent decision to "ingest[] the abortion-inducing drugs." *Id*. Mrs. Garza's "self-managed abortion," *see generally id.*, therefore resulted from the independent decisions of two "third parties not before the court." *See Abecassis*, 704 F. Supp. 2d at 637.

There are no allegations that Dr. Coeytaux had any "determinative or coercive effect" on either Mr. Garza or Mrs. Garza, much less both of them. Plaintiff does not allege that Dr. Coeytaux communicated with Mrs. Garza. Nor does he allege Defendant did anything to require, encourage, or incentivize Mr. Garza or Mrs. Garza to act as they did. *See TF-Harbor*, 18 F. Supp. 3d at 820–21. To the contrary, Plaintiff admits that five months later, Mrs. Garza *again* made the decision to terminate a second pregnancy via a "self-managed abortion" with *no* involvement from Dr. Coeytaux, "even though Mr. Rodriguez pleaded with her not to do it." ECF No. 16 ¶ 13.

In short, this is a textbook case for dismissal due to lack of standing because Plaintiff's claimed injury is not fairly traceable to the Defendant's challenged actions. *See Abecassis*, 704 F. Supp. 2d at 644 (dismissing claims where defendants' actions were "too attenuated from the plaintiffs' injuries to satisfy the causation prong of Article III

10

standing”); *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 425 (S.D. Miss. 2024) (similar); *Deep S. Ctr. for Env’t Just. v. EPA*, 138 F.4th 310, 326 (5th Cir. 2025) (“Traceability requires more than [] bare speculation.”).

### B.   Plaintiff Lacks Standing to Assert an HB7 “*Qui Tam*” Claim.

Plaintiff also lacks standing to seek an injunction under HB7 to restrain Dr. Coeytaux from mailing abortion-inducing drugs into Texas. *See* ECF No. 16 ¶¶ 30–33. This request fails because the Amended Complaint pleads no facts alleging that Mr. Rodriguez suffered any injury *after* HB7 went into effect. Instead, although Plaintiff claims he has “Article III standing to sue Dr. Coeytaux as an assignee of the state’s claim for relief,” *id.* ¶ 32 (citing *Vermont Agency*, 529 U.S. 765), he alleges no facts—only bare legal conclusions—to establish any violation of HB7 since it took effect, leaving Texas with no claim to assign. And even if Plaintiff’s threadbare allegations were adequate, HB7 is an improper *qui tam* statute that cannot confer standing on Plaintiff.

### 1.   Texas Has No Claim to Assign to Plaintiff.

Having denied any potential personal injury or stake, Plaintiff’s only theory of standing relies on Texas assigning a claim to him as a “*qui tam* relator.” *See id.* ¶¶ 31–32. But to qualify as a proper *qui tam* relator, Plaintiff must still establish Texas has standing to assert a claim against Dr. Coeytaux; otherwise Texas has nothing to assign. *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 677 (9th Cir. 2021) (noting a *qui tam* litigant “step[s] into the shoes” of the government based on an “assignment theory” (citing *Vermont Agency*, 529 U.S. at 773–74)), *abrogated on other grounds by TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *see also Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 285 (5th Cir.

11

2012). In short, "[s]tanding exists because 'a *qui tam* relator is, in effect, suing as a partial assignee of the United States['s] claim for damages." *Id.* (quoting *Vermont Agency*, 529 U.S. at 773 n.4). Therefore, when the state *itself* cannot satisfy the injury-in-fact requirement of standing, *qui tam* litigants also lack standing. *See United States ex rel. Yellowtail v. Little Horn State Bank*, 828 F. Supp. 780, 786–88 (D. Mont. 1992); *Burt v. Playtika, Ltd.*, 132 F.4th 398, 403–04 (6th Cir. 2025); *Magadia*, 999 F.3d at 674.

That is the case here. To satisfy the injury-in-fact requirement for injunctive relief claims, plaintiffs cannot rely on past violations because injunctive relief "cannot conceivably remedy any past wrong." *Stringer*, 942 F.3d at 720 (quotation omitted). Instead, a plaintiff must "demonstrat[e] a continuing injury or threatened future injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). A "threatened injury must be *certainly impending* to constitute injury in fact," and the Court cannot rely on mere "[a]llegations of *possible* future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (internal quotations omitted). In other words, "there must be at least a 'substantial risk' that the injury will occur." *Stringer*, 942 F.3d at 721 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("[B]ecause the plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury.'") (citation omitted).

Vague allegations of an "intent" to commit a future violation cannot establish a "certainly impending" injury in fact—especially where the complaint pleads no concrete facts showing when or how a violation will occur. *See Lujan*, 504 U.S. at 564 n.2. In *Lujan*, for example, the Supreme Court held that the plaintiff's "'some day' intentions—without

12

any description of concrete plans, or indeed even any specification of *when* the some day will be—[did] not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564 (emphasis in original). The same was true in *Lyons*, where the Court dismissed a plaintiff's claims for injunctive relief because his allegations of previously being placed in chokeholds did "nothing to establish a real and immediate threat that he would again be stopped" and choked. 461 U.S. at 105. "In other words, a plaintiff alleging a past wrong must show that there is a 'real or immediate threat that he will be wronged again' in order to have standing for injunctive relief." *Van Winkle v. Houcon Partners, L.P.*, 2018 WL 3543908, at *3 (S.D. Tex. July 03, 2018) (quoting *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997)).

Plaintiff does not come close to satisfying this standard. As a threshold matter, Plaintiff fails to allege any past violation of HB7, because all the allegations here occurred before HB7's enactment. And even if he had alleged such a violation, a past wrong alone is inadequate to satisfy the injury-in-fact requirement when the Plaintiff seeks only prospective injunctive relief. *See id.*; *Lyons*, 461 U.S. at 105.

