**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 3:25-cv-00225 |
| | § | |
| v. | § | |
| | § | |
| REMY COEYTAUX | § | |
| | § | |
| Defendant. | § | |

_____

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
<u>FOR PRELIMINARY INJUNCTION</u>**

_____

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

    A.  California's Shield Law .................................................................................. 3

    B.  Plaintiff's Lawsuit........................................................................................... 5

LEGAL STANDARD.................................................................................................. 6

ARGUMENT............................................................................................................... 7

  I.    State Law Cannot Displace Federal Equitable Standards for Issuance of a
Preliminary Injunction. ............................................................................................. 8

    A.  The Judiciary Act of 1789 Requires this Court Apply the Four-Part Test
Regardless of the Substance-Procedure Distinction. .................................... 11

    B.  The Four-Part Test Is a Procedural Rule Incorporated into Rule 65 Under
*Hanna*. .............................................................................................................. 15

    C.  The Four-Part Test is a Procedural Rule Under *Erie*. ..................................... 18

  II.    Plaintiff Failed to Meet His Burden Under the Traditional Four-Part Test. ....... 23

    A.  Plaintiff Cannot Demonstrate Likelihood of Success on the Merits. ................ 24

    B.  Plaintiff Cannot Demonstrate that He Faces Irreparable Harm Absent an
Injunction. ......................................................................................................... 26

    C.  The Balance of Equities and the Public Interest Do Not Favor Injunctive Relief.
30

CONCLUSION ........................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcala v. Tex. Webb Cnty.*,
620 F. Supp. 2d 795 (S.D. Tex. 2009) ........................................................................ 10

*All Plaintiffs v. All Defendants*,
645 F.3d 329 (5th Cir. 2011) .................................................................*passim*

*Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*,
483 F.2d 1 (5th Cir. 1973).............................................................. 6, 22, 32

*Aon Re, Inc. v. TIG Ins. Co.*,
2009 WL 3075584 (N.D. Tex. Sept. 28, 2009).......................................... 33

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017) ..................................................................... 24

*Berk v. Choy*,
146 S. Ct. 546 (2026) ............................................................................ 10, 15

*Black Fire Fighters Ass'n of Dallas v. City of Dallas*,
905 F.2d 63 (5th Cir. 1990) ......................................................................... 6

*Bradley v. United States*,
214 F.2d 5 (5th Cir. 1954)........................................................................... 11

*Burlington N. R. Co. v. Woods*,
480 U.S. 1 (1987)......................................................................... 10, 15, 16

*Capital Tool & Mfg. Co., Inc. v. Maschinenfabrik Herkules*,
837 F.2d 171 (4th Cir. 1988) ................................................................. 9, 22

*Clark Equip. Co. v. Armstrong Equip. Co.*,
431 F.2d 54 (5th Cir. 1970) ....................................................................... 17

*Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*,
2025 WL 3718475 (S.D.N.Y. Dec. 23, 2025) ......................................... 9, 18

*Compass Bank v. Hartley*,
430 F. Supp. 2d 973 (D. Ariz. 2006) ...................................................... 9, 19

*D.F. Pray, Inc. v. Nat'l Fire Ins. Co. of Hartford*,
  2026 WL 523895 (D. Mass. Feb. 25, 2026) .................................................................. 29

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety &*
  *Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ...................................................................................... 16

*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) ...................................................................................... 29

*Digital Generation, Inc. v. Boring*,
  869 F. Supp. 2d 761 (N.D. Tex. 2012) .................................................................... 9, 23

*Direct Biologics, L.L.C. v. McQueen*,
  63 F.4th 1015 (5th Cir. 2023) .................................................................................. 6, 12

*Donovan v. City of Dallas*,
  377 U.S. 408 (1964) .................................................................................................... 33

*EEOC v. Pitre Inc.*,
  2012 WL 12995020 (D.N.M. Jan. 26, 2012) .............................................................. 32

*Expedia, Inc. v. Rebound Int'l, LLC*,
  2021 WL 3702169 (S.D. Tex. May 13, 2021) ............................................................. 30

*Fed. Leasing, Inc. v. Underwriters at Lloyd's*,
  487 F. Supp. 1248 (D. Md. 1980), *aff'd*, 650 F.2d 495 (4th Cir. 1981) ..................... 21

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
  835 F.2d 554 (5th Cir. 1987) ...................................................................................... 12

*Ferrero v. Associated Materials Inc.*,
  923 F.2d 1441 (11th Cir. 1991) ......................................................................... 9, 16, 17

*Fighters Inc., LLC v. Elec. Arts Inc.*,
  2009 WL 10699504 (C.D. Cal. Oct. 30, 2009) ........................................................... 32

*Flood v. ClearOne Commc'ns, Inc.*,
  618 F.3d 1110 (10th Cir. 2010) ............................................................................. 16, 22

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996) .................................................................................................... 18

*Gen. Elec. Co. v. Am. Wholesale Co.*,
  235 F.2d 606 (7th Cir. 1956) ........................................................................................ 9

*Gonannies, Inc. v. Goupair.Com, Inc.*,
    464 F. Supp. 2d 603 (N.D. Tex. 2006) ..................................................... 30

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ................................................................................ 12

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*,
    356 U.S. 525 (1958) .......................................................................... 18, 22

*Guaranty Trust Co. of N.Y. v. York*,
    326 U.S. 99 (1945) .......................................................................... *passim*

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ......................................................................... *passim*

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) .......................................................................... 13, 14

*Heil Trailer Int'l Co. v. Kula*,
    542 F. App'x 329 (5th Cir. 2013) .................................................. 8, 19, 22

*Hipp for Use of Cuesta v. Babin*,
    60 U.S. 271 (1856) .................................................................................. 22

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) ................................................................... 18

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ................................................................................ 33

*KV Pharm. Co. v. Medecor Pharma, L.L.C.*,
    354 F. Supp. 2d 682 (E.D. La. 2003) ................................................... 9, 18

*Louisiana Crane Acquisition, LLC v. Rollman*,
    2022 WL 6227188 (W.D. La. 2022) .......................................................... 9

*Louisiana v. Centers for Disease Control & Prevention*,
    603 F. Supp. 3d 406 (W.D. La. 2022) ..................................................... 23

*Masters v. Avanir Pharm., Inc.*,
    996 F. Supp. 2d 872 (C.D. Cal. 2014) ................................................... 9, 16

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ................................................................................ 12

iv

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........................................................................................... 24

*MWK Recruiting Inc. v. Jowers*,
833 Fed. App'x. 560 (5th Cir. 2020) ................................................................ 7

*Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*,
756 F.3d 825 (5th Cir. 2014) ......................................................................... 15

*Newby v. Enron Corp.*,
302 F.3d 295 (5th Cir. 2002) ......................................................................... 32

*Niagara Mohawk Power Corp. v. Graver Tank*,
470 F. Supp. 1308 (N.D.N.Y. 1979) ........................................................... 9, 16

*Olander v. Compass Bank*,
172 F. Supp. 2d 846 (S.D. Tex. 2001) ........................................................... 22

*Parr v. Cougle*,
127 F.4th 967 (5th Cir. 2025) ........................................................................ 24

*Payne v. Hook*,
74 U.S. 425 (1868) .................................................................................... 10, 21

*PCI Transp., Inc. v. Fort Worth & W. R. Co.*,
418 F.3d 535 (5th Cir. 2005) ......................................................................... 23

*Perez v. City of San Antonio*,
163 F.4th 110 (5th Cir. 2025) .......................................................................... 9

*Purcell v. Summers*,
145 F.2d 979 (4th Cir. 1944) ....................................................................... 9, 17

*Pusey & Jones Co. v. Hanssen*,
261 U.S. 491 (1923) ....................................................................................... 12

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941) ....................................................................................... 14

*Rambo v. United States*,
145 F.2d 670 (5th Cir. 1944) ......................................................................... 12

*Response of Carolina v. Leasco Response, Inc.*,
498 F.2d 314 (5th Cir. 1974) ........................................................................... 7

