**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**GALVESTON DIVISION**

| | | |
|---|---|---|
| JERRY RODRIGUEZ | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 3:25-cv-00225 |
| | § | |
| v. | § | |
| | § | |
| REMY COEYTAUX | § | |
| | § | |
| Defendant. | § | |

_____

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ENTRY OF JUDGMENT UNDER RULE 54(b)**

# **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................. 3

    A.  California's Shield Law .............................................................................. 3

    B.  Plaintiff's Lawsuit...................................................................................... 5

ARGUMENT.................................................................................................................. 6

    I.  Plaintiff's "Rule 54(b)" Motion is Premature and Procedurally Improper. ............. 6

    II.  Even If the Motion Were Procedurally Proper, Plaintiff Fails to Meet His Burden to Show Rule 54(b) Final Judgment Is Warranted. ......................................................... 8

    A.  There Is Just Reason for Delay. ............................................................... 8

    B.  Plaintiff's Arguments Do Not Justify Entering Judgment Now. ........................ 10

      i.  This Court is not "required" to issue Plaintiff an injunction "on request." .... 11

      ii.  Plaintiff has not shown any danger of hardship or injustice........................... 15

CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell, AK,*
    480 U.S. 531 (1987) ........................................................................................... 13

*Associated Mach. Tool Techs. v. Doosan Infracore Am., Inc.,*
    2016 WL 10675418 (S.D. Tex. Aug. 17, 2016) .......................................................... 10

*Curtiss-Wright Corp. v. Gen. Elec. Co.,*
    446 U.S. 1 (1980) ..................................................................................*passim*

*Epic Games, Inc. v. Apple, Inc.,*
    67 F.4th 946 (9th Cir. 2023) .................................................................................. 14

*GADV, Inc. v. Beaumont Indep. Sch. Dist.,*
    2011 WL 2220242 (E.D. Tex. June 7, 2011) ................................................................ 14

*Garziano v. Louisiana Log Home Co., Inc.,*
    2012 WL 12882923 (S.D. Miss. Aug. 9, 2012) ............................................................ 10

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ........................................................................................... 14

*Matthews v. Rodgers,*
    284 U.S. 521 (1932) ........................................................................................... 13

*Meredith v. City of Winter Haven,*
    320 U.S. 228 (1943) ........................................................................................... 14

*PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.,*
    81 F.3d 1412 (5th Cir. 1996) .............................................................................. 9, 15

*Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.,*
    967 F.2d 145 (5th Cir. 1992) ................................................................................... 9

*Rodriguez v. Quicken Loans, Inc.,*
    257 F. Supp. 3d 840 (S.D. Tex. 2017) ....................................................................... 13

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 13

*T.E.S. Entm't v. Walsh*,
   2005 WL 8157678 (M.D. La. Mar. 29, 2005) ............................................................... 16

*Treece v. Perrier Condo. Owners Ass'n, Inc.*,
   569 F. Supp. 3d 347 (E.D. La. 2021) ........................................................................... 16

*United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*,
   2012 WL 3861946 (S.D. Cal. Sept. 5, 2012) ............................................................... 14

*Valentine v. Collier*,
   993 F.3d 270 (5th Cir. 2021) ....................................................................................... 15

*Webster v. Doe*,
   486 U.S. 592 (1988) ..................................................................................................... 14

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ..................................................................................................... 14

*Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*,
   2018 WL 2124040 (E.D. La. May 8, 2018) .................................................................. 16

*Weyerhaeuser Co. v. Pardee Minerals, LLC*,
   2018 WL 3825224 (W.D. La. Aug. 10, 2018) .............................................................. 10

**Statutes**

28 U.S.C. § 1292(a)(1) ....................................................................................................... 15

Cal. Civ. Code §§ 1798.300–1798.308 ............................................................................... 3

Cal. Civ. Code § 1798.300(a)(2) ....................................................................................... 12

Cal. Civ. Code § 1798.300(d)(1)(C) ............................................................................... 3, 4

Tex. Health & Safety Code § 171A.051(a)(2) ..................................................................... 5

Tex. Health & Safety Code § 171A.151(a)(1) ................................................................... 12

Tex. Health & Safety Code § 171A.151(c) ...................................................................... 5, 9

Tex. Health & Safety Code § 171A.151(f) .................................................................. 15, 17

