UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |
|---|---|
| **Jerry Rodriguez**,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**Remy Coeytaux**,<br><br>　　　　　Defendant. | Case No. 3:25-cv-225 |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT UNDER RULE 54(b) AND MOTION FOR
PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of contents ................................................................................. i

Table of authorities ............................................................................ ii

I. The clawback provision in California's shield law authorizes Coeytaux to sue Rodriguez and his attorney for treble damages even if they prevail in this litigation ................................................................. 1

II. Mr. Rodriguez's Rule 54(b) motion is neither premature nor procedurally improper ....................................................................... 2

III. There is no just reason to delay entry of judgment on Mr. Rodriguez's request for an anti-clawback injunction ........................................ 4

IV. Coeytaux fails to rebut Rodriguez's arguments for entry of partial final judgment ....................................................................................... 7

    A. The law of Texas applies to this case, and it requires issuance of a permanent anti-clawback injunction "on request" ................... 7

        1. Rodriguez has Article III standing to request an antisuit injunction ........................................................................... 8

        2. The Court has no discretion to withhold the mandatory antisuit injunction required by section 171A.151(c) ................ 12

        3. Even if this Court could disregard the command of section 171a.151(c), Rodriguez remains entitled to a permanent anti-clawback injunction under the four-part test for permanent injunctive relief ...................................................... 19

    B. A permanent injunction under Rule 54(b) is needed even if a party appeals the ruling on the motion for preliminary injunction ................................................................................... 23

Conclusion ...................................................................................... 25

Certificate of word count ................................................................ 26

Certificate of service ...................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Babbitt v. United Farm Workers National Union*, 442 U.S. 289
  (1979) ................................................................................................ 9, 10

*Berk v. Choy*, 607 U.S. 187 (2026) ................................................................ 14

*Doe v. Bolton*, 410 U.S. 179 (1973)................................................................. 9

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982)................................................... 24

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................... 9, 18

*First Choice Women's Resource Centers, Inc. v. Davenport*,
  No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026) ............................ 8, 20

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) ............... 14, 16, 17

*Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*,
  313 U.S. 487 (1941) .............................................................................. 1, 7

*Lake v. HealthAlliance Hospital Broadway Campus*,
  738 F. Supp. 3d 208 (N.D.N.Y. 2024)...................................................... 24

*Matthews v. Rodgers*, 284 U.S. 521 (1932)............................................ 14, 16, 18

*Rodriguez v. Quicken Loans Inc.*,
  257 F. Supp. 3d 840 (S.D. Tex. 2017) .............................................. 14, 16, 18

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) ...................................... 3

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)......... 14, 16, 18

*Stenberg v. Carhart*, 530 U.S. 914 (2000 ........................................................ 10

*Tinker v. Des Moines Independent Community School District*,
  393 U.S. 503 (1969) ................................................................................ 21

*Trump v. CASA, Inc.*, 606 U.S. 831 2025)...................................................... 18

*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021) ......................................... 19

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021).................................. 10

**Statutes**

11 U.S.C. § 362................................................................................................. 13

15 U.S.C. § 77t(b).............................................................................................. 13

15 U.S.C. § 78u(d)............................................................................................. 13

28 U.S.C. § 1292(a)(1)............................................................................23

28 U.S.C. § 1652 ..............................................................................13, 14

28 U.S.C. § 2262(a)...............................................................................13

Tex. Health & Safety Code § 171A.106(b)................................................7

Tex. Health & Safety Code § 171A.151..................................................19

Tex. Health & Safety Code § 171A.151(a) ...............................................5

Tex. Health & Safety Code § 171A.151(a)(2)...........................................5

Tex. Penal Code § 7.03...........................................................................2

Tex. Penal Code § 19.06.........................................................................2

## Constitutional Provisions

U.S. Const. art. VI, cl. 2 .......................................................................13

## Rules

Fed. R. Civ. P. 54(b) ........................................................................3, 15

## Other Authorities

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989 (2008) ....................9, 17

The law of Texas applies to this diversity action,[1] and it unambiguously requires this Court to enjoin Coeytaux from suing Rodriguez or his attorneys under the clawback provision in California's shield law. *See* Tex. Health & Safety Code § 171A.151(c). Coeytaux does not deny that section 171A.151(c) mandates the issuance of this antisuit injunction "on request," and he does not argue that section 171A.151(c) is unconstitutional. Yet Coeytaux insists that this Court should *deny* the injunctive relief required by section 171A.151(c) and force Rodriguez and his lawyers to litigate their claims under the sword of Damocles created by California's clawback regime, which makes Rodriguez and his lawyers liable to Coeytaux for treble damages even if they prevail in this litigation, and which increases Rodriguez's and his lawyer's personal liability every time they take any action that causes Coeytaux's attorneys to spend billable time. Coeytaux's stance is untenable, and the Court should issue a permanent antisuit injunction that removes the threat presented by California's clawback statute.

I.      **The Clawback Provision In California's Shield Law Authorizes Coeytaux To Sue Rodriguez And His Attorney For Treble Damages Even If They Prevail In This Litigation**

Rodriguez alleges that Coeytaux killed his unborn child by sending abortion pills into Texas with the intent of assisting Kendal Garza's illegal abortion. *See* First Amended Complaint, ECF No. 16, at ¶¶ 9–11. These allegations, if true, mean that Coeytaux committed murder under Texas law and violated numerous other provisions of Texas's abortion laws. *See id.* at ¶¶ 16–26.[2] Coeytaux does not deny that

---

1.    *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941).