As to any *future* injury, the Amended Complaint is simply devoid of any factual allegations to plausibly establish that Dr. Coeytaux is likely to send abortion-inducing pills into Texas. The most that Plaintiff alleges is that "Coeytaux intends to continue mailing abortion-inducing drugs into Texas." ECF No. 16 ¶ 30. But that is nothing more than a "formulaic recitation of the elements of a cause of action" under HB7. *Twombly*, 550 U.S. at 555; *see* Tex. Health & Safety Code Ann. § 171A101(a)(2) (West 2025) (purporting to authorize *qui tam* action against a person who "intends to violate" HB7). Plaintiff fails to

13

allege any facts to substantiate this bare legal conclusion: there is no concrete *plan* alleged nor any factual support about "*when* the some day" will supposedly be. *Lujan*, 504 U.S. at 564 (emphasis in original); *see Lyons*, 461 U.S. at 105–06; *Van Winkle*, 2018 WL 3543908, at \*3. No allegation is made that Dr. Coeytaux has been contacted about or discussed shipping abortion-inducing drugs since HB7 went into effect. Nor does Plaintiff allege any presently-pregnant Texas resident (including Mrs. Garza) has reached out to Dr. Coeytaux. Plaintiff's assertions are therefore just "conclusory allegations" that are "masquerading as factual conclusions." *Fernandez-Montes*, 987 F.2d at 284.

Indeed, Plaintiff's allegation that Mrs. Garza's husband obtained abortion-inducing drugs a second time *after* September 2024 from someone *other than Dr. Coeytaux* puts an end to any conceivable claim that Plaintiff has a certainly impending future injury resulting from Dr. Coeytaux's conduct. *See* ECF No. 16 ¶ 13.

Finally, the Texas Legislature's authorization of suits against those who "intend[] to violate" HB7 cannot establish standing to seek an injunction. Tex. Health & Safety Code Ann. § 171A.101(a)(2)(West 2025). Simply put, a statute cannot convert speculation into standing. *See TransUnion*, 594 U.S. at 426–27 ("[A] statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). But speculation is all that Plaintiff has to offer. Lacking any allegations of concrete plans to violate this newly enacted law, Plaintiff has failed to allege a "substantial risk" of a "certainly impending" injury in fact to Texas. Texas therefore lacks standing itself and cannot assign standing to Plaintiff.

14

### 2. HB7 Does Not Fall into the *Qui Tam* Exception Under *Vermont Agency*.

Even if Plaintiff had alleged sufficient facts to establish that Texas has a certainly impending future injury, this Court would still lack jurisdiction because HB7 is not a proper *qui tam* statute and Plaintiff therefore cannot act as an assignee of the state. Because states cannot manufacture standing simply by labeling a claim as a "*qui tam* action," Plaintiff must demonstrate that the harm he alleges under HB7 complies with the federal standing requirements for *qui tam* actions as discussed in *Vermont Agency*. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("States cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse."). Under *Vermont Agency*, "[a] purported *qui tam* statute must hew closely to the traditional scope of a *qui tam* action for an uninjured plaintiff to maintain suit under Article III." *Magadia*, 999 F.3d at 675; *see Hollingsworth*, 570 U.S. at 709, 711 (because the state law was "readily distinguishable" from *qui tam* actions, it could not confer standing). To "hew closely" to traditional *qui tam* statutes, the statutory scheme must be a "[1] partial assignment [2] of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773–74; *see also Little*, 690 F.3d at 285.

An essential feature of traditional *qui tam* actions is that the relevant statute must "*partially*—not fully—assign the propriety [sic] remedy to the relator." *State ex rel. White v. Griffin*, 604 F. Supp. 3d 1143, 1148–49 (D.N.M. 2022) (emphasis in original); *see also Magadia*, 999 F.3d at 677; *Vermont Agency*, 529 U.S. at 773–74; *Little*, 690 F.3d at 285. A traditional *qui tam* statute "requires that the plaintiff share part of the recovery with the

15

government," and it "provides procedural safeguards to ensure that the government retains some control of the action." *Burt*, 132 F.4th at 404; *see Magadia*, 999 F.3d at 677. For example, under the FCA, the federal government may intervene in the litigation, and it retains settlement and dismissal authority. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753–55 (5th Cir. 2001); *Griffin*, 604 F. Supp. 3d at 1148–49; *see* Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 579, 588–90 (2005) (under English common law, "the crown could exercise partial control over *qui tam* actions").

Another core feature of traditional *qui tam* claims is that the state assigns a proprietary interest rather than a solely sovereign interest. *Griffin*, 604 F. Supp. 3d at 1147–48. The remedy in *qui tam* actions is traditionally damages, not forward-looking injunctive relief. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 294 n.24 (5th Cir. 1999). For example, in *Vermont Agency*, the Supreme Court upheld relator standing under the FCA because "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's *damages claim*." 529 U.S. at 773 (emphasis added).

These requirements for relator standing prevent *qui tam* actions from impermissibly allowing citizen-suits that sidestep Article III's core injury-in-fact requirement. *See TransUnion*, 594 U.S. at 427 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue"); *Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016); *Lujan*, 504 U.S. at 573–74.[4] And these requirements are the only way to avoid an

---

[4] *See also Spokeo*, 578 U.S. at 348 (Thomas, J., concurring) ("Congress cannot authorize private plaintiffs to enforce *public* rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him." (emphasis in original)); Myriam E. Gilles, *Representational Standing: U.S. ex rel. Stevens and the Future of Public Law Litigation*, 89 Calif.

16

unconstitutional assignment of Texas's prosecutorial authority to private citizens. *See infra*, at 33–36; *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918).

When these requirements are lacking, courts dismiss claims brought under purported "*qui tam*" statutes for lack of standing. For example, the Sixth Circuit dismissed a claim under Tennessee's gambling recovery law, Tenn. Code § 29-19-105, because it differed from traditional *qui tam* claims. *Burt*, 132 F.4th at 404–05. Unlike traditional *qui tam* actions, Tennessee's law did not require "plaintiff share part of the recovery" and lacked "procedural safeguards to ensure that the government retain[ed] some control of the action." *Id.* at 404. Because "nothing in the statute suggests that the government is the real party in interest," the Court found that the Tennessee law "is not a *qui tam* statute" and the plaintiff was not entitled to "*qui tam* standing." *Id.* at 405.

Likewise, the Ninth Circuit dismissed a claim under California's Private Attorneys General Act, Cal. Lab. Code § 2699, for failing to comply with traditional *qui tam* actions. *Magadia*, 999 F.3d at 675–78. Several features looked like the FCA: California's law clearly operated as an assignment, the plaintiff shared the damages with the state, and the state controlled whether the plaintiff could bring a claim in the first place. *Id.* at 675. But because California lacked the ability to intervene or otherwise control the litigation once filed, the statute lacked the significant "procedural controls" necessary to ensure the government maintains "substantial authority" over the action, and thus could not form a basis for standing for a private plaintiff's standing. *Id.* at 677; *see also Griffin*, 604 F. Supp.