*Ruiz v. Bradford Exch., Ltd.*,
    153 F.4th 907 (9th Cir. 2025) ................................................................. 13

*S. Milk Sales, Inc. v. Martin*,
    924 F.2d 98 (6th Cir. 1991) ......................................................... 9, 16, 22

*Sampson v. Murray*,
    415 U.S. 61 (1974) .................................................................................. 23

*Scott v. Neely*,
    140 U.S. 106 (1891) ................................................................................ 22

*Sec. & Exch. Comm'n v. First Fin. Group of Tex.*,
    645 F.2d 429 (5th Cir. 1981) ............................................................ 20, 33

*Sheffield v. Bush*,
    604 F. Supp. 3d 586 (S.D. Tex. 2022) ............................................... 26, 27

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................. 13, 22

S*tainback v. Mo Hock Ke Lok Po*,
    336 U.S. 368 (1949) ................................................................................ 11

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................ 10, 20

*Sullivan v. Vallejo City Unified Sch. Dist.*,
    731 F. Supp. 947 (E.D. Cal. 1990) ...................................................... 9, 22

*System Operations, Inc. v. Sci. Games Dev. Corp.*,
    555 F.2d 1131 (3d Cir. 1977) ......................................................... 9, 16, 17

*Texas v. Biden*,
    10 F.4th 538 (5th Cir. 2021) ................................................................... 28

*Texas v. United States Env't Prot. Agency*,
    662 F. Supp. 3d 739 (S.D. Tex. 2023) ..................................................... 28

*TransPerfect Translations, Inc. v. Leslie*,
    594 F. Supp. 2d 742 (S.D. Tex. 2009) ....................................................... 9

*TRAVELHOST, Inc. v. Figg*,
    2011 WL 6009096 (N.D. Tex. 2011) .......................................................... 9

*Truly v. Wanzer*,
46 U.S. 141 (1847)........................................................................................ 12

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)...................................................................................... 11

*United States v. Tellez*,
2009 WL 10669893 (W.D. Tex. June 11, 2009) ......................................... 23

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981).................................................................................. 13, 16

*Vapor Tech. Ass'n v. Graham*,
167 F.4th 302 (5th Cir. 2026) ...................................................................... 24

*Vital Pharm., Inc. v. Alfieri*,
23 F.4th 1282 (11th Cir. 2022) (Pryor, J. concurring)............................ 16, 19

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of
ILA, AFL-CIO*,
751 F.2d 721 (5th Cir. 1985) ....................................................................... 33

*W. Sur. Co. v. PASI of LA, Inc.*,
334 F. Supp. 3d 764 (M.D. La. 2018).......................................................... 9, 18

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980)...................................................................................... 19

*Weatherly v. Pershing, L.L.C.*,
945 F.3d 915 (5th Cir. 2019) ....................................................................... 19

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982)............................................................................. 8, 13, 14

*Winter v. Nat. Res. Defense Council, Inc.*,
555 U.S. 7 (2008).......................................................................... 8, 21, 27, 28

*Yakus v. United States*,
321 U.S. 414 (1944)...................................................................................... 12

**Statutes**

Cal. Civ. Code § 1798.300(a)(2) ............................................................. 1, 4, 31

Cal. Civ. Code § 1798.300(d)(1)(C)............................................................ 1, 3, 4

Rules of Decision Act, 28 U.S.C. § 1652 ............................................................ 10

Judiciary Act of 1789, 1 Stat. 78 § 11 ....................................................... 8, 11, 15

Rules Enabling Act, 28 U.S.C. § 2072 ................................................. 10, 16, 17

Tex. Health & Safety Code § 171A.051(a)(2) .................................................... 5

Tex. Health & Safety Code § 171A.101(d)(3)(B).............................................. 25

Tex. Health & Safety Code § 171A.151(a)(1)................................................... 17

Tex. Health & Safety Code § 171A.151(c) ................................................... 5, 16

Tex. Health & Safety Code Section 171A.151(f).......................................... 29, 34

## Other Authorities

Seventh Amendment.................................................................................... 13, 22

Fed. R. Civ. P. 65.....................................................................................*passim*

Texas Constitution ............................................................................................ 26

## INTRODUCTION

Plaintiff Jerry Rodriguez asks this Court to grant an anti-suit injunction, an extraordinary equitable remedy, to shield him from a purely hypothetical litigation risk of his own making. Fully aware of California's shield law, and without the protection of the yet-unenacted Texas House Bill 7 ("HB7"), Plaintiff filed this lawsuit against Dr. Remy Coeytaux in July 2025, alleging that Dr. Coeytaux provided abortion-inducing medication to Adam Garza, the husband of Kendal Garza, the woman Plaintiff was seeing. Plaintiff, who seeks injunctive relief and damages from Dr. Coeytaux, does not allege that Dr. Coeytaux has filed, threatened, or taken any steps toward filing a "clawback" lawsuit under California's shield law, which provides a cause of action for medical providers made subject to lawsuits in other states based on the provider's engagement in legally protected health care activities in California. *See* Cal. Civ. Code §§ 1798.300(a), (d)(1)(C). Yet, nine months after filing this lawsuit, and after waiting nearly two months after HB7 took effect, Plaintiff now asks this Court to issue an extraordinary anti-suit injunction under HB7, granting him advance immunity from a purely conjectural "clawback" lawsuit that has not been, and might never be, filed. And he seeks this immunity despite having made his own calculated decision nine months earlier, in the absence of any HB7 protections, to assume that very risk by filing this lawsuit.

To meet his burden of proof under the well-established test for equitable relief, Plaintiff must show more than a mere risk that he might one day be named as a defendant in a lawsuit. Rather, his request for an anti-suit injunction must be supported by competent evidence that he faces irreparable harm that is likely, imminent, and cannot be remedied at

law, together with a showing that the balance of equities and the public interest favor his requested injunction. Plaintiff comes nowhere near meeting his burden, relying instead on a chain of speculative contingencies entirely unsupported by evidence. Plaintiff offers no evidence that Dr. Coeytaux has filed or plans to file a claim against him under the California shield law, nor that he or his counsel would have any financial liability in such an event— no evidence of their fee arrangement, or affidavits supporting their supposed inability to recruit co-counsel or expert witnesses. Nor does Plaintiff explain why the self-inflicted, speculative, and purely economic harm he alleges would be irreparable in any case.

Neither does the balance of equities favor Plaintiff's requested injunction, which would provide asymmetric rather than equitable relief. Though Plaintiff seeks damages and injunctive relief against Dr. Coeytaux through this lawsuit, he asks this Court to provide insurance against any claims that Dr. Coeytaux might bring *against him* under California law. Plaintiff's alleged harm is nothing more than the ordinary possibility of adverse litigation, while the requested injunction would impose concrete and immediate restrictions on Dr. Coeytaux's exercise of his own legal remedies available under California law. The public interest does not favor such an approach, which would require this Court to intrude on principles of federalism and comity by enjoining a California law in favor of Texas law based on the simple "request" of a private litigant.

Unable to satisfy the traditional four-factor test for injunctive relief, Plaintiff compounds his requests for extraordinary relief by asking this Court to bypass entirely the four-part test and issue a preliminary injunction on demand, under HB7's anti-suit provision—without requiring any evidence whatsoever to support that equitable remedy in

2

federal court. *See* ECF No. 17 at 10–15. But it is well-settled that state law does not define federal courts' equitable powers or displace the elements necessary to access equitable jurisdiction. This Court should reject Plaintiff's attempt to recarve the well-established contours of federal equitable jurisdiction.

## BACKGROUND

### A.    California's Shield Law

In 2023, California's legislature enacted a "shield law" to protect providers of reproductive and gender-affirming health care from facing civil or criminal liability for providing such care in any lawsuits that might be filed in other states. *See* Cal. Civ. Code §§ 1798.300–1798.308. The law was enacted in response to many states' enactments of near-total abortion bans in the wake of the U.S. Supreme Court overturning the federal constitutional right to abortion.