**Other Authorities**

10 Wright & Miller's Federal Practice & Procedure § 2656 (4th ed.) ................................ 7

Fed. R. Civ. P. 12(b) ........................................................................................................... 7

Fed. R. Civ. P. 54(b)..............................................................................................*passim*

Fed. R. Civ. P. 56........................................................................................................ 7

iv

Almost seven months after he filed this lawsuit, Plaintiff Jerry Rodriguez asks the Court, through his procedurally improper Motion for Entry of Judgment Under Rule 54(b), to issue what amounts to an advisory opinion insulating him against the prospect of liability under California's "shield" law. Although Plaintiff acknowledges that "[o]ur courts and our system of justice depend on an adversarial presentation of the issues," ECF No. 24 at 8, he seeks to avoid that very process in this case. Rather than allow this litigation to proceed in the ordinary course, Plaintiff asks the Court for a rushed, preemptive insurance policy that would allow his claims to advance against Defendant Remy Coeytaux ("Dr. Coeytaux"), the out-of-state doctor who allegedly sent abortion pills to Kendal Garza's husband, while simultaneously shielding *Plaintiff* from Dr. Coeytaux's exercise of the legal remedies available to him under California law. Plaintiff seeks this extraordinary and overbroad relief in connection with any claims Dr. Coeytaux might eventually assert under California's shield law, including claims that have not even accrued, and he asks the Court to grant it *now*—before any evidence has been presented, and in the face of a motion to dismiss that could fully and conclusively adjudicate this lawsuit and on which briefing has only just begun.[1]

Plaintiff grounds his request in his assertion that it would be "impossible" to litigate his claims without exposing himself and his counsel to "ruinous liability." ECF No. 24 at 3. But he makes this claim, based only on his unsubstantiated say-so,[2] in spite of his own

---

[1] Plaintiff did not even wait to see Dr. Coeytaux's motion to dismiss before filing his Rule 54(b) motion. *See generally* ECF No. 24.

[2] Plaintiff points to no evidence at all that he or his counsel would be on the hook for any damages, much less that they would face "ruinous liability" absent immediate judicial action.

deliberate decision at the outset of the litigation seven months earlier—before Texas House Bill 7 ("HB7") provided any right to an anti-suit injunction—to initiate this case against Dr. Coeytaux. In filing this lawsuit, he knowingly and voluntarily assumed the risk that his choice would expose him to the same liability he now seeks to avoid.

That strategic choice does not justify the extraordinary relief he now seeks, nor could it, given the procedural posture of this case. Plaintiff's motion is premature. Rule 54(b) is a procedural device by which the Court may certify that its final adjudication of a subset of the claims is a final, appealable judgment. But here, the Court has not adjudicated *any* claims. Dr. Coeytaux has not even filed a responsive pleading or asserted any potential defenses or counterclaims. Nor has Plaintiff presented any evidence demonstrating entitlement to an injunction. There is simply no order or decision that could be certified as a final judgment under Rule 54(b). The Court should not rush to decide the ultimate merits of this lawsuit before the parties have left the starting line.

Even if there were such an order, granting Plaintiff's motion would contravene the "historic federal policy against piecemeal appeals." *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Plaintiff cannot demonstrate any cognizable harm in the absence of an early judgment. His only articulated injuries are no different from other ordinary features of litigation, including fee-shifting provisions and the risk of counterclaims, and are self-inflicted risks that he and his counsel took when they initiated this lawsuit against Dr. Coeytaux. Plaintiff's main argument—that he is entitled to issuance of an injunction "upon request"—not only runs afoul of established federal precedent; it is an argument that

2

goes directly to the merits (or lack thereof) of his claim, not an argument for Rule 54(b) certification. The Court should deny Plaintiff's motion.

**BACKGROUND**

### A. California's Shield Law

In 2023, California's legislature enacted a "shield law" to protect providers of reproductive and gender-affirming health care from facing civil or criminal liability for providing such care in any lawsuits that might be filed in other states. *See* Cal. Civ. Code §§ 1798.300–1798.308. The law was enacted in response to many states' enactments of near-total abortion bans in the wake of the U.S. Supreme Court overturning the federal constitutional right to abortion.