2.    Coeytaux claims that those who aid or abet self-managed abortions cannot be guilty of murder because Texas law shields the pregnant woman who self-aborts

California's shield law protects abortion providers who knowingly and intentionally violate the abortion laws of other states by assisting illegal abortions performed inside those states. And Coeytaux does not deny that the clawback provision authorizes him to sue Rodriguez, his attorney, and anyone else who "engages" in this lawsuit for treble damages even if Rodriguez prevails on his claims.

## II.    Mr. Rodriguez's Rule 54(b) Motion Is Neither Premature Nor Procedurally Improper

Coeytaux claims that Rodriguez's request for entry of partial final judgment is "premature" and "procedurally improper" because his claim for an antisuit injunction has not yet been adjudicated or resolved. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 6–8. But Rodriguez's Rule 54(b) motion is *asking* this Court to adjudicate his claim for an antisuit injunction *now*, as section 171A.151(c) requires courts to issue a permanent anti-clawback injunction "on request." *See* Tex. Health & Safety Code § 171A.151(c); Pl.'s Rule 54(b) Mot., ECF No. 24, at 6–7. This antisuit injunction is mandatory, and it is necessary to allow Rodriguez and his lawyers to

---

from criminal liability. *See* Def.'s Mot. to Dismiss, ECF No. 30, at 25; Tex. Penal Code § 19.06 ("This chapter does not apply to the death of an unborn child if the conduct charged is: (1) conduct committed by the mother of the unborn child"). That is false; Texas's accomplice-liability statute makes clear that Kendal Garza's immunity from criminal prosecution does not absolve Coeytaux of liability for the murder that he aided or abetted. *See* Tex. Penal Code § 7.03 ("In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense . . . (2) that the person for whose conduct the actor is criminally responsible . . . is immune from prosecution."). Knowingly or intentionally killing an unborn child in Texas is an act of murder, and Coeytaux is guilty of murder even though Kendal Garza cannot be prosecuted for her role in the murder.

pursue their remaining claims against Coeytaux without exposing themselves to treble-damages liability under California's clawback regime. So Rodriguez is entirely justified in asking this Court to issue a permanent antisuit injunction now.

More importantly, there is nothing in Rule 54(b) that prevents Rodriguez from requesting a permanent injunction and entry of partial final judgment at this time. The rule provides, in relevant part:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). There is no requirement that Rodriguez file a separate motion for partial summary judgment on his claim for a permanent antisuit injunction and then wait until he prevails on that motion before requesting entry of partial final judgment under Rule 54(b). Rodriguez may litigate both the merits of his antisuit-injunction claim and his request for entry of partial final judgment as part of a single motion.

Of course, this Court still must determine that Rodriguez is entitled to a permanent anti-clawback injunction before entering partial final judgment under Rule 54(b), and Rodriguez is not arguing or suggesting otherwise. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435–36 (1956) ("[T]he District Court must make *both* 'an express determination that there is no just reason for delay' *and* 'an express direction for the entry of judgment.'" (emphasis added)). That is why Rodriguez spent an entire section of his Rule 54(b) motion explaining how Texas law requires entry of a permanent anti-clawback injunction when a litigant asserts a claim for relief under HB 7. *See* Pl.'s Rule 54(b) Mot., ECF No. 24, at 6–7. But the Court should address

the merits of the antisuit-injunction claim now, as it has been fully briefed,[3] and if it agrees that Rodriguez is entitled to an anti-clawback injunction then it should determine whether there is "no just reason" to delay entry of partial final judgment.

### III.   There Is No Just Reason To Delay Entry Of Judgment On Mr. Rodriguez's Request For An Anti-Clawback Injunction

Coeytaux does not deny that California's shield law allows him to sue Rodriguez and his lawyer, as well as anyone else who "engages" in this litigation, for treble damages even if Rodriguez *prevails* in his lawsuit against Coeytaux. Yet Coeytaux wants this Court to delay entry of the anti-clawback injunction required by section 171A.151(c) and force Rodriguez and his lawyer to expose themselves to ruinous civil liability as the price of presenting their claims to a federal court. The Court should reject Coeytaux's request, as there is no "just reason" for this Court to perpetuate the threat presented by California's clawback law.

Coeytaux argues that the Court should delay entry of judgment on the antisuit-injunction claim because he has asked this Court to dismiss Rodriguez's HB 7 claim, and he falsely claims that the antisuit injunction is "wholly dependent on [Rodriguez's] ability to bring his HB7 claim." Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 9; *see also id.* at 10 (asserting that Coeytaux's defenses to Rodriguez's HB 7 claim are "intertwined with the anti-suit injunction claim"). But section 171A.151 makes clear that Coeytaux is entitled to an antisuit injunction *regardless* of whether he will prevail on the underlying HB 7 claim. Section 171A.151(c) says:

> Notwithstanding any other law, *in an action described by Subsection (a)(1) or (2)*, the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant in the action,

---

3.    *See* Pl.'s Rule 54(b) Mot., ECF No. 24, at 6–7; Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 11–15.

> each person in privity with the defendant, and each person with whom the defendant is in active concert or participation from:
>
> (1) bringing an action under any clawback provision against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor . . .

Tex. Health & Safety Code § 171A.151(c) (emphasis added). Subsections (a)(1) and (a)(2) of section 171A.151, in turn, refer to:

> (1) bringing or engaging in an action authorized by this chapter, including Subsection (f); [and]
>
> (2) bringing or engaging in an action that alleges a violation of Section 171A.051.