---

L. REV. 315, 341–48 (2001) (arguing a full assignment of a sovereign injury falls outside of "traditional formulation of assignment" law and would violate separation of powers).

17

3d at 1147–48 (rejecting *qui tam* standing under New Mexico's *quo warranto* statute because New Mexico fully assigned its sovereign—not proprietary—injury).[5]

HB7 purports to authorize an action that looks nothing like traditional *qui tam* claims because it is (1) a complete assignment (2) of the state's sovereign injury. An HB7 action therefore fails to meet the requirements for *qui tam* standing under *Vermont Agency*.

First, by its terms, HB7 "absolute[ly]" and fully assigns Texas's interest in the claim. Tex. Health & Safety Code Ann. § 171A.101(b) (West 2025). Unlike the FCA, Texas has no ability to control HB7 litigation or steer its direction. HB7 does not require Texas to consent to initiation of the suit. And Texas lacks the ability to intervene, settle, or dismiss the suit. HB7 also does not require plaintiffs to share any monetary award with Texas. *Id.* § 171A.104(b). Instead, it provides that "the state retain[s] no interest" in the claim, *id.* § 171A.101(b), and mandates that the "entire amount awarded" go to the plaintiff, with a portion going in some cases to a charitable organization designated by the plaintiff, *id.* § 171A.104(b). Like the state laws struck down in *Burt*, Texas recovers nothing in HB7 suits. Texas relinquishes any interest in the claim as well as control over direction of the action. With no state interest or control over the suit, HB7 is in effect an impermissible generalized citizen-suit statute. *See Lujan*, 504 U.S. at 573–74. This alone distinguishes HB7 from *Vermont Agency*, as a partial assignment is a quintessential feature that ensures

---

[5] Courts also routinely reject *qui tam* standing arguments under federal statutes when they too lack the necessary "procedural safeguards." *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233–35 (11th Cir. 2008); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 918–19 (6th Cir. 2008); *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 24–26 (1st Cir. 2007); *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97–101 (2d Cir. 2009).

18

"the government is the real party in interest." *Burt*, 132 F.4th at 404–05; *see Griffin*, 604 F. Supp. 3d at 1149; *Magadia*, 999 F.3d at 675–78.

Second, HB7 impermissibly assigns plaintiffs purely sovereign injuries. No Texas property or monies are damaged when someone "intends" to ship, or does in fact ship, abortion-inducing drugs into Texas. *See* ECF No. 16 ¶ 30. Even if Plaintiff sought monetary recovery under HB7, which he does not, such monetary relief is penal, not compensatory, because it is "fixed without regard to any loss." *In re Xerox Corp.*, 555 S.W.3d 518, 530, 533–34 (Tex. 2018); *see* Tex. Health & Safety Code Ann. § 171A.104(a)(2) (West 2025) (monetary recovery is "an amount of not less than $100,000 for each violation" of HB7); *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 721 (Tex. 2024) (state qui tam scheme is penal where civil remedies are penalties, not damages). The only potential injury here— which itself is not even concrete or actual—is a sovereign injury to Texas caused by someone having the "intent" to violate its laws. But such a sovereign injury is not assignable and cannot be the subject of a *qui tam* claim under *Vermont Agency*.

Regardless of what label HB7 uses, it is in substance an impermissible citizen-suit. Plaintiff lacks any concrete, personal injury, and he cannot step into the State's shoes as in a traditional *qui tam* action. Plaintiff therefore lacks standing to assert his HB7 claim.

### C.    Plaintiff Lacks Standing to Seek an Anti-Suit Injunction.

In addition to seeking an injunction to prevent Dr. Coeytaux from sending abortion-inducing drugs into Texas, Plaintiff also seeks an injunction to prevent Dr. Coeytaux from filing a clawback lawsuit under California law. ECF No. 16 ¶ 38; *see* Cal. Civ. Code § 1798.300 *et seq.* (West 2026). But that remedy in itself relies on establishing a claim

under HB7. *See* TEX. HEALTH & SAFETY CODE § 171A.151(a) (defining an anti-clawback provision as a suit brought against someone for "bringing or engaging in an action authorized by this chapter"). Because Plaintiff lacks standing for his HB7 *qui tam* claim, he cannot be entitled to an anti-clawback injunction.

Additionally, Plaintiff fails to allege a "certainly impending" future threat under HB7's anti-clawback provision and thus lacks standing to seek the "extraordinary remedy" of an anti-suit injunction. *Clapper*, 568 U.S. at 409 (emphasis omitted); *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 584 (5th Cir. 2023). Plaintiff's Amended Complaint does not, and cannot, allege that Defendant has ever threatened to file suit under California law or otherwise caused him any injury. Rather, Plaintiff relies on the mere presence of California's shield law and the possibility that it could be used against him some day in the future. The shield law has been in effect since this lawsuit was originally filed in July 2025, yet Dr. Coeytaux has not filed such an action. These hypothetical injuries based on "highly attenuated chain of possibilities" are insufficient to support standing to seek an injunction. *Clapper*, 568 U.S. at 410; *see Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (former councilman's change in campaign strategy and withholding of solicitations were self-imposed, speculative injuries because they "depend[ed] in large part on the actions of third-party donors" and prosecution under the law "was far from [] inevitable").

Even if Plaintiff had alleged facts to show that the threat of a clawback action was imminent or inevitable, Plaintiff would obviously challenge whether Dr. Coeytaux is entitled to a judgment—he might argue that California law does not apply at all to him— and challenge its enforceability, especially given HB7 prohibits Texas courts from

20

enforcing clawback actions and requires the application of Texas law in clawback lawsuits. See Tex. Health & Safety Code Ann. § 171A.151(b), (f) (West 2025). Ultimately, this chain of events is too hypothetical to establish a concrete and real injury in fact under Article III.

And, as the holdings in *Clapper* and *Zimmerman* illustrate, any self-inflicted harm Plaintiff or his counsel have based on a hypothetical future action under California law cannot confer standing because that action is not "certainly impending." *See Clapper*, 568 U.S. at 409–10, 416; *Zimmerman*, 881 F.3d at 389–90. Even a "reasonable" fear of liability under California law (which there is none) would be insufficient. *See Clapper*, 568 U.S. at 415. Because a clawback action is not certainly impending, Plaintiff lacks standing to assert his claim for an anti-suit injunction under HB7.