Among other concerns, California's shield law addresses the potential for liability against providers who are alleged to have provided medication abortion via telehealth— care that is lawful in California. A California prescriber may face liability, for example, if they prescribe medication abortion to a patient who tells the prescriber that they are in a state where abortion is lawful, while actually being in a state with an abortion ban. California's shield law protects the prescriber from liability for providing such care, regardless of the patient's location. Specifically, under the shield law, "[l]egally protected health care activity" includes "[t]he provision of reproductive health care services . . . by a person duly licensed under the laws of California . . . if the service or care is lawful under the laws of California, regardless of the patient's location." Cal. Civ. Code

3

§ 1798.300(d)(1)(C). "Reproductive health care services" includes "all services, care, or products of a medical, . . . prescribing, or dispensing nature relating to the human reproductive system provided in accordance with the constitution and laws of this state, whether provided in person or by means of telehealth services which includes . . . all services, care, and products relating to . . . the termination of a pregnancy." *Id.* § 1798.300(e).

To protect providers against civil lawsuits for engaging in legally protected health care services, California's shield law provides so-called clawback causes of action. Specifically, the shield law creates a cause of action against a person who "engages or attempts to engage in abusive litigation." *Id.* § 1798.303. This clawback claim may be brought by "a defendant in the abusive litigation." *Id.* "Abusive litigation" is litigation "to deter, prevent, sanction, or punish a person engaging in legally protected health care activity" in either of two ways: (1) "[f]iling" litigation where liability is based on a legally protected health care activity or (2) "[a]ttempting to enforce an order or judgment issued in connection" with such litigation. *Id.* § 1798.300(a). California's shield law thus creates two potential avenues for a clawback claim: (1) a claim that accrues upon the filing of abusive litigation and (2) a separate claim that does not accrue until there is an order or judgment issued in abusive litigation and someone tries to enforce that order or judgment.

In a clawback lawsuit, if the court finds for the plaintiff, "recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other

expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation." *Id.* § 1798.305.

### B.      Plaintiff's Lawsuit

On July 20, 2025, against the backdrop of the California shield law, Plaintiff filed this lawsuit seeking damages for wrongful death against Dr. Coeytaux for allegedly providing abortion-inducing medication as well as seeking a nationwide injunction against him on behalf of a putative class. *See* ECF No. 1.

In September 2025, months after this lawsuit was filed, the Texas legislature enacted HB7, which took effect on December 4, 2025. HB7 provides that, as of that date, no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code § 171A.051(a)(2). HB7 also includes a provision aimed at counteracting other states' abortion shield laws, including California's. To do so, HB7 provides that a "court shall, on request," issue an injunction restraining a defendant from "bringing" or "continuing to litigate" such a clawback action under the shield law of another state. *Id.* § 171A.151(c).

Once HB7 passed the Texas legislature in September 2025, but prior to its enactment, Plaintiff gave notice to Dr. Coeytaux that he would seek to amend his Complaint to add new claims purportedly available for violations of HB7. Given the forthcoming amendment, the parties agreed on September 29, 2025, to stay Dr. Coeytaux's deadlines to move to dismiss the Original Complaint, as Plaintiff would amend his Complaint on or around December 4, 2025. *See* ECF Nos. 13; 14.

On February 1, 2026, Plaintiff filed his First Amended Complaint which alleges that Dr. Coeytaux mailed abortion-inducing drugs once in September 2024. ECF No. 16 ¶¶ 9–11. A day later, on February 2, 2026, Plaintiff filed this motion for preliminary injunction under HB7's anti-suit provision. ECF No. 17. In his new allegations, Plaintiff does not allege that Dr. Coeytaux has filed, threatened to file, or taken any steps toward filing a clawback action under California law. Instead, Plaintiff seeks a preemptive injunction based solely on the existence of California's shield law and the speculative possibility that Dr. Coeytaux could invoke it in the future. *See id.*; ECF No. 16 ¶¶ 34–39.

## LEGAL STANDARD

Under the four-part federal standard, a preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing," demonstrates: (1) substantial likelihood of success on the merits; (2) likelihood of irreparable injury; (3) a favorable balance of hardships, and (4) no adverse effect on the public interest. *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990); *Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023) (citing *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff must carry his burden on each element. *Black Fire Fighters Ass'n*, 905 F.2d at 65. Whether to issue a preliminary injunction lies in the district court's sound discretion. *Id.*

To determine whether an anti-suit injunction is warranted, courts apply the traditional four-part test, but also consider comity and federalism concerns raised by enjoining a proceeding in another state. *See Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*, 483

6

F.2d 1, 7 (5th Cir. 1973) ("[W]e do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972))); *see also Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 320 (5th Cir. 1974) ("[T]he principles of comity and federalism . . . mitigate against unnecessarily interfering with pending state court proceedings.").

## ARGUMENT

Plaintiff has not met his heavy burden to justify this Court issuing one of the most extraordinary remedies available in law, an anti-suit injunction. *MWK Recruiting Inc. v. Jowers*, 833 Fed. App'x. 560, 564 (5th Cir. 2020) ("It is well established that an antisuit injunction, like all preliminary injunctions, is 'an extraordinary remedy.'"). Plaintiff seeks an anti-suit injunction under HB7's anti-clawback provision that would "enjoin Coeytaux from suing Rodriguez under California's clawback provisions." ECF No. 17 at 2–3 (citing Tex. Health & Safety Code § 171A.151(c)).

Likely because he knows he cannot meet his burden under the traditional four-part test for a preliminary injunction, Plaintiff insists that the Court must issue a preliminary injunction on his "request" under HB7's anti-clawback provision, without any analysis or evidence to determine whether this extraordinary remedy is warranted. *See* ECF No. 17 at 10–15. But state law does not define federal courts' equitable powers or displace the elements of proof necessary to access equitable jurisdiction. Nor can state law strip this Court of its discretion to issue equitable relief. *Erie* and its progeny did not change this core feature of federal courts. Because the traditional four-part test is a procedural rule

7

derived from the Judiciary Act of 1789, Rule 65, and equity practice, this Court must apply that test rather than HB7's automatic injunction rule.

Under the traditional four-part test, Plaintiff cannot meet his burden because he is unlikely to succeed on the merits, has not identified any irreparable harm, the burden on Defendant outweighs any identified harm to Plaintiff, and the requested injunction is not in the public interest. The Court should deny Plaintiff's Motion.

## I.   State Law Cannot Displace Federal Equitable Standards for Issuance of a Preliminary Injunction.

Plaintiff presents a remarkable and unprecedented argument: According to him, "[t]he law of Texas requires [federal] courts to issue, 'on request,'" a preliminary injunction enjoining the Defendant from filing a lawsuit under California law in state or federal court. ECF No. 17 at 10. Plaintiff insists that HB7 requires this Court to break from a "practice with a background of several hundred years of history" recognizing that a preliminary injunction—especially an anti-suit injunction—is "an extraordinary remedy never awarded as of right," which a district court *may* issue only when a plaintiff makes a "clear showing" on all four elements of the traditional test. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (internal quotations omitted); *Winter*, 555 U.S. at 22.