Among other concerns, California's shield law addresses the potential for liability against providers who are alleged to have provided medication abortion via telehealth— care that is lawful in California. A prescriber in California may face liability, for example, if they prescribe medication abortion to a patient who tells the prescriber that they are in a state where abortion is lawful, while actually being in a state with an abortion ban. California's shield law protects the prescriber from liability for providing such care, regardless of the patient's location. Specifically, under the shield law, "[l]egally protected health care activity" includes "[t]he provision of reproductive health care services . . . by a person duly licensed under the laws of California . . . if the service or care is lawful under the laws of California, regardless of the patient's location." Cal. Civ. Code § 1798.300(d)(1)(C). "Reproductive health care services" includes "all services, care, or products of a medical, . . . prescribing, or dispensing nature relating to the human

3

reproductive system provided in accordance with the constitution and laws of this state, whether provided in person or by means of telehealth services which includes . . . all services, care, and products relating to . . . the termination of a pregnancy." *Id.* § 1798.300(e).

To protect providers against civil lawsuits for engaging in legally protected health care services, California's shield law provides so-called clawback causes of action. Specifically, the shield law creates a cause of action against a person who "engages or attempts to engage in abusive litigation." *Id.* § 1798.303. This clawback claim may be brought by "a defendant in the abusive litigation." *Id.* "Abusive litigation" is litigation "to deter, prevent, sanction, or punish a person engaging in legally protected health care activity" in either of two ways: (1) "[f]iling" litigation where liability is based on a legally protected health care activity or (2) "[a]ttempting to enforce an order or judgment issued in connection" with such litigation. *Id.* § 1798.300(a). California's shield law thus creates two potential avenues for a clawback claim: (1) a claim that accrues upon the filing of abusive litigation and (2) a separate claim that does not accrue until there is an order or judgment issued in abusive litigation and someone tries to enforce that order or judgment.

In a clawback lawsuit, if the court finds for the plaintiff, "recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation." *Id.* § 1798.305.

4

### B. Plaintiff's Lawsuit

On July 20, 2025, Plaintiff filed this lawsuit against Dr. Coeytaux, seeking damages for wrongful death resulting from an abortion in September 2024, as well as injunctive relief on behalf to restrain Dr. Coeytaux from "send[ing] abortion pills into Texas." *See generally* ECF No. 1.

On December 4, 2025, HB7 took effect. It states that no person may "mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state." Tex. Health & Safety Code § 171A.051(a)(2). It purports to grant any "person" (other than state officials) a cause of action against a person who violates or intends to violate HB7. *Id.* § 171A.101(a). HB7 prohibits certain people from bringing suit, including those who "committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure." *Id.* § 171A.101(d)(3)(B). HB7 also includes provisions to try to counteract other States' shield laws: It states that if a person brings an HB7 suit, then "the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains" each defendant" from "bringing" or "continuing to litigate" a clawback suit. *Id.* § 171A.151(c).

On September 30, 2025, upon the parties' joint request, this Court stayed Defendant's deadline to respond to the initial complaint because plaintiff intended to file an amended complaint in "December of 2025" "in response to Texas's House Bill 7, which [took] effect on December 4, 2025." ECF No. 13 (joint motion); ECF No. 14 (order).

Despite Plaintiff's representations that he would file an amended Complaint in December 2025, he did not so. It was not until *February* 1, 2026—almost two months after

HB7 went into effect and more than six months after this lawsuit was filed—that Plaintiff amended his complaint to add two claims: (1) an HB7 claim for an injunction based on the allegation that Dr. Coeytaux "intends to" violate HB7 in the future and (2) a claim for an anti-suit injunction to preemptively "restrain [Dr. Coeytaux], and every person in privity or in active concert or participation with him, from suing [Plaintiff], his attorneys, or any person providing legal representation or any type of assistance to [Plaintiff], under California's clawback law or any other type of clawback provision." ECF No. 16 at ¶¶ 30, 38, 39. In connection with his claim for an anti-suit injunction, on February 2, 2026, Plaintiff moved for a preliminary anti-suit injunction. *See* ECF No. 17.

On February 10, 2026, before Dr. Coeytaux filed any response to the Amended Complaint or preliminary injunction motion, Plaintiff filed the instant motion, asking the "Court to enter judgment under Rule 54(b) and permanently enjoin [Dr.] Coeytaux from filing 'clawback' lawsuits against Plaintiff or his attorneys under California's abortion-shield law." *See generally* ECF No. 24.