Tex. Health & Safety Code § 171A.151(a). None of this requires Rodriguez to bring a *successful* HB 7 claim as a prerequisite for obtaining an anti-clawback injunction. Section 171A.151(a)(2) shows that Rodriguez needs only to *allege* a violation of Section 171A.051 to bring this action within the scope of section 171A.151(c), and it does not matter whether that allegation turns out to be true. And section 171A.151(a)(1) shows that Rodriguez needs only to "bring" or "engage in" a qui tam action described in section 171A.101; he does not need to *succeed* on that action to invoke the protections of section 171A.151(c). An unsuccessful qui tam action is still "authorized" by HB 7 even if it is ultimately dismissed as unmeritorious.

Rodriguez's complaint alleges that Coeytaux "intends to continue mailing abortion-inducing drugs into Texas unless a federal court restrains him from doing so." First Amended Complaint, ECF No. 16, at ¶ 30. That "alleges a violation of Section 171A.051." Tex. Health & Safety Code § 171A.151(a)(2). And because this is "an action that alleges a violation of Section 171A.051," it falls squarely within the scope of

section 171A.151(a)(2) and section 171A.151(c) regardless of whether Coeytaux refutes the allegation or otherwise defeats the underlying HB 7 claim. Rodriguez is therefore entitled to a permanent anti-suit injunction "on request" even if this Court eventually dismisses or rules against him on the HB 7 claim. *See* Tex. Health & Safety Code § 171A.151(c).

Coeytaux contends that Rodriguez's HB 7 claim must survive a motion to dismiss before Rodriguez can obtain an anti-clawback injunction under section 171A.151(c). *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 9–10. But the text of section 171A.151(c) imposes no such requirement. And Coeytaux's approach would defeat the entire purpose of section 171A.151, which was designed to prevent clawback provisions in abortion-shield laws from deterring lawsuits under HB 7. If a plaintiff's HB 7 claim must survive a motion to dismiss before he can obtain an anti-clawback injunction under section 171A.151(c), then many would-be qui tam relators will become unwilling to sue because they cannot know in advance whether a district judge will allow their claims to proceed past the motion-to-dismiss stage. And any qui tam relators who sue under HB 7 will remain vulnerable to clawback lawsuits while they wait for a district court to resolve the defendant's Rule 12(b) motion, a process that sometimes lasts for over a year. That is why section 171A.151(c) mandates the issuance of a permanent anti-clawback injunction "on request," without requiring the qui tam relator to wait until the district court adjudicates a pending motion to dismiss. Coeytaux's argument would gut the protections of 171A.151(c), and it would allow the clawback provisions in abortion-shield laws to continue to impose a chilling effect on those who seek to bring lawsuits or criminal prosecutions against illegal abortion-pill distributors.

## IV.    Coeytaux Fails to Rebut Rodriguez's Arguments For Entry Of Partial Final Judgment

Rodriguez's Rule 54(b) motion argued that entry of partial final judgment is warranted for three separate and independent reasons. First, the law of Texas requires the Court to issue a permanent anti-clawback injunction on request. *See* Pl.'s Rule 54(b) Mot., ECF No. 24, at 3. Second, an immediate antisuit injunction is needed to protect Rodriguez and his lawyers from the threat of ruinous civil liability simply for presenting their claims to a federal court. *See id.* Third, Rodriguez and his lawyers need a final judgment on the clawback issue with res judicata effect to ensure that Coeytaux will be unable to file retaliatory lawsuits against them. *See id.* Coeytaux attempts to rebut these claims, but none of his arguments have merit.

### A.    The Law Of Texas Applies To This Case, And It Requires Issuance Of A Permanent Anti-Clawback Injunction "On Request"

Coeytaux does not and cannot deny that the law of Texas applies to this diversity action. *See Klaxon*, 313 U.S. at 496–97; Tex. Health & Safety Code § 171A.106(b). And the law of Texas unambiguously requires the issuance of a permanent anti-clawback injunction "on request." Tex. Health & Safety Code § 171A.151(c); *see also* pp. 4–6, *supra*. But Coeytaux tries to defeat the command of section 171A.151(c) by denying that Rodriguez has Article III standing to seek an anti-clawback injunction. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 12 ("Plaintiff lacks standing to assert . . . his claim for an anti-suit injunction."); Defs.' Mot. to Dismiss, ECF No. 30, at 19–21. Coeytaux's standing objections are meritless.[4]

---

4.    Coeytaux repeats his claim that Rodriguez must present his arguments for a permanent antisuit injunction in a separate motion. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 11. But there is nothing in Rule 54(b) that prevents

### 1.      Rodriguez Has Article III Standing To Request An Antisuit Injunction

Rodriguez is suffering Article III injury because he cannot pursue his claims against Coeytaux without exposing himself to clawback lawsuits under California's shield law. Coeytaux acknowledges that California's shield law allows him to sue Rodriguez for treble damages in response to the wrongful-death and HB 7 claims asserted in this lawsuit. Yet Coeytaux insists that Rodriguez lacks standing because Coeytaux has not yet issued an explicit threat to countersue Rodriguez under California's shield law—even though Coeytaux can file this clawback lawsuit at any moment. As Coeytaux sees matters, Rodriguez cannot have standing to seek an antisuit injunction until the clawback lawsuit that Rodriguez fears becomes "certainly impending." *See* Defs.' Mot. to Dismiss, ECF No. 30, at 21 ("[A] hypothetical future action under California law cannot confer standing because that action is not 'certainly impending.'" (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 409–10, 416 (2013)); Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 12 ("[Rodriguez] faces no certainly impending injury; [he] does not, and cannot, allege that Dr. Coeytaux has ever threatened to file a clawback suit against him.").