## II.   Plaintiff Failed to State a Claim for Wrongful Death.

Plaintiff's wrongful-death claim should be dismissed under Rule 12(b)(6) because his allegations, even if true, do not give rise to liability under the Wrongful Death Act. Wrongful death is a statutory action that "allows a deceased tort victim's surviving parents, children, and spouse to recover damages for their losses from the victim's death." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009). A plaintiff's ability to sue is derivative of the decedent's right to have brought a tort suit for their own injuries had they lived. *Id.*; Tex. Civ. Prac. & Rem. Code § 71.003(a). The plaintiff must show that the defendant's tortious conduct proximately caused the death. *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 528 (Tex. 2025); Tex. Civ. Prac. & Rem. Code § 71.002(a)–(b).

Here, the Amended Complaint fails to allege facts establishing that (1) Dr. Coeytaux proximately caused the abortion, and (2) Dr. Coeytaux's conduct was tortious. Each of

21

these pleading defects independently requires dismissal.

### A. Plaintiff Failed to Allege Facts Establishing that Dr. Coeytaux Proximately Caused the September 2024 Abortion.

Even taking the allegations as true, Dr. Coeytaux was not the proximate cause of the September 2024 abortion. Proximate cause has "two elements: (1) cause in fact, and (2) foreseeability." *Werner Enters.*, 719 S.W.3d at 532. The first element, cause in fact, "has two components: (1) 'but-for' causation, and (2) 'substantial-factor' causation." *Id.* The complaint fails to allege facts to support either of the two components of cause in fact.

#### 1. Dr. Coeytaux was not a but-for cause of Mrs. Garza's abortion.

An act or omission "is the 'but-for' cause of an injury if, without the act or omission, the harm would not have occurred." *Id.* (quotation marks omitted). The Amended Complaint fails to allege that Mrs. Garza would not have had an abortion if Dr. Coeytaux had not mailed abortion pills to Mr. Garza. Instead, it shows the opposite: that Mrs. Garza obtained abortion pills from another source on a separate occasion, demonstrating that she could, and did, have an abortion *without* obtaining pills from Dr. Coeytaux. *See* ECF No. 16 at ¶¶ 12–13. Those allegations foreclose any inference that Dr. Coeytaux's alleged mailing of pills was a but-for cause of her abortion, and defeats causation as a matter of law. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 115 (Tex. 2013) (physician's negligence was not but-for cause of patient's suicide where evidence did not show that suicide would not have occurred regardless); *see also Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 161–63 (Tex. 2022) (same).

#### 2. Mrs. Garza's decision to have an abortion, not the mailing of pills, was the substantial factor that caused the abortion.

22

"The substantial-factor requirement incorporates the idea of responsibility into the question of causation." *Werner Enters.*, 719 S.W.3d at 528 (quotation marks omitted). "[L]iability falls only on a party whose substantial role in bringing about the injury is such that he is 'actually responsible for the ultimate harm.'" *Id.* (quoting *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 224 (Tex. 2010)). "Liability does not fall on other participants in the causal chain whose actions merely created the condition which made the injury possible." *Id.* (quotation marks omitted).

For example, in *Bell v. Campbell*, after two cars collided and a trailer that was attached to one car overturned, three people who gathered to help move the trailer were struck by another vehicle. 434 S.W.2d 117, 119 (Tex. 1968). Although the defendants' negligence caused the first collision, they were not responsible for the three individuals who were subsequently struck. *Id.* at 122. The defendants' negligent acts and omissions "had run their course and were complete" and "simply created a condition which attracted [the plaintiffs] to the scene, where they were injured by a third party." *Id.*; *see also Roberts v. TXU Energy Retail Co.*, 171 S.W.3d 901, 904 (Tex. App. 2005) (where disconnection of electricity led to use of candles that started a fire that caused children's deaths, disconnection "was not a substantial factor in bringing about the children's deaths because the children died as a result of a fire caused by the handling of a candle").

Here, it was Mrs. Garza's decision to have an abortion, not Dr. Coeytaux's alleged mailing of pills, which was the "active and immediate cause" of the abortion. *Bell*, 434 S.W.2d at 120. Mailing pills to Mr. Garza did not in and of itself result in the death of Mrs. Garza's fetus. Once Mr. Garza received the alleged pills from Dr. Coeytaux, Dr. Coeytaux's

23

involvement was complete; his involvement merely created the condition for Mr. Garza's and Mrs. Garza's subsequent acts. The "singular fact that substantially explains why" the abortion occurred is that Mrs. Garza decided to have an abortion and to ingest the pills. *Werner Enters.*, 719 S.W.3d at 534.

### B.    The Amended Complaint's Allegations of Statutory Violations Do Not Support a Wrongful Death Claim.

Plaintiff failed to plead a wrongful act that could support tort liability. "It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." *Perry v. S.N.*, 973 S.W.2d 301, 304 (Tex. 1998) (quoting *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). Because a wrongful-death plaintiff steps into the shoes of the decedent, *Labatt*, 279 S.W.3d at 644, a prerequisite to liability here is a legal duty owed by Dr. Coeytaux to Mrs. Garza's fetus. The "norm" is to "deriv[e] duty from the common law and look[] to the statute only for the standard of conduct." *Perry*, 973 S.W.2d at 307. Here, however, Plaintiff's wrongful death claim is premised solely on the purported violations of various statutes. ECF No. 16 at ¶¶ 15–16. His claim fails for myriad reasons.

### 1.    Plaintiff fails to plead sufficient facts as to the alleged statutory violations.

Plaintiff's bare allegations that Dr. Coeytaux "violated the law," ECF No. 16 ¶ 15, followed by a laundry list of statutory citations, *id.* ¶¶ 16–26, do not meet the high bar of establishing that any of these statutes were violated. The Complaint nowhere pleads facts showing *how* Dr. Coeytaux's alleged conduct satisfies the elements of any of these statutes, much less how any such violation gives rise to a duty in tort. The Federal Rules require more than a catalog of legal conclusions untethered to specific factual allegations.

24

*Twombly*, 550 U.S. at 557. That deficiency is dispositive.