Plaintiff cites no federal authority pointing to state law for the standard applied when issuing a preliminary injunction—because "virtually every federal court," including the Fifth Circuit and this Court, has reached the opposite conclusion. *See, e.g.*, *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 n.22 (5th Cir. 2013) ("[F]ederal law governs the procedural questions when a preliminary injunction may issue and what standards of

8

review we apply." (quoting *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010))); *Perez v. City of San Antonio*, 163 F.4th 110 (5th Cir. 2025) (applying the federal standard to claims under Texas law); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 748 (S.D. Tex. 2009). *Coaction Specialty Mgmt. Co., Inc. v. eMaxx Ins. Services, LLC*, 2025 WL 3718475, at *6 (S.D.N.Y. Dec. 23, 2025).[1]

Instead, Plaintiff's argument rests solely on generalized choice of law invocations of the *Erie* doctrine, none of which supports his position. Plaintiff's brief and perfunctory argument is wholly inadequate to break from such well-established precedent. Regardless of where the four-part test derives from—whether acts of Congress, Rule 65, or common law—each avenue leads to the same result: *Erie* requires this Court to apply the traditional four-part test in weighing a request for a preliminary injunction under Plaintiff's state law claims. The Supreme Court expressly rejected Plaintiff's theory in a seminal post-*Erie* decision, *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945). There, the Court directly held that "[s]tate law *cannot* define the remedies which a federal court *must* give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the

---

[1] *See also System Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977); *Purcell v. Summers*, 145 F.2d 979, 990–91 (4th Cir. 1944); *Capital Tool & Mfg. Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172–73 (4th Cir. 1988); *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 101–102 (6th Cir. 1991); *Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956); *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 774 n.2 (N.D. Tex. 2012); *TRAVELHOST, Inc. v. Figg*, 2011 WL 6009096, at *2 n.5 (N.D. Tex. 2011); *Louisiana Crane Acquisition, LLC v. Rollman*, 2022 WL 6227188, at *2 (W.D. La. 2022); *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 798–99 (M.D. La. 2018); *KV Pharm. Co. v. Medecor Pharma, L.L.C.*, 354 F. Supp. 2d 682, 684 (E.D. La. 2003); *Masters v. Avanir Pharm., Inc.*, 996 F. Supp. 2d 872, 879 n.3 (C.D. Cal. 2014); *Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 955–57 (E.D. Cal. 1990); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 978 n.9 (D. Ariz. 2006); *Niagara Mohawk Power Corp. v. Graver Tank*, 470 F. Supp. 1308, 1312 (N.D.N.Y. 1979).

State's courts." *Id.* at 106 (emphasis added); *see also Payne v. Hook*, 74 U.S. 425, 430 (1868) ("The equity jurisdiction . . . is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union."). Because this binding, on-point precedent forecloses Plaintiff's choice of law argument, this Court need not consider where the traditional four-part test falls within the *Erie* framework.

But even if this Court went further than *Guaranty Trust* and the overwhelming precedent applying the federal standard to equitable relief, *Erie*'s application confirms these holdings.

The Court must apply the federal standard under *all* three tracks of the *Erie* doctrine. First, if a rule derives from the Constitution or a federal statute, federal law must prevail regardless of whether it is a substantive or procedural rule, unless the rule itself is unconstitutional or invalid. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 25–27 (1988). Second, when a Federal Rule is "on point," it is presumed valid unless, pursuant to the Rules Enabling Act, the Federal Rule abridges, enlarges, or modifies "any substantive right." *Berk v. Choy*, 146 S. Ct. 546, 552–53, 556 (2026) (quoting 28 U.S.C. § 2072(b)); *see also Hanna v. Plumer*, 380 U.S. 460, 471–73 (1965); *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 6 (1987). Finally, when the rule is a feature of federal common law, the Rules of Decision Act, 28 U.S.C. § 1652, requires courts to wade into *Erie*'s "murky waters" to determine whether the rule is in effect substantive or procedural using the more demanding multi-factor *Erie* test. *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333–36 (5th Cir. 2011) (quoting *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)); *see also Alcala v. Tex. Webb Cnty.*, 620 F. Supp. 2d 795, 807 (S.D. Tex. 2009).

10

Because the federal standard for issuing preliminary injunctions is a procedural rule that derives from the Judiciary Act of 1789, Rule 65, and centuries of equity practice, this Court can reach the same conclusion under all three tracks of *Erie*: the federal standard must apply rather than HB7's unprecedented automatic injunction rule.

### A.    The Judiciary Act of 1789 Requires this Court Apply the Four-Part Test Regardless of the Substance-Procedure Distinction.

This Court need not undertake the "challenging endeavor" of classifying the traditional four-part test as substance or procedure, *All Plaintiffs*, 645 F.3d at 335 (internal quotations omitted), because it shares its principal source with the wellspring of general authority for all federal courts, the Judiciary Act of 1789, which enshrines the core distinction between law and equity. Although the Federal Rules combined the courts of law and equity, it did not displace the traditional rules surrounding the limits on equitable relief. S*tainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383 n.26 (1949); *Bradley v. United States*, 214 F.2d 5, 7 (5th Cir. 1954).

The Judiciary Act of 1789 "endowed federal courts with jurisdiction over 'all suits . . . in equity,' § 11, 1 Stat. 78, and still today, this statute is what authorizes the federal courts to issue equitable remedies." *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (internal quotations omitted).[2] "Substantially, then, the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act,

---

[2] *Accord, e.g., CASA*, 606 U.S. at 863 (Thomas, J., concurring) (suggesting Article III may also limit federal courts' equitable authority).

1789 (1 Stat. 73)." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999); *see also Rambo v. United States*, 145 F.2d 670, 671 n.2 (5th Cir. 1944).

These limits on federal courts' equitable jurisdiction foreclose Plaintiff's automatic injunction theory. It is well-established that "a preliminary injunction is an extraordinary and drastic remedy" that "has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted); *Yakus v. United States*, 321 U.S. 414, 440 (1944). As a result, the standard for issuing an injunction must be discretionary. *See Truly v. Wanzer*, 46 U.S. 141, 142–43 (1847) ("There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction." (internal quotations omitted)); *Direct Biologics*, 63 F.4th at 1020. This discretion ensures the "ultimate flexibility of the equitable powers of federal courts." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987). Therefore, because HB7 impermissibly mandates an automatic injunction, its standard cannot apply here.

Furthermore, each element of the four-part test expresses a limit on equitable jurisdiction and therefore cannot be displaced by state law. *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497–98 (1923) (noting that because equity jurisdiction "cannot be enlarged" "nor narrowed" by a state statute, a "federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in a state court"). First, the likelihood-of-success-on-the-merits element reflects the procedural purpose of

preliminary injunctions to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Next, the irreparable harm element, which asks whether an adequate remedy at law exists, delineates the core jurisdictional distinction between law and equity. *Guar. Tr.*, 326 U.S. at 105–06 (holding state law "cannot remove" the requirement that "a plain, adequate and complete remedy at law must be wanting"); *Weinberger*, 456 U.S. at 312 ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."); *Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 912 (9th Cir. 2025) ("[A] plaintiff who fails to allege the lack of an adequate remedy at law cannot utilize a federal court's equitable jurisdiction."). Requiring plaintiffs to seek adequate legal remedies also preserves defendants' Seventh Amendment right to a jury trial for all suits at law and ensures equitable relief remains "extraordinary." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020) (noting the inadequate legal remedy element "implicates the well-established federal policy of safeguarding the constitutional right to a trial by jury in federal court"); 19 Wright & Miller's Federal Practice & Procedure § 4513 (3d ed.) (noting an abridgment of the irreparable harm element "would deprive the litigant of his constitutional right to a trial by jury in the law action"). Therefore, the irreparable harm element in particular represents an irreducible constitutional minimum for obtaining equitable relief.

Finally, the balancing of burdens and public interest elements of the four-part test also reflect the equitable discretion federal courts inherited from the English Court of Chancery. *See Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944) ("The essence of equity

13

jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of . . . the public interest and private needs as well as between competing private claims."); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941) ("The history of equity jurisdiction is the history of regard for public consequences."); *Weinberger*, 456 U.S. at 312 (noting "the traditional function of equity" includes "balanc[ing] the conveniences of the parties and possible injuries to them" along with the "public consequences" (internal quotations omitted)).

The Court's apprehension about modifications to these limits even by Congress— which, unlike states, possesses the constitutional authority to modify federal courts' equitable jurisdiction—further illustrates that the traditional test derives from core equity principles rather than prudential federal common law concerns. Under the clear-statement rule, Congress cannot modify the traditional four-part test "in the absence of a clear and valid legislative command." *Id.* at 313 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). The degree of clarity required is immense. In *Hecht Co. v. Bowles*, the Court interpreted a federal statute that stated an injunction "shall be granted" if it is shown that a defendant "has engaged or is about to engage" in a prohibited act as *not* clearly displacing the traditional test. 321 U.S. at 327–30. Similarly, in *Weinberger*, the Court affirmed this stringent requirement and held "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." 456 U.S. at 313. Thus, if an act of Congress stating an injunction "shall be issued" does not displace the four-part test, HB7 certainly does not either.