Concurrently with the filing of this Opposition, on April 16, 2026, Dr. Coeytaux moved to dismiss this case, including the anti-suit injunction claim, for lack of subject-matter jurisdiction and failure to state a claim. *See generally* ECF No. 30.

## ARGUMENT

### I.    Plaintiff's "Rule 54(b)" Motion is Premature and Procedurally Improper.

Plaintiff's Motion improperly invokes Rule 54(b) to seek entry of final judgment at this early stage of the proceedings when no claims have been adjudicated. Rule 54(b) provides a process by which the Court's final adjudication on a subset of the claims in the

case can be made into a final, appealable judgment. Where there are multiple claims, the background rule is that any order "that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). But where the Court has finally adjudicated some, but not all, of the claims, the court may certify that "there is no just reason for delay" and direct entry of final judgment on those claims. *Id.*

A "prerequisite for invoking Rule 54(b) is that at least one claim or the rights and liabilities of at least one party must be finally decided." 10 Wright & Miller's Federal Practice & Procedure § 2656 (4th ed.). Rule 54(b) is not itself a vehicle for adjudicating a claim; rather, it "simply establishes a procedure that expedites [appellate] review of a separable portion of a multiple-claim or multiple-party action that has been finally adjudicated." *Id.* § 2658.1. Rule 54(b) is properly invoked only after the Court has finally adjudicated a claim, such as by dismissing the claim under Rule 12(b), by granting partial summary judgment under Rule 56, or through trial. Thus, for example, "a partial summary judgment that decides some of the issues pertinent to a single claim is interlocutory and not within the scope of [Rule 54(b)], but a summary judgment that completely disposes of one of several claims will be final and appealable if a Rule 54(b) certificate is made." *Id.* § 2656.

As the Supreme Court has explained, there are "steps to be followed in making determinations under Rule 54(b)." *Curtiss-Wright*, 446 U.S. at 7. "A district court must first determine that it is dealing with a 'final judgment.'" *Id.* "It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the

7

sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). "Once having found finality, the district court must go on to determine whether there is any just reason for delay." *Id.* at 8.

Here, Plaintiff's "Rule 54(b)" motion puts the cart before the horse. Plaintiff has not filed a dispositive motion on his claim for an anti-suit injunction. Nor has this Court rendered any decision on his claim, let alone an "ultimate disposition" of it. *See id.* There is simply no order that the Court could certify for entry of final judgment under Rule 54(b). The Court should deny Plaintiff's premature, improper "Rule 54(b)" motion.

## II.    Even If the Motion Were Procedurally Proper, Plaintiff Fails to Meet His Burden to Show Rule 54(b) Final Judgment Is Warranted.

### A.  There Is Just Reason for Delay.

Regardless, entry of partial final judgment under Rule 54(b) is inappropriate because there is "just reason for delay," as Dr. Coeytaux has a currently pending motion to dismiss and still has the potential to file an answer or counterclaims that would be intertwined with the anti-suit injunction claim. Fed. R. Civ. P. 54(b). "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright*, 446 U.S. at 8. "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," considering "judicial administrative interests as well as the equities involved." *Id.*

8

In "weigh[ing] the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other," courts may consider factors like "whether the claims under review [a]re separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967 F.2d 145, 148 (5th Cir. 1992) (quotations omitted); *Curtiss-Wright*, 446 U.S. at 8. Because Rule 54(b) "preserves the historic federal policy against piecemeal appeals," *id.*, "a district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel." *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996).

There are good reasons to delay entry of final judgment on Plaintiff's anti-suit injunction claim: Dr. Coeytaux is moving to dismiss it because Plaintiff does not have standing to bring it and cannot state a claim under HB7 more broadly. Plaintiff's ability to seek an anti-suit injunction is wholly dependent on his ability to bring his HB7 claim. HB7 only authorizes an anti-suit injunction in connection with "an action described by Subsection (a)(1) or (2)," Tex. Health & Safety Code § 171A.151(c), which is defined as "an action authorized by [HB7]" or "an action that alleges a violation of" HB7's prohibition on manufacturing, distributing, mailing, transporting, delivering, prescribing or providing abortion-inducing drugs. *Id.* § 171A.151(a)(1), (2). Put otherwise, Plaintiff's ability to seek

9

an anti-suit injunction hinges on his underlying ability to bring a claim "authorized by" or "alleg[ing] a violation of" HB7. *Id.*

Because there is a pending motion to dismiss both the anti-suit injunction and HB7 claim and, should this case proceed beyond the motion to dismiss, Dr. Coeytaux's answer would necessarily include defenses and/or counterclaims whose resolution would be intertwined with the anti-suit injunction claim, this motion is premature.