But Rodriguez does not need to allege or prove that a clawback lawsuit is "certainly impending." Rodriguez's Article III injury comes from the *threat* imposed by California's clawback statute, and that threat exists regardless of whether Coeytaux has imminent plans to countersue Rodriguez under California's shield law. *See First Choice Women's Resource Centers, Inc. v. Davenport*, No. 24-781, 2026 WL 1153029, at *9 (U.S. Apr. 29, 2026) ("[T]he value of a sword of Damocles is that it hangs—

Rodriguez from presenting his arguments on the merits alongside his arguments for entry of partial final judgment in a single motion. *See* pp. 2–4, *supra*.

not that it drops." (citation omitted)). The test for Article III standing in this context is no different from when plaintiffs seek antisuit injunctions against state officials who are empowered to enforce allegedly unconstitutional statutes. *See, e.g.*, *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302 (1979); *see also Ex parte Young*, 209 U.S. 123, 163 (1908) (recognizing "the right to enjoin an individual, even though a state official, from commencing suits"); John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 989 (2008) ("[*Ex parte*] *Young* was about a traditional tool of equity, the injunction to restrain proceedings at law, or anti-suit injunction."). A plaintiff who seeks an anti-suit injunction under *Ex parte Young* need not wait until a state official explicitly threatens him with criminal prosecution or civil-enforcement action, and he need not wait until a prosecution or enforcement action becomes "certainly impending." *See Doe v. Bolton*, 410 U.S. 179, 188 (1973) (allowing abortion doctors to sue state officials charged with enforcing abortion ban "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."). Instead, a plaintiff needs only to show that: (1) His fears of prosecution or enforcement action are "not imaginary or wholly speculative"; and (2) The defendant that he seeks to enjoin "has not disavowed any intention of" enforcing the disputed statute against him:

> [W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). The consumer publicity provision on its face proscribes dishonest, untruthful, and deceptive publicity, and the criminal penalty provision applies in terms to "[a]ny person . . . who violates any provision" of the Act. Moreover, the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason in

> fearing prosecution for violation of the ban on specified forms of consumer publicity. In our view, the positions of the parties are sufficiently adverse with respect to the consumer publicity provision proscribing misrepresentations to present a case or controversy within the jurisdiction of the District Court.

*Babbitt*, 442 U.S. at 302 (footnote omitted); *see also Stenberg v. Carhart*, 530 U.S. 914, 938–46 (2000) (allowing abortion providers to bring a pre-enforcement challenge to Nebraska's partial-birth abortion statute on the ground that it would prohibit the dilation and evacuation (D&E) procedure, despite the fact that the Attorney General of Nebraska had specifically disclaimed any intention to enforce the statute against doctors who perform D&E abortions, because "some present prosecutors and future Attorneys General *may choose* to pursue physicians who use D & E procedures," subjecting those physicians to the "fear" of "potential prosecution, conviction, and imprisonment" (emphasis added)).

Rodriguez has Article III standing because: (1) His fear of being sued under California's clawback statute is "not imaginary or wholly speculative"; and (2) Coeytaux "has not disavowed any intention of" suing him under the clawback provision. *Babbitt*, 442 U.S. at 302. Coeytaux acknowledges that California's shield law empowers him to countersue Rodriguez at any moment for treble damages. And Rodriguez's fears of being hit with a clawback lawsuit are hardly "imaginary" or "wholly speculative" when the entire objective of California's clawback provision is to instill these fears into litigants who assert the type of claims that Rodriguez is presenting in this litigation. In addition, Coeytaux has not unequivocally renounced the possibility of countersuing Rodriguez under California's shield law. *Compare Whole Woman's Health v. Jackson*, 595 U.S. 30, 48 (2021) (plaintiffs lacked Article III standing to seek an antisuit injunction against Mark Lee Dickson because he "supplied

sworn declarations" declaring that he "possesses no intention to file an S. B. 8 suit against them"). Coeytaux cannot perpetuate the *in terrorem* effects of California's shield law by reserving his right to file a clawback lawsuit against Rodriguez, while simultaneously insisting that Rodriguez lacks Article III standing to pursue an antisuit injunction that would remove this threat.

Coeytaux also makes a more limited argument against Article III standing, claiming that Rodriguez cannot seek to enjoin Coeytaux from filing clawback claims against Rodriguez for "[a]ttempting to enforce an order or judgment issued" in this lawsuit. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 12 (quoting Cal. Civ. Code § 1798.300(a)(2)).

But Rodriguez needs protection from clawback lawsuits when he seeks to enforce whatever partial final judgment or antisuit injunction that this Court decides to enter in response to his Rule 54(b) motion. And Rodriguez has Article III standing to request that protection now because he will seek to enforce whatever order or judgment is issued by this Court, and the Court's order or judgment will be ineffective if Rodriguez is unable to enforce it (or attempt to enforce it) without exposing himself to clawback lawsuits for treble damages under California's shield law. So if this Court decides to enter an antisuit injunction or partial final judgment, it must at the very least restrain Coeytaux from filing clawback lawsuits over Rodriguez's attempts to enforce that order or judgment. Rodriguez will suffer injury in fact if the Court omits those protections from its order or judgment, because Rodriguez will face threats of retaliatory lawsuits from Coeytaux if he takes any steps to enforce this Court's decision. Rodriguez is not required to wait until after entry of an "order or judgment," or after he attempts to enforce an "order or judgment" of this Court,

before requesting an injunction that will shield him from clawback lawsuits over his attempts to enforce the future decisions of this Court.