And in any event, even accepting the factual allegations as true, Plaintiff fails to establish violations of all these statutes. For example, Texas's pre-*Roe* abortion ban, ECF No. 16 at ¶¶ 23–24, was "repealed by implication." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004); *see id.* at 850 (Jones, J., concurring) ("A judicial decision . . . cannot turn back Texas's legislative clock to reinstate the laws, no longer effective, that formerly criminalized abortion"). As to murder, ECF No. 16 at ¶¶ 25–26, the Criminal Homicide chapter of the Penal Code "does not apply to the death of an unborn child" if the conduct was "committed by the mother of the unborn child." Tex. Penal Code Ann. § 19.06(1) (West 2025). A person is not liable for aiding or abetting murder where the conduct aided is not itself murder. *See* Tex. Penal Code Ann. § 7.02(a)(1) (West 2025); *see also State v. Hunter*, 624 S.W.3d 589, 589 (Tex. Crim. App. 2021) (Keller, P.J., concurring in denial of review) ("A mother choosing to abort her unborn child is not a crime under Texas law, so the defendant cannot be guilty of the offense of solicitation for soliciting such a crime."). Dr. Coeytaux also did not "directly commit[] murder" or "felony murder," *contra* ECF No. 16 at ¶¶ 25–26, because he did not "cause[]" the death of Mrs. Garza's fetus, Tex. Penal Code Ann. § 19.02(b)(West 2025). As discussed, *supra*, at 22, he was not a "but for" cause of the abortion, and his alleged mailing of medication to Mr. Garza alone was "clearly insufficient" to produce death. Tex. Penal Code Ann. § 6.04(a)(West 2025).

### 2. Alleged violations of these statutes do not give rise to tort liability under Texas law.

The Texas Supreme Court has refused to recognize most statutory violations as

giving rise to tort liability. *See Perry*, 973 S.W.2d at 304–05 & n.4. That is true even for criminal statutes: "All persons have a duty to obey the criminal law in the sense that they may be prosecuted for not doing so, but this is not equivalent to a duty in tort." *Id.* at 304. "Tellingly, Texas courts rarely imply a civil tort duty from a criminal statute." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 180 (5th Cir. 2018). "For example, the Texas Supreme Court has held that a failure to report child abuse is not negligence per se even if it violates a mandatory reporting law." *Id.* at 181 (citing *Perry*, 973 S.W.2d at 309). "[T]he Supreme Court of Texas has also refused to recognize a negligence per se cause of action against social hosts who unlawfully provide alcohol to underage guests." *Id.* (citing *Reeder v. Daniel*, 61 S.W.3d 359, 364–65 (Tex. 2001)). The Texas Supreme Court has created a new civil duty from a statute "on only one occasion." *Perry*, 973 S.W.2d at 307.

No Texas court has held that violating the statutes cited in the Amended Complaint gives rise to civil tort liability. Federal courts should not "create 'innovative theories of recovery'" under state law but should "rather merely apply [state law] 'as it currently exists.'" *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995) (en banc) (refusing to create state-law private cause of action for a statutory violation) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1217 (5th Cir. 1985)). Under current Texas law, Plaintiff has no wrongful-death claim based on violations of any of the cited statutes. That requires dismissal.

### 3. The Court Should Decline to Create a New Duty in Tort for the Alleged Statutory Violations.

Even if this Court were to consider whether to create a brand-new tort duty based

26

on the statutes Plaintiff invokes in the Amended Complaint, every relevant factor militates against doing so.

There are two "threshold questions": "whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry*, 973 S.W.2d at 305. Because a wrongful death plaintiff steps into the shoes of the decedent, Plaintiff must show that (a) all the cited regulations and statutes were intended to protect, not Mrs. Garza, but her fetus, and that (b) the regulations and statutes were designed to prevent Mrs. Garza from choosing to have an abortion. He cannot do so. Many of the cited statutes and regulations are meant to do entirely the opposite and are designed to protect the patient, not third parties. For example, the stated reasons for the Woman's Right to Know Act (ECF No. 16 at ¶¶ 18, 20) are to provide information to women to protect their health and advise them about potential complications.[6] More broadly, the State of Texas has argued that its abortion regulations are intended and designed to protect women who seek abortion care, not to prevent abortions.[7]

---

[6] *See, e.g.*, H. Comm. on State Affs., Bill Analysis, H.B. 15, 78th Leg., R.S., at 2 (Tex. 2003); H. Comm. On State Affs., Bill Analysis, H.B. 15, 82d Leg., R.S., at 2–3 (Tex. 2011); H. Comm. On State Affs., Bill Analysis, H.B. 2, R.S., at 5–7 (Tex. 2013); Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 10 §§ 2–3, secs. 171.006(a)–(b), 2021 Tex. Sess. Law Serv. 3934, 3934–35 (codified at Tex. Health & Safety Code Ann. §§ 171.006(a)–(b), 171.061).

[7] *See, e.g.*, Br. for Respondent at 16, *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) (No. 15-274), 2016 WL 344496, at *16 ("[F]acially apparent and expressly stated purpose" of abortion regulations, including those related to "abortion-inducing drugs," was "to ensure patient safety and raise standards of care"); Br. of Appellants, *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001) (No. 00–20037), 2000 WL 33983059, at *35 (arguing abortion facility licensing requirements were for the "protection [of] the health and safety of women undergoing abortion); State Defs.' Resp. to Pls.' Mot. Summ. J. 13, *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, No. 1:11-cv-00486-SS (W.D. Tex. Dec. 7, 2011), ECF No. 101 (defending the

27

Assuming Plaintiff could surpass those threshold hurdles, the Texas Supreme Court has identified several factors to consider when "determin[ing] whether it is appropriate to impose tort liability for violations of [a] statute." *Perry*, 973 S.W.2d at 305. In analyzing the factors, the Court "must look beyond the facts of this particular case to consider the full reach of the statute." *Id.* at 305. The question is not whether a statute that criminalized *only* the conduct alleged in the case—here, mailing abortion medication—would be an appropriate basis for a tort action. *Id.* Instead, the question is "whether it is appropriate to impose tort liability on any and every person who" violates the statute based on its full reach. *Id.* The five "factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way." *Id.* at 306. Rather, the factors are "guides to assist a court in answering the ultimate question of whether imposing tort liability for violations of a criminal statute is fair, workable, and wise." *Id.*

First, courts consider whether recognizing a tort claim "would derive the element of duty solely from" the statute, rather than from the common law. *Id.* at 306. "[T]he defendant in most negligence per se cases already owes the plaintiff a pre-existing common law duty to act as a reasonably prudent person, so that the statute's role is merely to define more precisely what conduct breaches that duty." *Id.* "But recognizing a new, purely statutory duty can have an extreme effect upon the common law of negligence when it allows a cause of action where the common law would not." *Id.* (quotation marks omitted).