14

Because HB7 impermissibly contravenes these limitations on federal courts' equitable jurisdiction by mandating an automatic injunction, this Court must apply the federal, four-part standard under the first track of the *Erie* doctrine.

**B. The Four-Part Test Is a Procedural Rule Incorporated into Rule 65 Under *Hanna*.**

Even setting aside the analysis under the Judiciary Act, Rule 65 independently requires the application of the four-part test. Under *Hanna*, when a conflict exists between a Federal Rule and state law, courts apply a two-step process. First, courts ask "whether, when fairly construed, the scope of [the Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law." *All Plaintiffs*, 645 F.3d at 333 (quoting *Burlington*, 480 U.S. at 4–5). In determining whether the Rule covers a particular issue, courts consider the "plain meaning" and "judicial interpretations of that language." *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834–35 (5th Cir. 2014). If a direct conflict exists, the Federal Rule is "presumptive[ly] valid" and the court applies a "modest test" that asks "whether the Federal Rule 'really regulates procedure.'" *Burlington*, 480 U.S. at 6; *Affholder*, 746 F.2d at 310–11. A Federal Rule is procedural if it "governs only 'the manner and the means' by which the litigants' rights are 'enforced.'" *Berk*, 146 S. Ct. at 556 (quoting *Shady Grove*, 559 U.S. at 407). No Federal Rule has been invalidated under this test. *See id.*

Here, Rule 65 directly conflicts with HB7. Although the four-part test is not expressed verbatim in Rule 65, Plaintiff is incorrect in stating that Rule 65 "has nothing to say on the standard that courts apply." ECF No. 17 at 12. Rule 65's plain language

15

precludes an automatic injunction. Rule 65 repeatedly states a court "*may* issue a preliminary injunction," which underscores the discretionary nature of preliminary injunctions squarely in the rule. Fed. R. Civ. P. 65(a)(1) (emphasis added). HB7's anti-clawback provision precludes such discretion by requiring an injunction "shall" issue "upon request," creating a direct conflict. Tex. Health & Safety Code § 171A.151(c). Additionally, judicial interpretations of Rule 65 establish that the four-part test is "incorporate[d]" into Rule 65's discretionary language, deepening the conflict between that test and HB7. *Ferrero*, 923 F.2d at 1448; *accord System Operations*, 555 F.2d at 1141. Because a direct conflict exists, the four-part test must apply if it "can reasonably be classified as procedural." *Burlington*, 480 U.S. at 8.

The traditional four-part test is procedural under the Rule Enabling Act and *Hanna*. Because a preliminary injunction functions to preserve the status quo, *Camenisch*, 451 U.S. at 395, the standard for issuing one merely effects the "manner and means" of enforcing a substantive claim. *Flood*, 618 F.3d at 1117 ("[F]ederal law governs the procedural question [of] when a preliminary injunction may issue[.]"); *Niagara Mohawk Power*, 470 F. Supp. at 1312; *Masters*, 996 F. Supp. 2d at 879 n.3; *see also Martin*, 924 F.2d at 102; *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1298 (11th Cir. 2022) (Pryor, J. concurring); 19 Wright & Miller's Federal Practice & Procedure § 4513 (3d ed.); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024) (holding preliminary injunctions are intended for "case preservation," to ensure the matter does not go moot because a court could no longer remedy the harm). State law still supplies the substantive threshold question of whether plaintiff has a valid claim that *can* access

16

equitable relief. Conversely, the standard for issuing an injunction asks a different, procedural question: whether the court *should* issue a preliminary injunction and *what* that relief must look like to balance the principles of equity.

Plaintiff's arguments to the contrary are wrong. *See* ECF No. 17 at 13–14. The standard for issuing a preliminary injunction is not a substantive rule of decision. *See Guar. Tr.*, 326 U.S. at 105–07 ("This does not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court."); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54 (5th Cir. 1970). The standard does not regulate the "rights themselves," "available remedies," or the "rules of decision" because state law still determines whether a preliminary injunction is an available remedy that *could* issue under a state cause of action—the federal standard only answers the question of whether the injunction *should* issue. *Purcell*, 145 F.2d at 990–91 ("We look to state law to determine what the rights of the parties are; but we look to the federal [equity] practice to determine the remedies available."). Rule 65 does not create a cause of action (the "rights themselves") or determine the ultimate issue of what remedy or decision will issue on the merits. Nor is HB7's anti-suit provision an independent cause of action—*qui tam* litigants must still prove an underlying violation of HB7 to obtain an anti-suit injunction. *See* Tex. Health & Safety Code § 171A.151(a)(1) (limiting relief to those defending an "action authorized by this chapter").

Because Rule 65 incorporates the traditional four-part test, and that standard is procedural under the "modest test" imposed by the Rules Enabling Act and *Hanna*, this Court must apply the federal standard here. *See Ferrero*, 923 F.2d at 1448; *System*

17

*Operations*, 555 F.2d at 1141; *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989); *KV Pharm*, 354 F. Supp. 2d at 684; *PASI*, 334 F. Supp. 3d at 798–99; *Coaction Specialty*, 2025 WL 3718475, at *6.

### C.    The Four-Part Test is a Procedural Rule Under *Erie*.

Yet another way to arrive at the same conclusion is under the *Erie* test. Even if the traditional four-part test is, as Plaintiff argues, a "judge-created" rule, ECF No. 17 at 13, *Erie* still requires this Court apply the federal standard. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The *Erie* test requires courts apply a three-part framework to determine whether the rule is procedural or substance. First, as established in *Guaranty Trust*, courts apply the "outcome determination" test to determine whether the federal rule "'significantly affect the result of a litigation.'" *All Plaintiffs*, 645 F.3d at 335 (quoting *Guar. Tr.*, 326 U.S. at 109) (emphasis omitted). But this test is merely a starting point, having limited effect unless the federal rule would create "certainty that a different result would follow," as was the case for the statute of limitation rule evaluated in *Guaranty Trust*. *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 539–40 (1958). Then, to ensure that test is not "applied mechanically," *Hanna* instructs courts to consider the "twin aims" of *Erie*: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Gasperini*, 518 U.S. at 428 (quoting *Hanna*, 380 U.S. at 468). Finally, under *Byrd*, courts consider whether the federal rule involves any "countervailing" federal interests that

18

warrant the application of federal law. 356 U.S. at 537–39; *see also Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 925–26 (5th Cir. 2019).

The traditional four-part test for issuing preliminary injunctions is procedural under *Erie*. The four-part test is not *certainly* outcome determinative. The federal standard does not preclude this Court from issuing a preliminary injunction under HB7's anti-clawback provision. Litigants may still arrive at the same "outcome" in both forums, as evidenced by Plaintiff's attempt to prevail under both tests. *See generally* ECF No. 17. And the traditional four-part test does not determine the outcome of any issue on the merits, which is the "outcome" *Erie* is concerned with. *See Compass Bank*, 430 F. Supp. 2d at 978 n.9 ("[F]ederal law applies because the state law is not outcome-determinative under the *Erie* doctrine."); *Vital Pharm.*, 23 F.4th at 1298 (Pryor, J., concurring); 19 Wright & Miller's Federal Practice & Procedure § 4513 (3d ed.) ("It seems reasonably clear that [for] preliminary injunctions . . . federal law supplies the standards for their issuance. These orders are neither final determinations of the parties' rights nor final relief that would qualify as an 'outcome[.]'"); *see also Heil Trailer*, 542 Fed. App'x. at 331 ("The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

For similar reasons, the twin policy aims of *Erie* do not require application of HB7's unprecedented automatic injunction standard. Having a stricter standard in federal courts does not promote forum shopping because plaintiffs could still obtain a preliminary injunction in both forums—that remedy is not "certainly" precluded in federal court. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 747 (1980) (holding that differences in service

19

of process rules "would be of scant, if any, relevance to the choice of a forum, for the plaintiff was not presented with a situation where application of the state rule would wholly bar recovery"). And because preliminary injunctions are not the ultimate outcome of the case, whatever forum shopping occurs because litigants do not want to "roll[] the dice" in federal courts is not relevant to the "twin aims" of *Erie*. ECF No. 17 at 14; *see All Plaintiffs*, 645 F.3d at 336 ("[T]he 'twin aims' analysis does not supplant the 'outcome determination' test, but rather is intended to qualify that test and guide its application."); *see also Sec. & Exch. Comm'n v. First Fin. Group of Tex.*, 645 F.2d 429, 435 n.8 (5th Cir. 1981) (noting a preliminary injunction is "interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness" (internal quotations omitted)).