Thus, entering final judgment on the anti-suit injunction claim at this stage all but guarantees that the "appellate court would have to decide the same issues more than once even if there were subsequent appeals" or that a decision by this Court on the motion to dismiss might moot the appeal. *Curtiss-Wright*, 446 U.S. at 8; *see, e.g.*, *Associated Mach. Tool Techs. v. Doosan Infracore Am., Inc.*, 2016 WL 10675418, at *3 (S.D. Tex. Aug. 17, 2016) (denying Rule 54(b) motion to certify state statutory claims because it was not "final" and the remaining claims "rely on" the statute to modify the parties' duties); *Weyerhaeuser Co. v. Pardee Minerals, LLC*, 2018 WL 3825224, at *3 (W.D. La. Aug. 10, 2018) (denying Rule 54(b) motion on cross-claims that were dependent on plaintiff's pending claim because "there would be an appeal of an issue that may never have to be decided" if plaintiff failed to succeed on its claim); *Garziano v. Louisiana Log Home Co., Inc.*, 2012 WL 12882923, at *1 (S.D. Miss. Aug. 9, 2012) (denying Rule 54(b) motion when the parties subsequently filed motions that were "potentially dispositive of the case").

## B.  Plaintiff's Arguments Do Not Justify Entering Judgment Now.

Plaintiff proffers three justifications for why the Court should not delay the entry of judgment on his anti-suit injunction claim. First, he says that "[t]he law of Texas

10

unambiguously entitles [Plaintiff] to a permanent antisuit injunction." ECF No. 24 at 3. Second, he argues that the "ongoing threat of clawback lawsuits makes it impossible for [Plaintiff] and his attorneys to litigate their claims without exposing themselves to ruinous liability." *Id.* Third, he asserts that "a final judgment with res judicata effect is needed to ensure that [Dr.] Coeytaux will not file retaliatory lawsuits against [Plaintiff] and his lawyers." *Id.* None of these arguments justifies entering a final judgment at this early stage of the litigation on his claim for an anti-suit injunction.

### i.      This Court is not "required" to issue Plaintiff an injunction "on request."

Contrary to Plaintiff's argument, this Court is not "require[d]" "to permanently enjoin [Dr.] Coeytaux from suing [Plaintiff] under California's clawback provisions 'on request.'" *Id.*

As an initial matter, Plaintiff's argument that he is entitled to an injunction is an argument on the *merits* of his claim, not a Rule 54(b) argument. His assertions are more appropriate for a motion for judgment on the pleadings or a motion for summary judgment—which would consider the evidence and the allegations that Plaintiff has pleaded to determine his entitlement to the relief that he seeks under HB7. In each of the dispositive motion contexts, the legal issues could be fully briefed with supporting evidence rather than getting the cursory and conclusory treatment that Plaintiff's motion gives them. Only if Plaintiff were to prevail on the merits of his anti-suit injunction claim via one of those motions would it then be appropriate to consider whether there is just reason to delay entry of final judgment on that claim under Rule 54(b).

11

Setting that aside, there are substantial reasons to believe that Plaintiff will not prevail on the merits of his anti-suit injunction claim.

As explained in Defendant's Motion to Dismiss, ECF No. 30 at 8–21, Plaintiff lacks standing to assert any of his claims, including his claim for an anti-suit injunction. He faces no certainly impending injury; Plaintiff does not, and cannot, allege that Dr. Coeytaux has ever threatened to file a clawback suit against him. *See id.*

Moreover, Plaintiff's request for an injunction is overbroad: it seeks injunctive relief preventing Dr. Coeytaux from filing *any* clawback claim, including one that has not yet accrued because Plaintiff has not yet filed litigation "[a]ttempting to enforce an order or judgment issued" in abusive litigation. *See* Cal. Civ. Code § 1798.300(a)(2). Because Plaintiff has not even obtained any order or judgment in this case—let alone attempted to enforce it—a clawback claim based on such activity has not accrued, and his request for injunctive relief is not yet ripe.