### 2.    The Court Has No Discretion To Withhold The Mandatory Antisuit Injunction Required By Section 171A.151(c)

Even apart from his standing objections, Coeytaux claims that this Court can deny Rodriguez's request for an antisuit injunction on the merits, even though section 171A.151(c) unequivocally commands the issuance of a permanent anti-clawback injunction "on request." *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 12–15.

Coeytaux repeats his claim that section 171A.151(c) requires Rodriguez's underlying HB 7 claim to survive a motion to dismiss before he can obtain an antisuit injunction. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 12. That is false; section 171A.151(c) mandates the issuance of a permanent anti-clawback injunction *regardless* of whether Rodriguez's qui tam claim is eventually dismissed for lack of standing or on the merits. *See* pp. 4–6, *supra*.[5]

Coeytaux's next move is to deny that state law can "obligate" a federal court to issue a permanent anti-clawback injunction on request—and that federal courts must always retain discretion to balance and weigh the four factors that they typically consider when deciding whether to award permanent injunctive relief. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 13–15. But this is a diversity case, which

---

5.    To be clear, this Court must determine that Rodriguez has Article III standing *to seek an antisuit injunction* before it can award relief under section 171A.151(c). *See* pp. 8–12, *supra*. But Rodriguez need not allege or show Article III standing on his HB 7 qui tam claim as a precondition to seeking or obtaining an anti-clawback injunction. Section 171A.151(c) protects those who bring losing HB 7 claims from clawback lawsuits no less than it protects those ultimately prevail in their qui tam actions. *See* pp. 4–6, *supra*.

means that state law and not federal law supplies the rule of decision. *See* 28 U.S.C. § 1652. And federal courts must obey statutes that require mandatory injunctions; they are not permitted to subordinate these statutory commands to a four-factor balancing test or a freewheeling "equitable" inquiry into whether an injunction should issue. There are many statutes that compel federal courts to issue automatic injunctions without any factors to balance, including the automatic stay in bankruptcy law,[6] the mandatory stay of execution in the habeas corpus statute,[7] and the statutes requiring courts to issue injunctions when the SEC seeks to restrain violations of securities laws. *See* 15 U.S.C. § 77t(b) ("[T]he Commission may, in its discretion, bring an action in any district court of the United States, or United States court of any Territory, to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond."); 15 U.S.C. § 78u(d) (similar). The federal courts obey these statutes and issue the required injunctions without pausing to consider the four-factor balancing test that ordinarily governs the decision whether to grant an injunction. A federal diversity court must likewise follow statutes such as section 171A.151(c) unless the statute is preempted by supreme federal law,[8] or unless Coeytaux can show that section 171A.151(c) is inapplicable in federal diversity litigation under the *Erie* doctrine.

Coeytaux does not contend that section 171A.151(c) is preempted by a federal statute, treaty provision, or constitutional provision. And Coeytaux makes only a cursory argument that *Erie* precludes the enforcement of section 171A.151(c)'s permanent-injunction requirement in diversity actions, citing and quoting from four

---

6.    11 U.S.C. § 362.
7.    28 U.S.C. § 2262(a).
8.    *See* U.S. Const. art. VI, cl. 2.

cases without providing any reasoning or analysis on the issue. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 13 (quoting *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105–06 (1945); *Matthews v. Rodgers*, 284 U.S. 521, 529 (1932); *Rodriguez v. Quicken Loans Inc.*, 257 F. Supp. 3d 840, 851 (S.D. Tex. 2017); and *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020)). Coeytaux presents no argument for why section 171A.151(c)'s permanent-injunction requirement fails to qualify as a substantive rule of decision under 28 U.S.C. § 1652, and he makes no attempt to analyze the mandatory permanent antisuit injunction regime under the two-part test of *Hanna v. Plumer*, 380 U.S. 460 (1965). Yet section 171A.151(c) easily qualifies as a substantive rule of decision that federal diversity courts must enforce.

Under the *Erie* doctrine, a law is substantive if it regulates "the rights themselves, the available remedies, or the rules of decision." *Berk v. Choy*, 607 U.S. 187, 199 (2026) (quoting *Shady Grove Orthopedic Associates, P. A. v. Allstate Insurance Co.*, 559 U.S. 393, 407–08 (2010) (plurality opinion)). A law is procedural if it regulates "only the process for enforcing those rights." *Id.* (quoting *Shady Grove*, 559 U.S. at 407–08 (plurality opinion)). Section 171A.151(c)'s requirement to issue a permanent anti-clawback injunction is substantive because it establishes an "right" to a particular "remedy," and it provides a "rule of decision" for determining when that remedy must issue, *i.e.*, upon the request of a litigant. Statutorily guaranteed remedies of this sort qualify as substantive under any formulation of the *Erie* test. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) ("[T]he intent of [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the fed-

eral court should be substantially the same, so far as legal rules determine the out-come of a litigation, as it would be if tried in a State court."); *Hanna v. Plumer*, 380 U.S. 460, 467 (1965) ("The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court.").