---

disclosures required by the Woman's Right to Know Act because "the entire point of informed consent is to provide patients with information that they may not want to hear, to ensure that they are fully informed about the nature and consequences of a medical procedure").

28

Here, there are no preexisting common law duties owed to Mrs. Garza's fetus. A person who gives someone an abortion-inducing drug owes no common-law duty to a fetus that the person be a licensed physician, much less a Texas-licensed physician. *Contra* Am. Compl. ¶¶ 16, 19. Nor is there a duty toward a fetus that an abortion be performed only in a Texas-licensed facility. *Contra id.* ¶ 21. While there is a general duty to obtain consent for a medical procedure, that duty is owed to the patient, not to the fetus, and there is no common-law duty to provide an ultrasound before providing an abortion. *Contra id.* ¶¶ 18, 20. There is no common-law duty to avoid using mail or a common carrier to deliver an abortion-inducing drug. *Contra id.* ¶ 22. Nor does a doctor owe a fetus any common law duty to deny a patient an abortion. *Contra id.* ¶¶ 23-24. All these requirements are creatures solely of statute. "[T]he absence of a relevant common law duty" strongly counts against recognizing tort liability. *Perry*, 973 S.W.2d at 307.

The second factor is "whether the statute clearly defines the prohibited or required conduct." *Id.* A statute that conditions compliance on "difficult judgment calls does not clearly define what conduct is required in many conceivable situations." *Id.* at 307–08. Several of the cited statutes fail this analysis and do not clearly define prohibited conduct. As discussed, the Fifth Circuit has held that the pre-*Roe* ban was impliedly repealed; it therefore does not clearly prohibit any conduct. *Contra* ECF No. 16 ¶¶ 23-24. The Court should not deepen this uncertainty by creating a new tort duty.

Third, courts consider whether recognizing a legal duty "would create liability without fault." *Perry*, 973 S.W.2d at 308. Violations of statutory licensing requirements generally do not give rise to tort liability; one reason is that "there may be reasons a license

29

has not been renewed that do not relate to the operator's lack of skill." *Michaels v. Avitech, Inc.*, 202 F.3d 746, 752 (5th Cir. 2000); *see Morrison v. Le Tourneau Co. of Ga.*, 138 F.2d 339, 341 (5th Cir. 1943) (lack of pilot's license does not show pilot's lack of skill); *contra* ECF No. 16 at ¶¶ 16, 19, 21.

Fourth, courts consider whether recognizing a tort claim "would impose ruinous liability disproportionate to the seriousness of the defendant's conduct." *Perry*, 973 S.W.2d at 308. Here, imposing potentially ruinous tort liability on someone who allegedly mailed abortion pills, while exempting from liability the person who decided to take the pills, would be fundamentally disproportionate. Where Texas law rightly excludes Mrs. Garza from liability for her decision to have a self-managed abortion, Tex. Civ. Prac. & Rem. Code Ann. § 71.003(c)(1) (West 2025), there is no basis for imposing liability on upstream actors.

The fifth factor is "whether the injury resulted directly or indirectly from the violation of the statute." *Perry*, 973 S.W.2d at 308. The "indirect relationship between violation of . . . a statute and the plaintiff's ultimate injury is a factor against imposing tort liability." *Id.* at 309. The Texas Supreme Court has rejected tort liability based on violations of "aiding and abetting" statutes because they are too far removed from the harm, and it would subject individuals to liability based on a third party's act. *Id.* at 308–09; *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 279 (Tex. 1979); *contra* ECF No. 16 ¶¶ 16, 17, 18–20.

Here, even assuming the alleged facts as true, none of the statutory violations directly caused the alleged harm. Dr. Coeytaux's licensing status and the use of the mail to

30

provide medication did not themselves cause an abortion. There were two independent actors between Dr. Coeytaux's alleged mailing of the abortion pills to Mr. Garza and the abortion itself: Mr. and Mrs. Garza. ECF No. 16 at ¶ 11. The Texas Supreme Court has stated that it is "not aware of any Texas case" applying tort liability for violation of a statute that "interposes not one but two independent actors between the plaintiff and the defendant." *Perry*, 973 S.W.2d at 309. This case should not be the first one. It would be especially odd to impose tort liability here where the direct cause of the abortion—Mrs. Garza's independent act of taking the pills—does not create tort liability. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1996) (noting it would be anomalous to impose civil liability on social hosts for serving alcohol to an underage person where the Texas Legislature decided not to impose such liability on commercial providers of alcohol).

In addition, imposing tort liability here would be inconsistent with legislative intent. Imposing tort liability for a violation of the federal Comstock Act would be improper because it would effectively allow private parties to enforce the Comstock Act despite no indication that Congress intended to allow private enforcement. *See, e.g., Cort v. Ash*, 422 U.S. 66, 77–80 (1975); *contra* ECF No. 16 at ¶ 22. And the other cited abortion regulations are "part of a highly regulated statutory scheme, detailing" how the regulations are to be enforced and who may enforce them. *Brighthouse Life Ins. Co. v. Daboub*, 577 F. Supp. 3d 504, 526 (N.D. Tex. 2021) *contra, e.g.*, ECF No. 16 ¶¶ 16–21, 23–24. Indeed, in enacting SB8 and HB7, the Texas Legislature has specified exactly when private parties purportedly may sue over the alleged provision of abortions, and neither of those laws applies to the abortion that is the subject of the wrongful-death claim. *See Smith*, 940 S.W.2d at 607 ("We

31

will not circumvent the Legislature's intentions by imposing a duty upon social hosts that the Legislature itself has rejected.").

For any of the above numerous, independent reasons, Plaintiff's wrongful-death claim should be dismissed.