Nor would application of the traditional four-part test result in inequitable administration of the laws. Contrary to Plaintiff's assumption, this element is not about whether one forum gives *plaintiffs* a "substantial advantage." ECF No. 17 at 14. Instead this element is triggered when a federal rule results in "unfair discrimination" against non-citizens—i.e., when a litigant loses a right to recovery solely because a party is a non-citizen. *See Hanna*, 380 U.S. at 467; *Stewart Org*, 487 U.S. at 40–41 (Scalia, J., dissenting). That concern is not present here. Plaintiff cannot claim "unfair discrimination" when he *chose* to sue in federal court.[3] Further, Plaintiff has lost no right to any remedy or cause of

---

[3] This fact is especially true because Plaintiff *did* file an identical wrongful death claim in *state* court against Mr. Garza. *See Rodriguez v. Garza*, No. 25-CV-1294 (212th Dist. Ct., Galveston Cnty., Tex. July 21, 2025). Nothing precluded him from joining Dr. Coeytaux in that action. His

20

action by virtue of Defendant's citizenship. While a state litigant might get an "advantage" by avoiding the four-part test, a federal litigant is not "unfairly discriminated" against because he can still obtain a preliminary injunction and this relief has no bearing on the ultimate merits of the case. And by definition, because the only time a preliminary injunction would issue in state but not federal court is when equity would *not* justify a preliminary injunction, there is no "inequitable" administration of the laws by applying the traditional four-part test in federal courts.

Countervailing federal interests also counsel against applying an automatic anti-suit injunction rule. First, Rule 65, even if it does not directly address what standard applies, demonstrates "an important federal policy is involved when a litigant seeks such relief in a federal court." *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 487 F. Supp. 1248, 1261 (D. Md. 1980), *aff'd*, 650 F.2d 495 (4th Cir. 1981). Second, it is a long-standing policy that federal courts apply a "uniform" test to granting equitable relief. *See Payne*, 74 U.S. at 430 (1868) (noting federal equitable jurisdiction is "uniform throughout the different States"); *Guar. Tr.*, 326 U.S. at 105–07 ("Whatever contradiction or confusion may be produced . . . the body of adjudications concerning equitable relief in diversity cases leaves no doubt[.]"). Absent such uniformity, states could effectively nullify *Winter* and the entire body of federal equity jurisprudence for cases touching their preferred policy areas. Third,

---

failure to do so demonstrates that whatever "harm" he experiences from a federal court applying centuries-old federal procedural law is self-inflicted.

federal policy respecting principles of interstate comity and federalism also weigh against applying HB7's automatic anti-suit injunction rule. *See Am. Radio Ass'n*, 483 F.2d at 7.

Finally, the four-part test ensures the Seventh Amendment right to jury trials for suits at law is not infringed by state laws. *See Sonner*, 971 F.3d at 842 (holding the inadequate remedy at law element "implicates the well-established federal policy of safeguarding the constitutional right to a trial by jury"); *Byrd*, 356 U.S. at 537–39 (holding state rules should not abridge the constitutional right to a jury trial); *see also Scott v. Neely*, 140 U.S. 106, 110 (1891) (noting the inadequate remedy at law rule exists "because the defendant has a constitutional right to a trial by jury."); *Hipp for Use of Cuesta v. Babin*, 60 U.S. 271, 275 (1856) (same). Together, the overwhelming federal interests in applying the federal standard to issuing preliminary injunctions outweigh the minimal concerns raised by the twin policy aims of *Erie*. Therefore, the traditional four-part test is procedural under *Erie*. *See Heil Trailer*, 542 F. App'x at 335 n.22; *Flood*, 618 F.3d at 1117; *Martin*, 924 F.2d at 102; *Capital Tool*, 837 F.2d at 172–73; *Sullivan*, 731 F. Supp. at 955–57; *see also Olander v. Compass Bank*, 172 F. Supp. 2d 846, 850 n.4 (S.D. Tex. 2001) ("[T]his Federal Court would be extremely reluctant to grant a preliminary injunction without finding that each element set forth by the Fifth Circuit . . . [is] satisfied.").

In sum, because the traditional four-part test is a procedural rule grounded in acts of Congress, Rule 65, and centuries-old equitable principles, this Court must apply that test here. Multiple independent lines of authority, including controlling precedent and each branch of the *Erie* analysis, lead to the same conclusion: the federal four-part standard governs.

## II. Plaintiff Failed to Meet His Burden Under the Traditional Four-Part Test.

Because the federal four-part test applies, Plaintiff must satisfy each element to obtain relief. He has not done so. To the contrary, Plaintiff fails to carry his burden on any of the four required factors. To obtain a preliminary injunction, the movant bears the burden of proof and must present competent evidence supporting each element of relief. *See PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (affirming denial where movant failed to present probative evidence). Although evidentiary standards at the preliminary-injunction stage are less formal than at trial, the Court must still base its findings on competent evidence in the record. *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 777 (N.D. Tex. 2012). Argument of counsel is not evidence and cannot satisfy Plaintiff's burden.

Here, Plaintiff has not submitted any evidence to support his request for extraordinary relief. He provides no affidavits, declarations, or documentary evidence demonstrating that irreparable harm is likely or that a clawback lawsuit is imminent. Instead, his motion rests entirely on speculation and attorney argument, which is insufficient as a matter of law to sustain a request for extraordinary relief. *See Sampson v. Murray*, 415 U.S. 61, 88–89 (1974) (requiring verified pleadings, affidavits, or testimony to support a preliminary injunction); *United States v. Tellez*, 2009 WL 10669893, at *1 (W.D. Tex. June 11, 2009) (similar); *Louisiana v. Centers for Disease Control & Prevention*, 603 F. Supp. 3d 406, 420 n.72 (W.D. La. 2022) (noting "unverified allegations are not sufficient . . . to support relief"). Plaintiff offers no evidence that any expert witness, co-counsel, or other participant has actually declined involvement due to California's

23

shield law. *See generally* ECF No. 17. Nor does he provide any evidence regarding his fee arrangement with counsel or whether any indemnification or litigation funding arrangements exist. *Id.* Without such evidence, the Court cannot assess whether Plaintiff faces any real or imminent financial exposure from a California clawback suit. This absence of evidence underscores that Plaintiff's theory of harm is entirely conjecture.

### A.    Plaintiff Cannot Demonstrate Likelihood of Success on the Merits.

First, "[b]ecause a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," a plaintiff must make a "clear showing" that they have standing to maintain the preliminary injunction." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (internal quotations omitted). Where the plaintiffs lack standing, it is axiomatic that he cannot prevail on his claims for relief. *Vapor Tech. Ass'n v. Graham,* 167 F.4th 302, 305 (5th Cir. 2026) (finding that where the plaintiffs lacked standing they lacked likelihood of success on the merits); *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) ("Article III jurisdiction is always first . . . standing is a threshold issue that we consider before examining the merits." (internal quotations and citations omitted)).