Additionally, if Plaintiff's HB7 *qui tam* claim is dismissed for any of the numerous reasons raised in Dr. Coeytaux's motion to dismiss, his claim for an anti-suit injunction also must be dismissed. *See* ECF No. 30 at 31–39. Plaintiff's claim for an anti-suit injunction hinges on his having brought "an action authorized by" HB7. Tex. Health & Safety Code § 171A.151(a)(1). His HB7 *qui tam* claim is not authorized for numerous reasons, including that he committed a family-violence offense; failed to plead facts to show a violation of HB7; the law itself is unconstitutional; and he lacks standing to bring it, because neither Plaintiff nor Texas have an injury in fact and HB7 is not an appropriate *qui tam* statute. *Id* .

12

Moreover, as stated in Dr. Coeytaux's concurrently filed Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, the requested injunction falls outside this Court's equitable jurisdiction because Plaintiff cannot satisfy the four-part test for an equitable injunction and federal procedural precedent controls over matters in equity. *See generally* ECF No. 31; *see Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (noting the test for permanent and preliminary injunctions are "essentially the same" except for showing "actual success" on the merits rather than "likelihood of success").

Even assuming Plaintiff has standing and that his claim for an anti-suit injunction survives a motion to dismiss, there are substantial reasons to believe he will not ultimately prevail on the merits—once the merits are properly before the Court. State law cannot require federal courts to issue injunctions. "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts." *Guar. Tr.*, 326 U.S. at 105–06; *see also Matthews v. Rodgers*, 284 U.S. 521, 529 (1932) ("[S]tate legislation cannot . . . avoid or dispense with the prohibition against the maintenance of any suit in equity in the federal courts, where the legal remedy is adequate."); *Rodriguez v. Quicken Loans, Inc.*, 257 F. Supp. 3d 840, 851 (S.D. Tex. 2017) ("It is well settled that state law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision." (citation modified)); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020) (in diversity actions, "traditional principles governing equitable

13

remedies in federal courts, including the requisite inadequacy of legal remedies" apply even though state law dispensed with these requirements).

Nor may state law "obligate" a federal court to "mechanically . . . grant an injunction for every violation of law" with no discretion to consider the equities. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). The "essence of equity jurisdiction has been the power of the [court] to do equity and to mould each decree to the necessities of the particular case" by "balancing . . . public and private interests." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *Webster v. Doe*, 486 U.S. 592, 604–05 (1988); *see Meredith v. City of Winter Haven*, 320 U.S. 228, 235 (1943) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.").

Because state law cannot control the scope of a federal equitable remedy here, the federal injunction standard and principles of equity apply. *See GADV, Inc. v. Beaumont Indep. Sch. Dist.*, 2011 WL 2220242, at *2 (E.D. Tex. June 7, 2011) (applying federal permanent injunction test because "specific authority to ensure compliance with a state statute does not require a federal judge exercising equitable power to mechanically grant an injunction for every violation of the law"); *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, 2012 WL 3861946, at *4 (S.D. Cal. Sept. 5, 2012) (collecting cases); *see, e.g.*, *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023) (applying federal permanent injunction test);

To obtain a permanent injunction, Plaintiff bears the burden of establishing that (1) he "has succeeded on the merits"; (2) "failure to grant the injunction will result in

14

irreparable injury"; (3) "said injury outweighs any damage that the injunction will cause the opposing party"; and (4) the "injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). As discussed more fully in Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff failed to make a clear showing on these elements, because he cannot. *See generally* ECF No. 31. Plaintiff lacks an irreparable harm and has only claimed a speculative, self-inflicted injury on a third-party, Plaintiff's lawyer rather than Plaintiff himself. *Id.* at 28. Even if he tried, it is unclear how Plaintiff could show an irreparable injury in light of the provision in HB7 stating that a defendant in a clawback action "is entitled to . . . damages from any person who brought" the clawback action, which would be an adequate remedy at law. *See* Tex. Health & Safety Code § 171A.151(f).