The "process" for enforcing that right, by contrast, is set forth in Rule 54(b), which authorizes courts to issue permanent injunctions as part of a partial final judg-ment, but only when the court determines that there is "no just reason for delay." Fed. R. Civ. P. 54(b). Federal law governs the process for enforcing the substantive entitlement to injunctive relief in section 171A.151(c), and federal courts must apply the "no just reason for delay" test in Rule 54(b) before deciding to incorporate a permanent anti-clawback injunction into a partial final judgment. Yet Rodriguez is honoring the role of federal procedural law by seeking this relief under Rule 54(b), and by acknowledging that this Court must expressly determine that there is "no just reason for delay" before it can enter the permanent injunction required by section 171A.151(c). *See* Pl.'s Rule 54(b) Mot., ECF No. 24, at 4–11.

Section 171a.151(c)'s requirement to issue a permanent anti-clawback injunction also qualifies as substantive under the two-part test of *Hanna v. Plumer*, 380 U.S. 460 (1965), which requires courts to consider "the twin aims of the *Erie* rule: dis-couragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468. Allowing federal diversity courts to disregard section 171a.151(c)'s antisuit-injunction requirement will encourage forum-shopping, as plaintiffs will be-come more likely to pursue their HB 7 claims in state courts that enforce the protec-tions of section 171a.151(c), while defendants become more inclined to remove cases

to federal court where the mandates of section 171a.151(c) can be disregarded. It will also lead to inequitable administration of the laws, as HB 7 plaintiffs who sue in state court will obtain a guaranteed anti-clawback injunction upon request, while those who seek relief in federal diversity courts will be unable to claim the protections of section 171a.151(c) and cannot litigate their claims without exposing themselves to clawback liability under blue-state shield laws. So the permanent antisuit injunction requirement in section 171a.151(c) must be regarded as a substantive entitlement rather than a procedural rule for *Erie* purposes, and Coeytaux presents no real argument to the contrary.

All Coeytaux has to offer on the *Erie* issue are citations and quotes from four cases, but none of these cases support Coeytaux's position. *See* Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 13 (quoting *York*, 326 U.S. at 105–06; *Matthews*, 284 U.S. at 529; *Rodriguez*, 257 F. Supp. 3d at 851; and *Sonner*, 971 F.3d at 843–44). *York* does not prohibit federal diversity courts from enforcing state statutes that mandate the issuance of antisuit injunctions. It merely prohibits federal diversity courts from awarding equitable relief that: (1) falls outside "the traditional scope of equity as historically evolved in the English Court of Chancery"; (2) enjoins a defendant when "a plain, adequate and complete remedy at law" remains available; (3) violates any of the "explicit Congressional curtailment of equity powers," such as the Norris–LaGuardia Act; and (4) evades "the constitutional right to trial by jury." *York*, 326 U.S. 105. The Court explained:

> Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery; a plain, adequate and complete remedy at law must be wanting; explicit Congressional curtailment of equity powers must be respected; the constitutional right to

trial by jury cannot be evaded. That a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts.

*Id.* at 105–06 (citations omitted). None of those situations apply here. The antisuit injunction was an established equitable remedy in the English Court of Chancery;[9] there is no adequate remedy at law that will remove the chilling effect imposed by California's clawback law; there is no congressional enactment prohibiting the anti-clawback injunction that Rodriguez seeks; and the requested antisuit injunction will not violate anyone's Seventh Amendment right to a jury trial. Coeytaux does not even attempt to argue that any of these situations apply except to claim that section 171A.151(f), which authorizes Rodriguez to countersue Coeytaux for treble damages if Coeytaux sues Rodriguez under California's clawback provision, provides Rodriguez with "an adequate remedy at law." Defs.' Opp. to Rule 54(b) Motion, ECF No. 32, at 15. That is untenable because: (1) There is no guarantee that courts will enforce the clawback regime in section 171A.151(f); (2) Coeytaux could seek an antisuit injunction that restrains Rodriguez from countersuing him under section 171A.151(f); and (3) Rodriguez is still facing irreparable harm because neither he nor his lawyer can vigorously pursue their claims in this litigation without increasing their exposure to liability and treble damages under California's shield law. The chilling effect that California's clawback statute imposes on this litigation will remain—even if section 171A.151(f) eventually allows Rodriguez and his lawyer to recover the damages that they must pay in a subsequent clawback lawsuit, and even if section 171A.151(f) deters Coeytaux from countersuing them in the first place.

---

9.    *See* John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 989 (2008) (explaining how the "anti-suit injunction" was "a traditional tool of equity").

Coeytaux also cites *Matthews v. Rodgers*, 284 U.S. 521, 529 (1932), but *Matthews* is a federal-question case and it predates *Erie*—so it has nothing to say on whether a federal diversity court is required to enforce section 171A.151(c)'s permanent-injunction requirement as a substantive rule of decision. Coeytaux quotes from *Rodriguez v. Quicken Loans Inc.*, 257 F. Supp. 3d 840 (S.D. Tex. 2017), which says that "state law does not govern the scope of the equity powers of the federal court." *Id.* at 851. But a decision to enforce section 171A.151(c) will not expand or contract the *scope* of a federal court's equity powers, as the issuance of antisuit injunctions has long been within the powers of federal equity courts. *See, e.g.*, *Ex parte Young*, 209 U.S. 123, 163 (1908). It is not as if section 171A.151(c) is mandating a universal injunction that would restrain Coeytaux from filing clawback lawsuits against anyone, or some other type of equitable remedy that falls outside the powers conferred by the Judiciary Act of 1789. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–42 (2025) (holding that "the statutory grant" of equitable powers in the Judiciary Act of 1789 "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." (quoting *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). Finally, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), holds only that federal diversity courts cannot issue equitable relief when an adequate remedy at law remains available. *Id.* at 843–44. That is no different from the holding of *York* in this regard, and neither *York* nor *Sonner* can defeat the enforcement of section 171A.151(c) because there is no available legal remedy that will remove the chilling effect imposed by California's clawback regime. *See* p. 17, *supra*.