## III. Plaintiff Failed to State a "*Qui Tam*" Claim Under Texas House Bill 7.

### A. Plaintiff's Family Violence Conviction Bars His HB7 Claims.

Plaintiff's HB7 claims must be dismissed because he failed to allege facts showing his capacity to sue under Section 171A.101(d)(3), which prohibits suits by certain persons. Relevant here, an HB7 "qui tam action may not be brought . . . by any person who . . . committed an offense for which an affirmative finding of family violence was made . . . ." Tex. Health & Safety Code § 171A.101(d)(3)(B). This is an element of the claim, not a defense. *Cf. id.* § 170A.102 ("Defenses"). Plaintiff did not allege the absence of a disqualifying offense for good reason: in 2006, Rodriguez was convicted of assault, and the judgment includes a finding that the assault was against a family member. *See* Declaration of Christopher M. Odell attached as **Exhibit A**.[8]

### B. Plaintiff's Allegations Are Conclusory.

Plaintiff's HB7 claim is premised on a single conclusory allegation that Dr. Coeytaux "intends to continue mailing abortion-inducing drugs into Texas." ECF No. 16

---

[8] On a motion to dismiss, the Court may take judicial notice of Rodriguez's prior conviction and indictment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); Fed. R. Evid. 201(b)(2); *see United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) (taking judicial notice of state court record of conviction because "courts may judicially notice court records as evidence of judicial actions"); *Ducksworth v. Rook*, 647 F. App'x 383, 385 & n.1 (5th Cir. 2016) (affirming dismissal of a claim that was barred by a prior arrest and conviction and relying on public records relating to the arrest and conviction).

at ¶ 31. But the federal pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555; *see also FTC v. AdvoCare Int'l, L.P.*, 2020 WL 6741968, at \*4 (E.D. Tex. Nov. 16, 2020) ("A bare allegation by the FTC that 'we have reason to believe that the defendant is about to violate the law,' when unaccompanied by supporting factual allegations, clearly does not 'state a claim to injunctive relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570) (citation modified).

Lacking any factual allegations to support an HB7 claim, Plaintiff is apparently attempting to allege his way to discovery in order to fish for evidence that Dr. Coeytaux has sent abortion medication "to any person or location in Texas since HB7 took effect." ECF No. 16 at ¶ 33. But "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *see Wright v. Bd. of Comm'rs of Cap. Area Transit Sys.*, 551 F. Supp. 3d 607, 616 (M.D. La. 2021) ("Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it . . . .").

### C.     HB7 Violates the Texas Constitution.

The Texas Constitution vests exclusive authority to enforce and litigate the state's rights in specified officers: the Attorney General, district attorneys, and county attorneys. HB7's *qui tam* provision violates the Texas Constitution by divesting these officials of their exclusive authority and delegating it to unaccountable citizens.

Under the Texas Constitution, district and county attorneys "shall represent the State in all cases in the District and inferior courts," Tex. Const. art. V, § 21, and the "Attorney

33

General shall represent the State in all suits and pleas in the Supreme Court," Tex. Const. art. IV, § 22; *see Abbott v. Harris Cnty.*, 672 S.W.3d 1, 3 (Tex. 2023) (noting the Texas Constitution has a "strong separation-of-powers provision"). Applying this language, the Texas Supreme Court has held that "the powers thus conferred by the Constitution upon these officials are exclusive," and "[t]he Legislature cannot devolve them upon others." *Maud v. Terrell*, 200 S.W. 375, 376 (Tex. 1918). Accordingly, a statute is invalid if it deprives these officials of their authority to represent the state. *See id.*; *Hill Cnty. v. Sheppard*, 178 S.W.2d 261, 264 (Tex. 1944).

Consistent with that rule, Texas courts have construed statutes to avoid supplanting these officials' exclusive authority to represent the state. *See, e.g.*, *Maud*, 200 S.W. at 377. For example, in *Staples v. State*, the Texas Supreme Court construed a statute that permitted *quo warranto* suits to require that such suits be filed "by a county attorney, a district attorney, or the Attorney General," because any other reading would "seriously infringe upon" those officials' constitutional authority. 245 S.W. 639, 641–43 (Tex. 1922). Likewise, in *Agey v. American Liberty Pipe Line Co.*, the Texas Supreme Court construed a penalty-recovery statute that allowed private litigants to recover "in the name of the State" to instead require prosecution "by the State through its proper officials," recognizing that the Attorney General "has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." 172 S.W.2d 972, 974–75 (Tex. 1943). The court affirmed the judgment of the court of civil appeals, *id.* at 975, which held that the authority to enforce the rights of the state is "vested by the Constitution exclusively in the State's attorneys (General, district and county) and the legislature is without power to divest that

34

authority or to delegate it to others." *Am. Liberty Pipe Line Co. v. Agey*, 167 S.W.2d 580, 583 (Tex. Civ. App. 1942).

Similarly, a Texas court has held that the Texas Heartbeat Act, Senate Bill 8 of 2021 (Tex. Health & Safety Code §§ 171.201–171.212) ("SB8"), is an "unconstitutional delegation of enforcement power to private persons." *Stean v. Texas Right to Life*, 2021 WL 12394878, at *25–26 ((98th Dist. Ct., Travis County., Tex. Dec. 9, 2021)).[9] SB8 prohibits abortion at approximately six weeks' gestation, but—like HB7—it prohibits state officials from enforcing that prohibition. Instead, it unconstitutionally "grants to 21 million Texans the power to bring cases without any guidance, supervision, or screening." *Id.* at *26.

Here, HB7 does exactly what the Texas Constitution forbids. HB7 specifically bars enforcement "by this state, a political subdivision of this state, a district or county attorney, or any officer or employee of this state." Tex. Health & Safety Code Ann. § 171A.052(b) (West 2025); *see also id.* § 171A.101(a). Instead, it purports to delegate that authority to unelected, unaccountable, unsupervised members of the general public. *See id.* § 171A.101(a). But the Texas Constitution prohibits such divestment and delegation of state officials' authority. *See, e.g.*, *Maud*, 200 S.W. at 376.