As shown in Dr. Coeytaux's Motion to Dismiss, ECF No. 30, Plaintiff lacks Article III standing to assert an HB7 *qui tam* claim because he alleges no concrete, personal injury and cannot rely on a valid assignment of state standing. The Amended Complaint concedes that Plaintiff has suffered no injury in fact, and his request for injunctive relief rests only on speculative assertions that Dr. Coeytaux *might* commit future violations—insufficient under *Clapper* and *Lyons* to establish a "certainly impending" injury. *See id*. at 10–14; *see also Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (holding a plaintiff's burden to show

24

standing increases "at the preliminary injunction stage" because a plaintiff must make a "clear showing" for "each element of standing").

Nor can Plaintiff manufacture standing through HB7's purported *qui tam* mechanism. A relator may sue only if the government itself has suffered a cognizable injury capable of assignment, but Plaintiff alleges no past violation of HB7 and no non-speculative future injury to the State of Texas. Moreover, HB7 does not resemble a traditional *qui tam* statute under the test in *Vermont Agency* because it assigns no proprietary interest, provides no partial assignment or government control over the outcome of the suit, and instead attempts to deputize private citizens to vindicate generalized sovereign interests. ECF No. 30 at 14–19. As a result, Plaintiff has neither a personal injury nor a valid basis to stand in the State of Texas's shoes. Accordingly, Plaintiff cannot demonstrate he has a likelihood of success on the merits to bring his HB7 claim because he lacks standing to do so.

Second, Plaintiff has failed to state a claim under HB7 for an anti-suit injunction because he has failed to state a claim under HB7's *qui tam* provision. *Id.* at 31–38. First, Plaintiff has not plausibly alleged, and cannot allege upon amendment, that he is statutorily permitted to bring a *qui tam* action. HB7 expressly bars suit by any person who "committed an offense for which an affirmative finding of family violence was made," Tex. Health & Safety Code § 171A.101(d)(3)(B), and this is an element of the claim, not an affirmative defense. *See id.* at 31. Yet Rodriguez's Amended Complaint is silent on this required element, and for good reason: he has a prior conviction for assault with a family-violence finding, rendering him statutorily disqualified. *Id.* Moreover, the operative pleading rests

25

on nothing more than a conclusory allegation that Dr. Coeytaux "intends to continue mailing abortion-inducing drugs into Texas," without any supporting facts. *Id.* at 32–33. Federal pleading standards require far more than such speculation and "labels and conclusions," and do not permit a plaintiff to unlock discovery in hopes of later finding a viable claim. Finally, even if Plaintiff could clear these defects, his claim rests on an unconstitutional enforcement scheme: HB7's *qui tam* provision violates the Texas Constitution by divesting the Attorney General and local prosecutors of their exclusive authority to enforce state law and delegating that power to unaccountable private citizens. *See id.* at 33–36. For all of these independent reasons, Plaintiff cannot demonstrate any likelihood of success on the merits, and his request for extraordinary injunctive relief should be denied.

### B.    Plaintiff Cannot Demonstrate that He Faces Irreparable Harm Absent an Injunction.

First, Plaintiff's claimed injury relies on the purely speculative notion that Dr. Coeytaux may file a lawsuit under the California shield law—though no such lawsuit has been filed or even threatened. "To merit injunctive relief, a party must show [a] *likelihood* of irreparable harm." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 610 (S.D. Tex. 2022) (emphasis in original). Where the plaintiff's injury is purely speculative, he cannot demonstrate irreparable harm. *Id.* (finding plaintiff failed to satisfy the element of irreparable harm where the injury was purely speculative). The mere "possibility" that a plaintiff might suffer irreparable harm is "too lenient" to warrant the extraordinary remedy of injunctive relief; a plaintiff must go further, by demonstrating that an "irreparable injury

26

is *likely* in the absence of an injunction." *See Winter*, 555 U.S. at 22 (emphasis in original) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy."). The Court cannot sustain a preliminary injunction if the plaintiff's injury amounts to nothing "more than an unfounded fear." *Sheffield*, 604 F. Supp. 3d at 610 (internal quotations omitted).

Here, Plaintiff cannot possibly show a "likely" and "irreparable" injury. Plaintiff has not shown and cannot show that Dr. Coeytaux intends to file a lawsuit under California's clawback law, that he or his attorney have actual exposure to damages in that event, or that the purely notional threat of litigation has made it impossible to find additional counsel here. Plaintiff is miles away from the "ruinous civil liability" he claims. *See* ECF No. 17 at 6. None of the Plaintiff's hypothetical injuries are "likely," or sufficiently proximate, to satisfy the demanding standard for irreparable harm.

The timeline of this litigation further illustrates the point. Plaintiff retained counsel and filed the instant lawsuit several months before HB7 went into effect. *See* ECF No. 1. At that time, the risks posed by clawback litigation from the California shield law were known. Nevertheless, Plaintiff's counsel agreed to represent Plaintiff and file this suit. Since then, nearly nine months have passed since this lawsuit was initiated—and in that time no action has been brought against Plaintiff under the California shield law despite Plaintiff's assertion that such a claim is imminent and readily available. The risk that Dr. Coeytaux files a lawsuit against Plaintiff is no more than a mere "possibility," which is insufficient to sustain the likelihood of injury required for a preliminary injunction to issue.

27

*See Winter*, 555 U.S. at 21–22. A bare assertion that a claim exists, without more, is insufficient to sustain a request for extraordinary relief.

Second, Plaintiff's harm is self-inflicted, which bars his request for equitable relief. A self-inflicted harm is not irreparable harm. *See Texas v. United States Env't Prot. Agency*, 662 F. Supp. 3d 739, 756–57 (S.D. Tex. 2023) (citing *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021)) (finding plaintiff's alleged chilling effect on business decisions was self-inflicted harm and thus was not irreparable). Where a plaintiff simply could have avoided the purported harm by taking or avoiding an action, the "self-inflicted nature" of the asserted harm "severely undermines" the claim for equitable relief. *See Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (internal quotations omitted) (finding the government's injury was self-inflicted and insufficient to demonstrate an irreparable harm).

Plaintiff filed the instant lawsuit in July 2025, after California's shield law was already enacted law. *See* ECF No. 1. At that time, HB7's anti-suit injunction provision was not in effect to potentially shield Plaintiff from the future risk of a California shield claim. This means Plaintiff took the risk knowing it was a possibility at the time he filed—including that he may face liability down the road or that it may be difficult to retain counsel to take that risk. Plaintiff cannot manufacture irreparable harm by voluntarily initiating litigation and then invoking the Court's protection from the predictable legal risks that follow. This plain instance of self-inflicted injury is insufficient to form the basis of an irreparable harm. *See Texas*, 662 F. Supp. 3d at 757. Importantly, the harm Plaintiff is claiming is no different than the inherent risk that nearly all litigants face when deciding whether to bring a lawsuit. Often, disputes involve fee-shifting statutes or contractual

28

shifting of liabilities. In the normal course of litigation, the risk and costs associated with litigation are a choice that litigants make—not an undue risk warranting emergency relief. *See D.F. Pray, Inc. v. Nat'l Fire Ins. Co. of Hartford*, 2026 WL 523895, at *4 (D. Mass. Feb. 25, 2026) (finding that litigation costs and risks were not an irreparable injury). Plaintiff provides no compelling reason why this case should be any different.

Third, it is well-established that an injury is irreparable only "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (internal quotations omitted) (finding lack of irreparable harm where the plaintiffs have recourse through the ordinary course of litigation). "Mere injuries, however substantial, in terms of money, time and energy . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." *Id.* Here, Plaintiff fails to address how the threat of clawback liability is irreparable in light of Section 171A.151(f) of the Tex. Health & Safety Code. That provision states "if an action is brought or judgment is entered against a person under a clawback provision," the person is entitled to "compensatory damages," "costs, expenses, and reasonable attorney's fees," as well as "additional amounts consisting of the greater of" "twice the sum of the damages, costs, expenses, and fees" or "$100,000." Tex. Health & Safety Code § 171A.151(f). Monetary remedies awarded under that provision would not only fully compensate Plaintiff; it would be a windfall.