### ii.     Plaintiff has not shown any danger of hardship or injustice.

Nor has Plaintiff met his burden to overcome the Court's general policy against piecemeal appeals by showing that he is in "danger of hardship or injustice through delay which would be alleviated by immediate appeal." *PYCA Indus.*, 81 F.3d at 1421.

Plaintiff cannot show hardship or injustice would result absent this motion, because any ruling by this Court on his pending motion for a preliminary anti-suit injunction would be an immediately appealable interlocutory order. *See* 28 U.S.C. § 1292(a)(1) (appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"). Rule 54(b) therefore adds nothing of practical value as Plaintiff would already be entitled to appeal regardless of how the court ruled.

15

Additionally, the purported injuries and hardships to which Plaintiff points are inherent in litigation or consequences of his own making. Plaintiff's speculative future exposure to monetary liability as a result of a hypothetical countersuit, his potential inability to collect damages, and the mere possibility that an injunction might be vacated on appeal, ECF No. 24 at 8–10, are risks inherent in *any* litigation that are insufficient to justify a Rule 54(b) order. *See Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*, 2018 WL 2124040, at \*2 (E.D. La. May 8, 2018) ("What the plaintiff identifies are features common to all litigation involving multiple parties and claims; he offers no danger of injustice that would be alleviated by an immediate appeal."); *T.E.S. Entm't v. Walsh*, 2005 WL 8157678, at \*3 (M.D. La. Mar. 29, 2005) ("[A]s with most legal matters involving financial disputes, a plaintiff almost always faces the possibility that he will be unable to collect a money judgment from the defendant."); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 362 (E.D. La. 2021) ("[C]ontinued expense and emotional strain" are "present in every case" and do "not indicate that this is the sort of infrequent hard . . . case that Rule 54(b) was designed to address." (citation modified)).

Indeed, Plaintiff's assertion—that he needs an immediate final judgment on his anti-suit injunction to prosecute his other claims—rings hollow. Plaintiff was willing to litigate this case months before the anti-suit injunction provisions of HB7 took effect. Indeed, Plaintiff filed this lawsuit on July 20, 2025. *See* ECF No. 1. At that point, California's shield law had been in effect for a year and a half and HB7 was not enacted and would not take effect for almost six months. Yet Plaintiff and his counsel were perfectly willing to sue Dr. Coeytaux for wrongful death and risk the possibility of clawback liability, without the

16

existence of an HB7 anti-suit injunction claim. Moreover, Plaintiff offers no evidence that he or his counsel will be personally responsible for any damages at all, much less face "ruinous liability" in the absence of immediate judicial action. And he fails to explain why he is not fully protected by the legal remedy that HB7 provides. *See* Tex. Health & Safety Code § 171A.151(f) (entitling him to "damages" against any clawback action).

Plaintiff asks this Court to insure him from potential future consequences of his own litigation choices rather than allow this lawsuit to run its course. Rule 54(b) is not a mechanism for skipping ahead of the normal course of the litigation process simply to alleviate a party's perceived risks.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Entry of Judgment under Rule 54(b).

17

Dated: April 16, 2026

Respectfully submitted,
*/s/ Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER
LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com
Leah Schultz
Texas State Bar No. 24126910
S.D. Tex. Bar No. 3737066
Leah.Schultz@arnoldporter.com
811 Main Street, Suite 1800
Houston, TX 77002-2755
P: (713) 576-2400
F: (713) 576-2499

Marc Hearron
CENTER FOR REPRODUCTIVE RIGHTS
Texas State Bar No. 24050739
(*admitted pro hac vice*)
MHearron@reprorights.org
199 Water St. 22nd Floor
New York, NY 10038
P: (917) 637-3600
F: (917) 637-3666

Jenna Hudson
CENTER FOR REPRODUCTIVE RIGHTS
District of Columbia State Bar No. 1002396
(*admitted pro hac vice*)
jhudson@reprorights.org
1600 K St. NW
Washington, DC 20002
P: (202) 628-0286

**COUNSEL FOR DEFENDANT
REMY COEYTAUX**

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, the foregoing document was electronically filed with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the electronic filing system of the court.

/s/ *Christopher M. Odell*
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
Texas State Bar No. 24037205
S.D. Tex. Bar No. 33677
Christopher.Odell@arnoldporter.com