      **3.**      **Even If This Court Could Disregard The Command Of Section 171A.151(c), Rodriguez Remains Entitled To A Permanent Anti-Clawback Injunction Under The Four-Part Test For Permanent Injunctive Relief**

If this Court decides that the mandatory permanent injunction in section 171A.151(c) fails to qualify as a substantive rule of decision under the *Erie* doctrine, then Rodriguez is still entitled to a permanent injunction under the traditional four-part test for permanent injunctive relief. A party seeking a permanent injunction must show:

> (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury out-weighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.").

*Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). Rodriguez's request for a permanent injunction comfortably meets each of these four requirements.

**a. Success On The Merits**. Rodriguez will succeed on the merits of his anti-clawback claim because the law of Texas applies to this action and it unequivocally protects Rodriguez from the threat of clawback lawsuits. See Tex. Health & Safety Code § 171A.151. The private civil-enforcement regime established in HB 7 would be ineffective if qui tam relators were unable to secure an antisuit injunction that shields them from retaliatory clawback lawsuits. Coeytaux does not even attempt to argue that the law of Texas requires Rodriguez (or other HB 7 plaintiffs) to litigate their HB 7 claims while leaving themselves sitting targets for revenge lawsuits authorized by out-of-state shield laws.

Coeytaux claims that Rodriguez cannot succeed on the merits of his antisuit-injunction claim because he lacks standing to assert his separate HB 7 qui tam action and cannot prevail on the merits of that claim. *See* Defs.' Opp. to Mot. for Prelim.

Inj., ECF No. 31, at 24–25. But Rodriguez does not need to show standing or likely success with respect to his underlying HB 7 claim, and Rodriguez can seek and obtain an antisuit injunction regardless of whether his qui tam action succeeds or fails. *See* pp. 4–6, *supra*. Coeytaux has also argued that Rodriguez lacks Article III standing to seek an antisuit injunction, but his standing objections are meritless as previously discussed. *See* pp. 8–12, *supra*.

**b. Irreparable Harm**. Rodriguez will suffer irreparable harm absent a permanent injunction because both he and his lawyer will be forced to risk ruinous civil liability simply for presenting their claims to a federal court. *See* Pl.'s Rule 54(b) Mot., ECF No. 24, at 8–9; Pl.'s Mot. for Prelim. Inj., ECF No. 17, at 6–7. Coeytaux is wrong to claim that section 171A.151(f)'s clawback regime provides an adequate remedy at law for this injury,[10] because a subsequent lawsuit under section 171A.151(f) will not prevent California's shield law from chilling Rodriguez and his lawyers from vigorously pursuing their claims in this litigation. *See* p. 17, *supra*. What's more, a clawback remedy under section 171A.151(f) becomes available only if Coeytaux decides to countersue Rodriguez under California's shield law. Yet Rodriguez will suffer irreparable injury in this litigation regardless of whether Coeytaux eventually brings a clawback lawsuit, because the *threat* imposed by California's shield law deters vigorous advocacy even if Coeytaux declines to retaliate by countersuing Rodriguez. *See First Choice*, 2026 WL 1153029, at *9 ("[T]he value of a sword of Damocles is that it hangs—not that it drops." (citation omitted)).

Coeytaux does not deny that Rodriguez and his attorney will have to litigate his claims under that threat if an immediate injunction is denied. Yet Coeytaux denies

---

10.   *See* Defs.' Opp. to Mot. for Prelim. Inj., ECF No. 31, at 29.

that this constitutes "irreparable harm" because he claims that the possibility that he will eventually sue them in a clawback proceeding is "speculative." *See* Defs.' Opp. to Mot. for Prelim. Inj., ECF No. 31, at 26. But it is the *threat* imposed by California's clawback statute that creates the "irreparable harm," not the eventual clawback lawsuit that might (or might not) be filed against those who engage in this litigation. *See* p. 20, *supra.* And this threat has (so far) made it impossible for Mr. Rodriguez's attorney to recruit additional counsel to assist him in this lawsuit. *See* Mitchell Decl. ¶ 4 ("I have been unable to recruit or persuade co-counsel to represent Mr. Rodriguez alongside me in this litigation.") (attached as Exhibit 1).

Coeytaux also tries to deny irreparable harm by observing that Rodriguez and his lawyer filed suit before HB 7 took effect on December 4, 2025, and by claiming that the threats imposed by California's shield law are "self-inflicted" because Rodriguez willingly chose to sue Coeytaux in the teeth of California's clawback regime. *See* Defs.' Opp. to Mot. for Prelim. Inj., ECF No. 31, at 27–29. That is a non sequitur. California's shield law forces Rodriguez (and other victims of illegal abortions) to choose between abandoning their claims against illegal abortion providers or litigating those claims under the cloud of potential clawback lawsuits. That Rodriguez was willing to sue Coeytaux in spite of those threats does not mean that the harms imposed by California's shield law are "self-inflicted." Rodriguez's situation is no different from a person who engages in civil disobedience and then seeks to enjoin the state from enforcing penalties authorized by the disputed law or policy. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) (seeking injunctive relief and nominal damages after the plaintiffs willingly violated school policy prohibiting the wearing of black armbands and were suspended from school as

result). No court would hold that these threatened penalties (or the imposition of those penalties) are "self-inflicted" injuries simply because the plaintiff acted in a manner that exposed himself to the consequences of a challenged law. The source of the irreparable harm in these situations comes from the law itself, which forces individuals to choose between abandoning their rights or exposing themselves to irreparable harms as the consequence for asserting those rights. Rodriguez did not participate in the enactment of California's clawback regime, so the harms that he is facing on account of that law cannot be "self-inflicted."