Additionally, HB7 violates the Texas Constitution by impermissibly delegating authority to enforce a penal sanction. *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 474 (Tex. 1997) (delegating enforcement of a penal statute "strongly

---

[9] In the appellate proceedings after this decision, the appellate courts have not reached the question of SB8's constitutionality.

suggests an improper private delegation"). HB7 is, as discussed *supra* 19, a penal statute because it deputizes millions of unharmed, unelected citizens to collect penalties of at least $100,000 per violation—an amount that is untethered to any damages sustained by the state. Tex. Health & Safety Code §§ 171A.101(a), 171A.104(a). Permitting such a delegation to private citizens would raise "troubling constitutional issues." *Tex. Boll Weevil*, 952 S.W.2d at 469. A private delegate may pursue "a personal or pecuniary interest which is inconsistent with or repugnant to the public interest," and more fundamentally, the "basic concept of democratic rule" is undermined when public powers are exercised by those "who are neither elected by the people, appointed by a public official or entity, nor employed by the government." *Id.*; *see TransUnion*, 594 U.S. at 428–29 (noting unharmed citizens "are not charged with pursuing the public interest in enforcing" compliance with the law).

Conversely, unlike private parties, public officials are accountable to the people and have discretion over "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *TransUnion*, 594 U.S. at 429. It is therefore "necessary for the state to be a party where the action is for the benefit of the public at large." *Staples*, 245 S.W. at 641; *see also Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 949 (1997) ("[Q]ui tam relators are different in kind than the Government, . . . . [M]otivated primarily by prospects of monetary reward rather than the public good."). HB7's *qui tam* provision is thus unconstitutional.

D.    **HB7 Violates the Dormant Commerce Clause of the U.S. Constitution.**

HB7's *qui tam* provision also violates the dormant Commerce Clause. The

36

Commerce Clause reserves to Congress the power to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3. This Clause also "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). Among other things, it "prevents the States from adopting protectionist measures." *Id.* State laws "violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Ore. Waste Sys., Inc. v. Dep't of Envt'l Quality of Ore.*, 511 U.S. 93, 99 (1994)). "[A] law can discriminate against interstate commerce by its text (or 'face'), effects, or purpose." *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 321 (5th Cir. 2022) (footnote reference omitted).

"[T]he Supreme Court has long held that state laws discriminating against interstate commerce on their face are virtually *per se* invalid." *Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003) (quotation marks and brackets omitted). "'When a statute directly regulates or discriminates against interstate commerce or when its effect is to favor in-state economic interests over out-of-state interests,'" the Supreme Court has "generally struck down the statute without further inquiry." *Id.* (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)).

Laws facially discriminate when they penalize out-of-state persons for shipping or transporting goods to in-state consumers while permitting in-state persons to do so. For example, in *Granholm*, the Supreme Court invalidated a Michigan law that allowed in-state wineries to ship directly to consumers but banned out-of-state wineries from doing so, as

37

well as a New York law that gave in-state wineries preferential treatment. 544 U.S. 460, 469–71, 473–75 (2005); *see also Dickerson*, 336 F.3d at 398 (Texas law facially discriminated in permitting only in-state wineries to ship directly to Texas residents). Similarly, a state law facially discriminated when it defined "intoxicating hemp products" to include only in-state products, "effectively criminaliz[ing] the possession, shipment, and transportation of out-of-state intoxicating hemp products . . . while simultaneously allowing intoxicating hemp products from [inside the state] to survive." *Loki Brands, LLC v. Platkin*, 2024 WL 4457485, at *4, *11 (D.N.J. Oct. 10, 2024).

A law can also facially discriminate if it "denies ordinary legal defenses or like privileges to out-of-state persons or corporations"—for example, by tolling statutes of limitations differently. *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 891–94 (1988); *see also John Havlir & Assocs., Inc. v. Tacoa*, Inc., 810 F. Supp. 752, 757 (N.D. Tex. 1993) (law facially discriminatory where it required only out-of-state manufacturers to enter into a written contract and pay commission to a Texas-based sales representative).

HB7 is a protectionist scheme that facially discriminates against out-of-state physicians and hospitals. By its text, HB7 "does not apply to and a civil action . . . may not be brought against . . . a physician," Tex. Health & Safety Code § 171A.002(a)(4), defined as "an individual licensed to practice medicine in this state," *id.* § 171A.001(8) (West 2025), "unless the qui tam relator pleads and proves that the provider or physician engaged in conduct constituting a violation of Section 171A.051 while located outside this state," *id.* § 171A.101(d)(8). Thus, HB7 explicitly does not prohibit Texas-licensed physicians inside Texas from mailing abortion pills to someone in Texas, while out-of-state physicians

38

can be sued and held liable for the exact same conduct. Likewise, HB7 prohibits *qui tam* suits against hospitals licensed in Texas or owned or operated by the state, *see id.* §§ 171A.001(6), 171A.002(a)(1), but permits suits against out-of-state hospitals. This protectionism was deliberate. The Legislature added this language in response to lobbying for a carve-out for Texas physicians and hospitals. *See supra*, at 6 n.3.

HB7's facial discrimination triggers "the strictest scrutiny" and is invalid unless the state "can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Dickerson*, 336 F.3d at 396 (citation modified). The reason for HB7's discrimination, protectionism, is not a legitimate interest. *Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910, 917–18 (5th Cir. 1997). Even assuming some legitimate local purpose, there is no plausible explanation for why this purpose could not be served by applying HB7 impartially, regardless of provider location.

## IV.   Rodriguez Failed to State an Anti-Clawback Claim Under HB7.

Once the HB7 *qui tam* claim is dismissed, the claim for an anti-clawback injunction must also be dismissed. Under HB7, an anti-clawback injunction may be sought in a *qui tam* suit authorized by HB7. Tex. Health & Safety Code § 171A.151(c). Once Plaintiff's HB7 *qui tam* suit is dismissed, he has no suit in which to maintain his request for an anti-clawback injunction.

## CONCLUSION

This Court should dismiss Plaintiff's Amended Complaint for lack of subject-matter

39

jurisdiction and failure to state a claim under Rule 12(b)(1) and (6).

Dated: April 16, 2026                    Respectfully submitted,

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
P: (713) 576-2400
F: (713) 576-2499

Marc Hearron
CENTER FOR REPRODUCTIVE RIGHTS
Texas State Bar No. 24050739
(*admitted pro hac vice*)
MHearron@reprorights.org
199 Water St. 22nd Floor
New York, NY 10038
P: (917) 637-3600
F: (917) 637-3666

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*admitted pro hac vice*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
P: (202) 628-0286

40

**COUNSEL FOR DEFENDANT
REMY COEYTAUX**

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