Finally, Plaintiff's undue delay in seeking a preliminary injunction weighs against a finding of an irreparable harm. A delay in seeking injunctive relief is sufficient to rebut the

presumption of an irreparable harm. *Gonannies, Inc. v. Goupair.Com, Inc.,* 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). This is because the concept of "irreparable harm" includes that the harm is imminent, and therefore must be remedied faster than a trial on the merits would allow. *Expedia, Inc. v. Rebound Int'l, LLC,* 2021 WL 3702169, at *2 (S.D. Tex. May 13, 2021) (finding lack of irreparable harm due to plaintiff's delay filing suit). Any delay in seeking relief demonstrates that "there is no apparent urgency to the request for the injunctive relief." *Id.* (internal quotations omitted).

Plaintiff's delay in seeking injunctive relief should bar its issuance. Indeed, California's shield law has been in effect since Plaintiff filed his original Complaint in July 2025. HB7, which affords Plaintiff an anti-suit injunction, went into effect on December 4. Yet Plaintiff waited nearly two months between the statute going into effect and filing an Amended Complaint and seeking preliminary injunction. That delay is fundamentally inconsistent with any claim of imminent irreparable harm that would warrant injunctive relief.

### C.    The Balance of Equities and the Public Interest Do Not Favor Injunctive Relief.

Finally, the balance of the equities and public interest factors weigh heavily against a preliminary injunction.

As an initial matter, Plaintiff's assertion that Dr. Coeytaux will not be harmed by the entry of a preliminary injunction, because a permanent injunction is inevitable, *see* ECF No. 17 at 7–8,  simply assumes the merits of claims that Dr. Coeytaux is moving to dismiss. That assumption cannot substitute for the required equitable analysis. A preliminary

30

injunction is not a vehicle for short-circuiting merits disputes or predetermining their outcome; yet that is precisely what Plaintiff asks this Court to do. His position effectively collapses the four-factor test into a foregone conclusion, relieving him of his burden to establish entitlement to extraordinary relief while simultaneously imposing immediate and concrete restrictions on Dr. Coeytaux. Plaintiff trivializes the burden on Dr. Coeytaux, but the requested injunction would impose a sweeping restraint on his ability to access courts and invoke rights afforded under the laws of another state. That is a paradigmatic form of irreparable harm. The injunction Plaintiff seeks would go much farther than preserve the status quo—it would strip Dr. Coeytaux of statutory remedies that California has affirmatively created and make those rights unavailable before Dr. Coeytaux has even attempted to exercise them.

Moreover, Plaintiff's request for an injunction is overbroad: it seeks injunctive relief preventing Dr. Coeytaux from filing *any* clawback claim, including one that has not yet accrued because Plaintiff has not yet filed litigation "[a]ttempting to enforce an order or judgment issued" in abusive litigation. *See* Cal. Civ. Code § 1798.300(a)(2). Because Plaintiff has not obtained an order or judgment in this case—let alone attempted to enforce it—a clawback claim based on such activity has not accrued, and his request for injunctive relief is not yet ripe.

In short, Plaintiff asks this Court to issue a preemptive anti-suit injunction that would restrict access to other courts, displace the operation of another state's laws, and dispense with the traditional requirements for equitable relief—all before any concrete

31

dispute has arisen. That is not a proper use of federal judicial power. Nor can it be in the public interest.

As Plaintiff concedes, the public interest favors permitting litigants—including Dr. Coeytaux—access to the courts and resolving any potential claims through the adversarial process. *See* ECF No. 17 at 9 ("Our judicial system depends on adversarial presentations in which lawyers vigorously argue and contest the legal and factual issues and hammer the weaknesses that they perceive in the other side's position."); *EEOC v. Pitre Inc.*, 2012 WL 12995020, at *3 (D.N.M. Jan. 26, 2012) ("Upholding the truth-seeking function and providing free access to the courts is in the public interest."); *Fighters Inc., LLC v. Elec. Arts Inc.*, 2009 WL 10699504, at *11 (C.D. Cal. Oct. 30, 2009) ("[P]ublic interest favors that [plaintiff]'s claims be resolved through the adversarial process in open court.").

Similarly, the public interest favors judicial restraint, respect for state laws which should be given equal weight, and adherence to established equitable principles instead of allowing a Texas state law to displace well-settled federal procedure. In stark contrast, granting the requested injunction would entangle this Court in a direct conflict between competing state policy regimes and require it to elevate Texas law over California law in a context where no concrete dispute has yet materialized, raising serious federalism and comity concerns. Federal courts do not lightly enjoin access to other courts or nullify the prospective application of another sovereign's laws—particularly in the absence of any pending proceeding. *See, e.g.*, *Am. Radio Ass'n*, 483 F.2d at 7; *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (noting, when considering whether to prospectively enjoin filing of new suits, "we are constrained by the overarching principle that federal courts

32

must be wary of infringing on legitimate exercises of state judicial power"); *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."); *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time." (internal footnote omitted)); *Aon Re, Inc. v. TIG Ins. Co.*, 2009 WL 3075584, at *6 (N.D. Tex. Sept. 28, 2009) ("[P]ublic interest considerations weigh in favor of protecting the independence of state court proceedings," particularly when "the California state court is capable of . . . ruling on the preclusive effect of any prior judgment rendered by this Court."); *see also* 11A Wright & Miller's Federal Practice & Procedure § 2942 (3d ed.) ("When the action sought to be halted is in a federal tribunal, . . . in effect it acts to restrain the other federal body and therefore represents an interference with the jurisdiction of another tribunal."). This Court should not do so either.

Plaintiff's contentions to the contrary hold no water.

*First*, Plaintiff's argument about his *counsel's* purported ethical dilemma, ECF No. 17 at 7, is based on the same speculation regarding the outcome of a future lawsuit and poses only hypothetical injuries to third parties—not irreparable harm to a *party*. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief

on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))). To be sure, Plaintiff's counsel has a myriad of options to lessen his own risk—including obtaining conflict of interest waivers from his client, adjusting fee structures to allocate risk, and advising the client on the risks inherent in his representation *before* filing suit.

*Second*, Plaintiff's slippery slope argument, *see* ECF No. 17 at 10, invites this Court to intervene in an abstract policy dispute about competing state policy regimes regarding abortion while ignoring that such conflicts are already accounted for through ordinary litigation processes, including jurisdictional defenses, choice-of-law rules, and limits on the constitutional power of state legislatures. There is nothing extraordinary or unmanageable about the existence of competing state laws; federal courts address such tensions routinely without resorting to preemptive injunctions against hypothetical future suits.

*Third*, Plaintiff's argument falls flat because HB7 itself creates an aggressive, retaliatory remedial scheme, authorizing substantial damages—including compensatory damages, fees, and additional statutory awards up to $100,000—against those who pursue disfavored claims against litigants in Texas. *See* Tex. Health & Safety Code § 171A.151(f). Having invoked that very regime, Plaintiff cannot now claim that the mere existence of reciprocal pro-choice laws in another state creates an intolerable cascade requiring federal intervention. Plaintiff's request does not seek equity, but seeks to use this federal court to offer one-sided and politically motivated relief. The Court should decline to do so.

**CONCLUSION**

For the reasons provided herein, this Court should deny Plaintiff's Motion for Preliminary Injunction.

Dated: April 16, 2026

Respectfully submitted,

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
P: (713) 576-2400
F: (713) 576-2499

Marc Hearron
CENTER FOR REPRODUCTIVE RIGHTS
Texas State Bar No. 24050739
(*admitted pro hac vice*)
MHearron@reprorights.org
199 Water St. 22nd Floor
New York, NY 10038
P: (917) 637-3600
F: (917) 637-3666

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*admitted pro hac vice*)
jhudson@reprorights.org

35

1600 K St. NW
Washington, DC 20002
P: (202) 628-0286

**COUNSEL FOR DEFENDANT
REMY COEYTAUX**

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com

37