c. **Balance of Equities**. Coeytaux complains that a permanent injunction would harm him by taking away his right to countersue Rodriguez and his lawyer under California's shield law. *See* Defs.' Opp. to Mot. for Prelim. Inj., ECF No. 31, at 31. But Coeytaux presents no argument for why the *balance* of equities should tip in his favor. A permanent anti-clawback will assuredly deprive Coeytaux of his ability to file retaliatory lawsuits for treble damages against Rodriguez or anyone else who "engages" in this litigation. But this harm to Coeytaux is trivial because it is unlikely that courts will enforce a clawback statute that authorizes punitive civil actions to be filed against litigants and their lawyers merely for presenting their claims in another state or federal court. Coeytaux also insists that is "purely speculative"[11] that he would ever file a clawback lawsuit in response to this litigation, which means that his claim of harm from the requested permanent injunction is equally speculative.

The harm to Rodriguez from denying a permanent injunction is far more serious. Both Rodriguez and his attorney would be forced to litigate this case under the cloud of clawback liability, which will only increase as they continue to press their

---

11.    Def.'s Mot. to Dismiss, ECF No. 30, at 8; *see also id.* at 19–21.

claims. Rodriguez's lawyer has been unable to recruit co-counsel to join him in this case because they are unwilling to risk clawback liability,[12] which will leave Rodriguez's legal team badly outnumbered unless this Court permanently enjoins Coeytaux from filing revenge lawsuit against Rodriguez or his attorneys. One of the objectives of California's clawback law is to deter lawyers from representing clients who assert claims against California abortion providers, and the law is already having its desired effect.

**d. Public Interest**. California's shield law enables abortion providers to violate the abortion laws of other states by assisting illegal abortions performed in those states. It also empowering abortion providers to file revenge lawsuits for treble damages against anyone who attempts to hold them accountable for their admitted violations of other states' abortion laws. The public interest is not served by clawback regimes that facilitate criminal activities in other states and allow lawbreakers to escape accountability for their decisions to violate another state's laws. Nor is it served by laws that expose lawyers to punitive sanctions for representing clients in civil litigation. Coeytaux does not even attempt to defend the scope of clawback liability imposed by California's shield law, and he presents no argument for how these features of California's clawback regime advance the public interest.

**B.    A Permanent Injunction Under Rule 54(b) Is Needed Even If A Party Appeals The Ruling On The Motion For Preliminary Injunction**

Coeytaux claims that entry of partial final judgment is unnecessary to authorize an immediate appeal of the clawback issue because the Court's ruling on Rodriguez's motion for preliminary injunction can be appealed under 28 U.S.C. § 1292(a)(1). *See*

---

12.    *See* Mitchell Decl. ¶¶ 4–7 (attached as Exhibit 1).

Defs.' Opp. to Mot. for Prelim. Inj., ECF No. 32, at 15. But a preliminary injunction will not shield Rodriguez or his lawyers from clawback liability because it will expire as soon the lawsuit ends, leaving Coeytaux free to file retaliatory lawsuits against Rodriguez or anyone else who "engages" in this litigation. *See Lake v. HealthAlliance Hospital Broadway Campus*, 738 F. Supp. 3d 208, 220 n.14 (N.D.N.Y. 2024); *Edgar v. MITE Corp.*, 457 U.S. 624, 648–53 (1982) (Stevens, J., concurring in part and concurring in the judgment). There is also no guarantee that Coeytaux would appeal a hypothetical order from this Court granting Rodriguez's motion for preliminary injunction, because Coeytaux might want to prevent the Fifth Circuit from affirming and establishing a circuit-wide precedent on the issue. A refusal to appeal the preliminary injunction would preserve the *in terrorem* effects of the clawback regime, because a preliminary injunction merely postpones the initiation of clawback lawsuits until after the litigation concludes, and there is no guarantee that this Court (or any appellate court) would award Rodriguez a permanent anti-clawback injunction at the end of the lawsuit. But if Coeytaux refuses to appeal a Rule 54(b) partial judgment that permanently enjoins him from countersuing Rodriguez under California's shield law, then the judgment will have res judicata effect—and it will have res judicata effect at the conclusion of any appeal that might be taken.

Rodriguez needs a final judgment with res judicata effect on the clawback issue—and he needs that judgment now so that he can know whether he will subject himself to ruinous liability if he continues to proceed with this litigation. This matter should be finally and definitively resolved at the outset of the lawsuit, so that Rodriguez and his lawyers can provide the zealous advocacy that the Court needs to resolve the remaining issues in this case.

## CONCLUSION

The motion for entry of final judgment under Rule 54(b) should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
  *Attorney-in-Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 15, 2026                          *Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

I certify that this brief contains 7,475 words.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 15, 2026, I served this document through CM/ECF upon:

CHRISTOPHER M. ODELL
LEAH SCHULTZ
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)
christopher.odell@arnoldporter.com
leah.schultz@arnoldporter.com

MARC HEARRON
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3600 (phone)
(917) 637-3666 (fax)
mhearron@reprorights.org

JENNA HUDSON
Center for Reproductive Rights
1600 K Street NW
Washington, DC 20002
(202) 628-0286 (phone)
jhudson@reprorights.org

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Plaintiff*