UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

**Jerry Rodriguez** and **Isabella Irene Rodriguez**,

        Plaintiffs,

v.

**Remy Coeytaux**,

        Defendant.

Case No. 3:25-cv-225

| | |
|---|---|
| Formatted: Font: Not Bold | |

## SECOND AMENDED COMPLAINT

| |
|---|
| Deleted: FIRST |

Under the law of Texas, a person who aids or abets another person's self-managed abortion commits the crime of murder and can be sued for wrongful death. *See* Texas Penal Code § 1.07; *id.* at § 19.02; *id.* at § 19.06 (murder statute); Tex. Civ. Prac. & Rem. Code § 71.001 *et seq.* (wrongful-death statute). It is also a state jail felony for anyone other than a Texas-licensed physician to provide an abortion-inducing drug for the purpose of inducing an abortion. *See* Tex. Health & Safety Code § 171.063(a); Tex. Health & Safety Code § 171.065(a).

In violation of these and many other laws, defendant Remy Coeytaux mailed abortion-inducing drugs into Texas that were used to murder Jerry Rodriguez's unborn child. Mr. Rodriguez sues to recover damages from Coeytaux for this wrongful death. Mr. Rodriguez and his daughter, Isabella Irene Rodriguez, also seek an injunction as qui tam relators to stop Coeytaux from distributing abortion-inducing drugs in violation of Texas law, as well as statutory damages for Coeytaux's violations of HB 7. *See* Tex. Health & Safety Code § 171A.101(a); Tex. Health & Safety Code § 171A.104(a)(1)–(3).

| |
|---|
| Deleted: s |

| |
|---|
| Deleted: . |

| |
|---|
| Deleted: FIRST |

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367, as the parties are diverse and the amount in controversy exceeds $75,000.00.

2. The Court has personal jurisdiction over defendant Coeytaux because he purposefully and knowingly mailed abortion-inducing drugs into Texas in violation of state law, and Mr. Rodriguez's claim arises out of those minimum contacts with the forum state.

3. Venue is proper in this district and division because a substantial part of the events giving rise to the claims occurred in the Galveston Division of the Southern District of Texas. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff Jerry Rodriguez is a citizen of Texas.

5. Plaintiff Isabella Irene Rodriguez is a citizen of Texas.

6. Defendant Remy Coeytaux is a citizen of California, where he operates a solo medical practice.

## STATEMENT OF FACTS

7. Plaintiff Jerry Rodriguez began dating Kendal Garza in June of 2024.

8. In July of 2024, Kendal became pregnant with Mr. Rodriguez's child.

9. Although Kendal was happy about the pregnancy and told Mr. Rodrigez that she planned to give birth, her estranged husband (Adam Garza) was displeased and wanted the baby murdered. Kendal had legally separated from Adam years before she started dating Mr. Rodriguez but had not yet divorced him.

10. On September 16, 2024, at 9:10 P.M. central time, Adam Garza ordered abortion-inducing drugs online from Coeytaux with the intent of using them to murder Mr. Rodriguez's unborn child. A Venmo receipt confirming Adam's purchase of the drugs from Coeytaux is attached as Exhibit 1. The receipt indicates that the drugs

SECOND AMENDED COMPLAINT                                    Page 2 of 14

Formatted: Font color: Black

Deleted: FIRST

were purchased for $150.00 from "Remy Coeytaux MD PC" and describes the purchase as "'Aed axes Kendal Garza.'" The first two words ("Aed axes") are homophones for "Aid Access," an organization that illegally ships abortion-inducing drugs into jurisdictions where abortion has been outlawed. Payment was made with a Visa Debit card whose last four digits are 1012. The payment was remitted to a Venmo account with the handle "@RemyCoeytaux."

11.  After receiving this order, Coeytaux shipped the abortion-inducing drugs to Adam Garza's house in Galveston County, Texas.

12.  On September 19, 2024, Kendal Garza used the drugs that Adam had purchased from Coeytaux to kill the unborn child that she conceived with Mr. Rodriguez. Kendal told Mr. Rodriguez that Adam Garza provided her with the abortion drugs, and that Adam pressured her to kill the baby with the drugs obtained from Coeytaux. Kendal ingested the abortion-inducing drugs and killed Mr. Rodriguez's unborn child at her mother's house in Galveston County. Kendal was more than 10 weeks pregnant when she took the pills.

13.  In late October 2024, Kendal became pregnant for a second time with Mr. Rodriguez's child. Kendal was again happy about the pregnancy and told Mr. Rodrigez that she planned to give birth to their child, a son. On January 18, 2025, Kendal and Mr. Rodriguez together went to a doctor's appointment and were provided with sonograms of the baby boy, which are attached as Exhibit 2.

14.  But later in January Kendal killed Mr. Rodriguez's unborn son with abortion pills that were illegally obtained and provided by Adam Garza. This time Kendal took the abortion-inducing drugs at Adam's house in Galveston County. Kendal proceeded with this self-managed abortion even though she was nearly three months pregnant and even though Mr. Rodriguez pleaded with her not to do it. After the abortion, Kendal texted Mr. Rodriguez and told him that she had to cut the baby boy's umbilical cord and bury him (although she did not say where).

SECOND AMENDED COMPLAINT                                                Page 3 of 14

**Deleted:** FIRST

### CLAIM FOR RELIEF NO. 1 — WRONGFUL DEATH

15.  The wrongful-death statute allows surviving parents to sue those who cause the death of an unborn child by a wrongful act, neglect, carelessness, unskillfulness, or default. *See* Tex. Civ. Prac. & Rem. Code § 71.002(b) ("A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."); Tex. Civ. Prac. & Rem. Code § 71.001(4) ("'Individual' includes an unborn child at every stage of gestation from fertilization until birth.").

16.  Defendant Coeytaux caused the death of Mr. Rodriguez's unborn child through his wrongful acts, which violated the law in each of the following respects:

17.  Section 171.063(a)(1) of the Texas Health and Safety Code prohibits anyone other than a Texas-licensed physician from providing abortion-inducing drugs to a pregnant woman for the purpose of inducing an abortion. *See* Tex. Health & Safety Code § 171.063(a) ("A person may not knowingly provide an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion in the pregnant woman or enabling another person to induce an abortion in the pregnant woman unless: (1) the person who provides the abortion-inducing drug is a physician"). A violation of section 171.063(a)(1) is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux is not a Texas-licensed physician, so he violated section 171.063(a)(1) by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.063(a)(1) because Coeytaux knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

18.  Section 171.063(a)(2) of the Texas Health and Safety Code prohibits individuals from providing abortion-inducing drugs to a pregnant woman for the purpose of abortion unless they comply with the protocols in subchapter D of chapter 171 of

**Deleted:** FIRST

the Texas Health and Safety Code. *See* Tex. Health & Safety Code § 171.063(a) ("A person may not knowingly provide an abortion-inducing drug to a pregnant woman for the purpose of inducing an abortion in the pregnant woman or enabling another person to induce an abortion in the pregnant woman unless: . . . (2) the provision of the abortion-inducing drug satisfies the protocol authorized by this subchapter"). A violation of section 171.063(a)(2) is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux violated section 171.063(a)(2) by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.063(a)(2) because he knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

19. Section 171.0631 of the Texas Health and Safety Code prohibits any person from providing abortion-inducing drugs to a pregnant woman without complying with the informed-consent requirements of subchapter B of chapter 171 of the Texas Health and Safety Code, which include a mandatory ultrasound. *See* Tex. Health & Safety Code § 171.0631 ("A person may not provide an abortion-inducing drug to a pregnant woman without satisfying the applicable informed consent requirements of Subchapter B."). A violation of section 171.0631 is a state jail felony. *See* Tex. Health & Safety Code § 171.065(a). Coeytaux violated section 171.0631 by knowingly sending abortion-inducing drugs into Texas, which he knew would be provided to a pregnant woman for the purpose of inducing an abortion. Coeytaux is also criminally responsible for Adam Garza's violations of section 171.0631 because he knowingly aided Adam's provision of abortion-inducing drugs to a pregnant woman. *See* Tex. Penal Code § 7.02.

20. Section 171.003 of the Texas Health and Safety Code prohibits anyone other than a Texas-licensed physician to perform abortions. *See* Tex. Health & Safety Code

**Deleted:** FIRST

§ 171.003 ("An abortion may be performed only by a physician licensed to practice medicine in this state."). Coeytaux is not a Texas-licensed physician, and he performed an abortion in violation of section 171.003 by arranging for the delivery and provision of the abortion pills that Kendal Garza used in her self-managed abortion. Coeytaux further violated section 171.003 by knowingly aiding an illegal self-managed abortion in Texas. *See* Tex. Penal Code § 7.02.

21. Section 171.011 of the Texas Health and Safety Code prohibits any person from performing an abortion without complying with the informed-consent requirements of subchapter B of chapter 171 of the Texas Health and Safety Code, which include a mandatory ultrasound. *See* Tex. Health & Safety Code § 171.011 ("A person may not perform an abortion without the voluntary and informed consent of the woman on whom the abortion is to be performed."). Coeytaux performed an abortion in violation of section 171.011 by arranging for the delivery and provision of the abortion pills that Kendal Garza used in her self-managed abortion, which did not comply with the mandatory ultrasound and other statutory informed-consent requirements in Texas law. Coeytaux has further violated section 171.011 by aiding an illegal self-managed abortion in Texas without complying with the mandatory ultrasound and other statutory informed-consent requirements.

22. Chapter 245 of the Texas Health and Safety Code requires abortions in Texas to be performed in licensed abortion facilities (subject to exceptions not applicable here). *See* Tex. Health & Safety Code § 245.002(2) ("'Abortion facility' means a place where abortions are performed."); *id.* at § 245.003(a) ("Except as provided by Section 245.004, a person may not establish or operate an abortion facility in this state without an appropriate license issued under this chapter."). Coeytaux violated chapter 245 of the Texas Health and Safety Code by performing and assisting an abortion that took place outside a licensed abortion facility.

23. Federal law imposes criminal liability on any person who:

Deleted: FIRST

    a.  Knowingly uses the mails for the mailing, carriage, or delivery of abortion-inducing drugs;

    b.  Knowingly uses any express company, common carrier, or interactive computer service for carriage of abortion-inducing drugs in interstate or foreign commerce; or

    c.  Knowingly takes or receives abortion-inducing drugs from an express company, a common carrier, or an interactive computer service.

18 U.S.C. §§ 1461–1462. Coeytaux violated these federal criminal laws by sending abortion-inducing drugs into Texas with the intent of aiding an illegal abortion.

24. Articles 4512.1–4512.6 of the Texas Revised Civil Statutes make abortion a felony criminal offense unless the life of the mother is endangered. Violations of articles 4512.1–4512.6 are punishable by two to five years imprisonment. Coeytaux violated articles 4512.1–4512.6 by performing or assisting an abortion in Texas that was not needed to save the life of the mother.

25. Section 170A.002 of the Texas Health and Safety Code also makes abortion a felony criminal offense unless the abortion is performed to avert the risk of death or a serious risk of substantial impairment of a major bodily function. *See* Tex. Health & Safety Code § 170A.002. Violations of section 170A.002 are punishable by five to 99 years imprisonment. *See* Tex. Penal Code § 12.32. Coeytaux violated section 170A.002 by performing or assisting an abortion in Texas that was not needed to avert the risk of death or a serious risk of substantial impairment of a major bodily function.

26. Aiding or abetting another person's self-managed abortion in Texas is an act of murder. *See* Texas Penal Code § 1.07; *id*. at § 19.02; *id*. at § 19.06 (murder statute). Although Kendal Garza cannot be charged with murder for her role in killing her unborn child,[1] her immunity does not shield Coeytaux from liability for aiding or

---

1.  *See* Texas Penal Code § 19.06 ("This chapter does not apply to the death of an unborn child if the conduct charged is: (1) conduct committed by the mother of the unborn child").

**Deleted:** FIRST

abetting or directly participating in the murder. *See* Tex. Penal Code § 7.03 ("In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense: (1) that the actor belongs to a class of persons that by definition of the offense is legally incapable of committing the offense in an individual capacity; or (2) that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution."). Coeytaux directly committed murder under section 19.02(b)(1) because he "intentionally and knowingly caused the death" of Mr. Rodriguez's unborn child by delivering abortion pills that he knew would be used in an illegal self-managed abortion. *See* Tex. Penal Code § 19.02(b) ("A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual"). And Coeytaux directly committed murder under section 19.02(b)(2) because he "intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death" of Mr. Rodriguez's unborn child. *See* Tex. Penal Code § 19.02(b) ("A person commits an offense if he: . . . (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual").

27. Coeytaux is also guilty of felony murder under section 19.02(b)(3) of the Texas Penal Code. Coeytaux's shipment of abortion pills to Adam Garza was a felony. *See* Tex. Health & Safety Code § 171.063(a); Tex. Health & Safety Code § 171.065(a); 18 U.S.C. §§ 1461–1462. Coeytaux also committed an act "clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b)(3); Texas Penal Code § 1.07 (defining "individual" to include "an unborn child at every stage of gestation from fertilization until birth."). Coeytaux therefore committed felony murder under section 19.02(b)(3).

Deleted: FIRST

28. The manufacturers and distributors of the abortion pills that Kendal used are jointly and severally liable for the wrongful death of Mr. Rodriguez's unborn child, and they will be added as defendants once identified. The manufacturers and distributors caused the death of Mr. Rodriguez's unborn child through a "wrongful act" because they violated 18 U.S.C. §§ 1461–1462, which imposes federal criminal liability on anyone who knowingly sends or receives abortion pills through the mail or by using any express company, common carrier, or interactive computer service.

29. None of the exceptions in Texas's wrongful-death statute shield the defendants (or the manufacturers and distributors of the abortion pills) from liability. Sections 71.003(c)(2) and (c)(4) of the Texas Civil Practice and Remedies Code are inapplicable because assisting a self-managed abortion is not a "lawful medical procedure," nor is it a "lawful medical or health care practice or procedure." Section 71.003(c)(3) is inapplicable because the abortion pills were not dispensed or administered "in accordance with law." Coeytaux is therefore liable under section 71.003 and must pay damages to Mr. Rodriguez for murdering his unborn child.

30. Mr. Rodriguez seeks damages in excess of $75,000.00, the minimum amount in controversy required for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

### CLAIM FOR RELIEF NO. 2 — INJUNCTION UNDER HB 7

31. Coeytaux continues to mail abortion-inducing drugs into Texas in violation of Texas law, and Coeytaux intends to continue mailing abortion-inducing drugs into Texas unless a federal court restrains him from doing so.

32. Texas's HB 7, which took effect on December 4, 2025, authorizes the plaintiffs to sue as qui tam relators and seek an injunction against Coeytaux or anyone else who intends to mail, transport, deliver, prescribe, or provide an abortion-inducing drug to any person or location in Texas. *See* Tex. Health & Safety Code

SECOND AMENDED COMPLAINT                                                Page 9 of 14

Deleted: Mr. Rodriguez

Deleted: a

Deleted: FIRST

§ 171A.051(a)(2); *id.* at § 171A.101(a)(2); *id.* at 171A.104(a)(1) (attached as Exhibit 4).

33.  Coeytaux has mailed abortion pills into Texas many times since HB 7 took effect on December 4, 2025, in violation of HB 7 and many other Texas laws. The plaintiffs are aware of at least two such occasions in which Coeytaux has mailed abortion pills into Texas in violation of HB 7 after the law took effect on December 4, 2025. Coeytaux intends to continue mailing abortion-inducing drugs into Texas in violation of HB 7 unless a federal court enjoins him from violating HB 7. *See* Tex. Health & Safety Code § 171A.104(a)(1) (authorizing injunctive relief to restrain Coeytaux from violating HB 7).

34.  The plaintiffs have Article III standing to sue Coeytaux as an assignee of the state's claim for relief, regardless of whether the plaintiffs are suffering injury in fact on account of Coeytaux's actions or intended actions. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000); Tex. Health & Safety Code § 171A.101 (attached as Exhibit 4).

35.  The plaintiffs will seek to recover at least $100,000.00 for each of Coeytaux's violations of HB 7. *See* Tex. Health & Safety Code § 171A.104(a)(2) (attached as Exhibit 4).

## CLAIM FOR RELIEF NO. 3 — ANTI-CLAWBACK INJUNCTION

36.  California law allows Coeytaux to file revenge lawsuits against any person who files or prosecutes an action against him over his murder of Mr. Rodriguez's unborn child or his illegal abortion-pill shipments into Texas or other states. *See* Cal. Civil Code § 1798.300 *et seq.* (attached as Exhibit 3).

37.  This "clawback" provision of California's abortion-shield law allows abortion providers such as Coeytaux to file these retaliatory lawsuits even when they are sued

**Deleted:** Mr. Rodriguez

**Deleted:** s

**Deleted:** Mr. Rodriguez is

**Deleted:** If discovery reveals that Coeytaux has mailed, transported, delivered, prescribed, or provided any abortion-inducing drug to any person or location in Texas since HB 7 took effect on December 4, 2025, then Mr. Rodriguez …

**Deleted:** those

**Deleted:** statutory

**Deleted:** FIRST

in a state or federal court outside California—and even when they are sued for conduct that indisputably violates the laws of other states or the federal laws that criminalize abortion-pill shipments. *See* Cal. Civil Code § 1798.300(a)(1) (defining "abusive litigation" to include "[f]iling or prosecuting an action *in a state other than California* where liability, in whole or part, directly or indirectly, is based on a legally protected health care activity that was legal in the state in which it occurred. . . ." (emphasis added)) (attached as Exhibit 3); *see also* Cal. Civil Code § 1798.300(a)(2) ("An action shall be considered to be based on conduct that was legal in the state in which it occurred if *a part of* an act or omission involved in the course of conduct that forms the basis for liability in the action occurs or is initiated in a state in which the health care was legal" (emphasis added)) (attached as Exhibit 3).

38. A revenge lawsuit can be filed against any person who "engages or attempts to engage" in litigation over the murders or illegal abortion-pill shipments that Coeytaux has committed in violation of both state and federal law. *See* Cal. Civil Code § 1798.303. If Coeytaux were to sue Rodriguez under this clawback provision, California law would entitle Coeytaux to recover three times the amount of any judgment that Rodriguez obtains against him in this lawsuit—plus three times the amount of any "expenses, costs, or reasonable attorney's fees" or other "actual damages" that Coeytaux incurs on account of that lawsuit:

> If the court finds for the petitioner in an action authorized by Section 1798.303, recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation.

Cal. Civil Code § 1798.305 (attached as Exhibit 3).

39. The law of Texas applies to this case, and it applies to any action that might be brought against a person for bringing or engaging in this lawsuit. *See* Tex. Health

**Deleted:** FIRST

& Safety Code § 171A.151(b) (attached as Exhibit 4); *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496–97 (1941) (federal diversity courts must apply the choice-of-law rules of the forum state).

40.  The law of Texas requires this Court to issue an immediate anti-suit injunction that will restrain Coeytaux, and every person in privity or in active concert or participation with him, from suing Jerry Rodriguez, Isabella Irene Rodriguez, their attorneys, or any person  providing legal representation or any type of assistance to Jerry Rodriguez or Isabella Irene Rodriguez, under California's clawback law or any other type of clawback provision. *See* Tex. Health & Safety Code § 171A.151(c).

41.  The All Writs Act also authorizes this Court to enjoin Coeytaux from filing clawback lawsuits against Jerry Rodriguez, Isabella Irene Rodriguez, their attorneys, or any person providing legal representation or any type of assistance to Jerry Rodriguez or Isabella Irene Rodriguez, as this anti-suit injunction is necessary and appropriate in aid of this Court's jurisdictions and agreeable to the usages and principles of law. *See* 28 U.S.C. § 1651(a); *SAS Institute Inc. v. World Programming Limited*, 952 F.3d 513 (4th Cir. 2020) (invoking the All Writs Act to enjoin a defendant from pursuing clawback remedies that were authorized by the laws of a foreign county).

### DEMAND FOR RELIEF

42.  The plaintiffs respectfully request that the court:

a.    order Coeytaux to pay nominal, compensatory, and punitive damages for the wrongful death of Mr. Rodriguez's unborn child;

b.    order Coeytaux to pay at least $100,000.00 for his violations of HB 7;

c.    permanently enjoin Coeytaux from distributing, mailing, transporting, delivering, prescribing, or providing abortion-inducing drugs in any manner to or from any person or location in Texas;

Deleted: Mr.

Deleted: his

Deleted: Mr. Rodriguez

Deleted: Mr.

Deleted: his

Deleted: Mr. Rodriguez

Deleted: Mr. Rodriguez

Deleted: s

Deleted: b

Deleted: FIRST

d.    issue preliminary and permanent injunctions that restrain Coeytaux, as well as every person in privity or in active concert or participation with him, from suing Jerry Rodriguez, Isabella Irene Rodriguez, their attorneys, or any person providing legal representation or any type of assistance to Jerry Rodriguez or Isabella Irene Rodriguez, under California's clawback law or any other type of clawback provision;

e.    award the plaintiffs court costs and attorneys' fees; and

f.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Attorney in Charge*
Texas Bar No. 24075463
S.D. Tex. Bar No. 1133287
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: June 8, 2026                  *Counsel for Plaintiffs*

SECOND AMENDED COMPLAINT                                    Page 13 of 14

Deleted: c

Deleted: Mr.

Deleted: his

Deleted: Mr. Rodriguez

Deleted: Mr. Rodriguez

Deleted: June 8, 2026

Deleted:

Formatted: Font: 12 pt, Do not check spelling or grammar

Deleted: FIRST

## CERTIFICATE OR SERVICE

I certify that on June 8, 2026, I served this document through CM/ECF upon:

CHRISTOPHER M. ODELL
LEAH SCHULTZ
Arnold & Porter Kaye Scholer LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2755
(713) 576-2400 (phone)
(713) 576-2499 (fax)
christopher.odell@arnoldporter.com
leah.schultz@arnoldporter.com

MARC HEARRON
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3600 (phone)
(917) 637-3666 (fax)
mhearron@reprorights.org

JENNA HUDSON
Center for Reproductive Rights
1600 K Street NW
Washington, DC 20002
(202) 628-0286 (phone)
jhudson@reprorights.org

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

**Deleted:** FIRST

# Exhibit 1

Mon, Sep

4:10

✓ You sent a payment to Remy Coeytaux
MD PC

RC

### Remy Coeytaux MD PC

"Aed axes Kendal Garza"

## - $150

Social activity

♥ 0    💬 0

 **Like this business?**
Spread the word to friends and family
you think will like it, too.

**Share profile**

Status

Complete

Payment method

VISA  **Visa Debit**
Debit •••• 1012

Transaction details

September 16, 2024, 9:10 PM · 🔒 Private

Paid to

@RemyCoeytaux

You paid for goods or services. You can get a full
refund if an eligible purchase isn't what you paid for.

# Exhibit 2



# Exhibit 3

 

**Code:** Select Code ⌄  **Section:** 1798.300  Search ⓘ

Up^     Add To My Favorites

**CIVIL CODE - CIV**
  **DIVISION 3. OBLIGATIONS [1427 - 3273.91]** *( Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14. )*
    **PART 4. OBLIGATIONS ARISING FROM PARTICULAR TRANSACTIONS [1738 - 3273.91]** *( Part 4 enacted 1872. )*

**TITLE 1.81.7. Reproductive and Gender-Affirming Health Care Services [1798.300 - 1798.308]** *( Title 1.81.7 added by Stats. 2023, Ch. 260, Sec. 6. )*

**1798.300.**  As used in this title, the following definitions apply:

(a) "Abusive litigation" means litigation or other legal action to deter, prevent, sanction, or punish a person engaging in legally protected health care activity by either of the following:

(1) Filing or prosecuting an action in a state other than California where liability, in whole or part, directly or indirectly, is based on a legally protected health care activity that was legal in the state in which it occurred, including an action in which liability is based on a theory of vicarious, joint, or several liability.

(2) Attempting to enforce an order or judgment issued in connection with an action described in paragraph (1) by a party to that action or a person acting on behalf of a party to that action. An action shall be considered to be based on conduct that was legal in the state in which it occurred if a part of an act or omission involved in the course of conduct that forms the basis for liability in the action occurs or is initiated in a state in which the health care was legal, whether or not the act or omission is alleged or included in a pleading or other filing in the lawsuit.

(b) "Aggrieved person, provider, or other entity" includes, but is not limited to, a person who resides in California, a business or entity doing business in the state or located in the state, a health care service plan, a health insurer, a person or entity that provided a legally protected health care activity in California, a person who received a legally protected health care activity from a provider licensed in California, a person or entity that is licensed in California to provide a legally protected health care activity, including a provider, clinic, or a person who assisted a person or entity that received or provided a legally protected health care activity in California.

(c) "Gender-affirming health care services" and "gender-affirming mental health care services" have the same meaning as defined in paragraph (3) of subdivision (b) of Section 16010.2 of the Welfare and Institutions Code.

(d) (1) "Legally protected health care activity" means any of the following:

(A) The exercise and enjoyment, or attempted exercise and enjoyment, by a person of rights to reproductive health care services, gender-affirming health care services, or gender-affirming mental health care services secured by the Constitution or laws of California or the provision by a health care service plan contract or a policy, or a certificate of health insurance, that provides for such services.

(B) An act or omission undertaken to aid or encourage, or attempt to aid or encourage, a person in the exercise and enjoyment or attempted exercise and enjoyment of rights to reproductive health care services, gender-affirming health care services, or gender-affirming mental health care services secured by the Constitution or laws of California.

(C) The provision of reproductive health care services, gender-affirming health care services, or gender-affirming mental health care services by a person duly licensed under the laws of California or the coverage of, and reimbursement for, such services or care by a health care service plan or a health insurer, if the service or care is lawful under the laws of California, regardless of the patient's location.

(2) "Legally protected health care activity" does not include any activity that would be deemed unprofessional

conduct or that would violate antidiscrimination laws of California.

(e) "Reproductive health care services" means and includes all services, care, or products of a medical, surgical, psychiatric, therapeutic, diagnostic, mental health, behavioral health, preventative, rehabilitative, supportive, consultative, referral, prescribing, or dispensing nature relating to the human reproductive system provided in accordance with the constitution and laws of this state, whether provided in person or by means of telehealth services which includes, but is not limited to, all services, care, and products relating to pregnancy, the termination of a pregnancy, assisted reproduction, or contraception.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.301.**  Reproductive health care services, gender-affirming health care services, and gender-affirming mental health care services are rights secured by the Constitution and laws of California. Interference with these rights, whether or not under the color of law, is against the public policy of California.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.302.**  A public act or record of a foreign jurisdiction that prohibits, criminalizes, sanctions, authorizes a person to bring a civil action against, or otherwise interferes with a person, provider, or other entity in California that seeks, receives, causes, aids in access to, aids, abets, provides, or attempts or intends to seek, receive, cause, aid in access to, aid, abet, or provide, reproductive health care services, gender-affirming health care services, or gender-affirming mental health care services shall be an interference with the exercise and enjoyment of the rights secured by the Constitution and laws of California and shall be a violation of the public policy of California.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.303.**  If a person, whether or not acting under color of law, engages or attempts to engage in abusive litigation that infringes on or interferes with, or attempts to infringe on or interfere with, a legally protected health care activity, then an aggrieved person, provider, carrier, or other entity, including a defendant in the abusive litigation, may institute a civil action for injunctive, monetary, or other appropriate relief within three years after the cause of action accrues.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.304.**  An aggrieved person, provider, or other entity, including a defendant in abusive litigation, may move to modify or quash a subpoena issued in connection with abusive litigation on the grounds that the subpoena is unreasonable, oppressive, or inconsistent with the public policy of California.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.305.**  If the court finds for the petitioner in an action authorized by Section 1798.303, recovery shall be in the amount of three times the amount of actual damages, which shall include damages for the amount of a judgment issued in connection with an abusive litigation, and any other expenses, costs, or reasonable attorney's fees incurred in connection with the abusive litigation.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.306.**  (a) A court may exercise jurisdiction over a person in an action authorized by Section 1798.303 if any of the following apply:

(1) Personal jurisdiction is found under Section 410.10 of the Code of Civil Procedure.

(2) The person has commenced an action in a court in California and, during the pendency of that action or an appeal therefrom, a summons and complaint is served on the person or the attorney appearing on the person's behalf in that action or as otherwise permitted by law.

(3) The exercise of jurisdiction is permitted under the Constitution of the United States.

(b) This section does not apply to a lawsuit or judgment entered in another state that is based on conduct for which a cause of action exists under the laws of California, including a contract, tort, common law, or statutory claim.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.307.** Notwithstanding any other law, the laws of California shall govern in a case or controversy heard in California related to reproductive health care services, gender-affirming health care services, or gender-affirming mental health care services, except as may be required by federal law.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

**1798.308.** This title shall not be construed to provide jurisdiction over a California resident in an out-of-state forum when the California resident has not availed themselves of that forum.

*(Added by Stats. 2023, Ch. 260, Sec. 6. (SB 345) Effective January 1, 2024.)*

# Exhibit 4



Texas Constitution and Statutes

---

ℹ **Site Information** ⌄

**Search Options** ⌄

**Texas Constitution and Statutes** ⌄

---

Select Code ▾

HEALTH AND SAFETY CODE

TITLE 2. HEALTH ▾

SUBTITLE H. PUBLIC HEALTH PROVISIONS ▾

CHAPTER 171A.  ABORTION-INDUCING DRUGS

SUBCHAPTER A.  GENERAL PROVISIONS

**Sec. 171A.001.  DEFINITIONS.**  In this chapter:
(1)  "Abortion" has the meaning assigned by Section 245.002.
(2)  "Abortion-inducing drug" has the meaning assigned by Section 171.061.
(3)  "Delivery network company," "delivery person," "digital network," "digitally prearranged delivery," "digitally prearranged ride," "driver," and "transportation network company" have the meanings assigned by Section 2402.001, Occupations Code.
(4)  "Health care facility" has the meaning assigned by Section 108.002, except the term does not include a hospital.
(5)  "Health care provider" means an individual who is licensed, certified, or otherwise authorized by this state to diagnose, prevent, alleviate, or cure a human illness or injury.  The term does not include a physician.
(6)  "Hospital" means:
(A)  a hospital licensed under Chapter 241 or 577; or
(B)  a hospital owned, maintained, or operated by this state.
(7)  "Medical emergency" means a condition described by Section

170A.002(b)(2).

(8)  "Physician" means an individual licensed to practice medicine in this state, including a medical doctor and a doctor of osteopathic medicine.

(9)  "Physician group" means an entity, including an entity described in the definition of "physician" under Section 74.001, Civil Practice and Remedies Code, that is formed by a physician or group of physicians to provide medical services.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


**Sec. 171A.002.  APPLICABILITY AND CONSTRUCTION OF CHAPTER.**  (a)  This chapter does not apply to and a civil action under this chapter may not be brought against:

(1)  a hospital;

(2)  a health care facility licensed, owned, maintained, or operated by this state;

(3)  a health care provider, other than a provider against whom a qui tam action may be brought in accordance with Section 171A.101(d)(8);

(4)  a physician, other than a physician against whom a qui tam action may be brought in accordance with Section 171A.101(d)(8);

(5)  a physician group;

(6)  an Internet service provider or the provider's affiliates or subsidiaries;

(7)  an Internet search engine;

(8)  a cloud service provider solely providing access or connection to or from an Internet website or other information or content on the Internet or on a facility, system, or network that is not under the provider's control, including transmission, downloading, intermediate storage, access software, or other services; or

(9)  a person who manufactures, distributes, mails, transports, delivers, prescribes, provides, or possesses abortion-inducing drugs in this state solely for one or more of the following purposes:

(A)  treating a medical emergency;

(B)  removing an ectopic pregnancy;

(C)  removing a dead, unborn child whose death was caused by spontaneous abortion; or

(D)  a purpose that does not include performing, inducing, attempting, or assisting an abortion, other than an abortion performed in response to a medical emergency.

(b)  This chapter may not be construed to require the actual performance, inducement, or attempted performance of an abortion in order for a person to bring a civil action authorized by this chapter.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


SUBCHAPTER B.  PROTECTION FROM ABORTION-INDUCING DRUGS

**Sec. 171A.051.  PROHIBITIONS RELATED TO ABORTION-INDUCING DRUGS.**  (a)  Except as provided by Subsection (b) or Section 171A.002, a person may not:

(1)  manufacture or distribute an abortion-inducing drug in this state; or

(2)  mail, transport, deliver, prescribe, or provide an abortion-inducing drug in any manner to or from any person or location in this state.

(b)  Subsection (a) does not prohibit:

(1)  speech or conduct protected by the First Amendment to the United States Constitution, as made applicable to the states through the United States Supreme Court's interpretation of the Fourteenth Amendment to the United States Constitution, or protected by Section 8, Article I, Texas Constitution;

(2)  conduct a pregnant woman takes in the course of aborting or attempting to abort the woman's unborn child;

(3)  the manufacture, distribution, mailing, transport, delivery, prescribing, provision, or possession of an abortion-inducing drug solely for one or more of the purposes described by Section 171A.002(a)(9); or

(4)  conduct a person takes under the direction of a federal agency, contractor, or employee to carry out a duty under federal law, if prohibiting that conduct would violate the doctrine of preemption or intergovernmental immunity.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.

**Sec. 171A.052.  EXCLUSIVE ENFORCEMENT; EFFECT OF OTHER LAW.**  (a)  This subchapter may be enforced only through a qui tam action brought under Subchapter C.

(b)  No other direct or indirect enforcement of this subchapter may be taken or threatened by this state, a political subdivision of this state, a district or county attorney, or any officer or employee of this state or a political subdivision of this state against any person, by any means whatsoever, except as provided in Subchapter C.

(c)  This section does not preclude or limit the enforcement of any other law or regulation against conduct that is independently prohibited by the other law or regulation and that would remain prohibited by the other law or regulation in the absence of this subchapter.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


SUBCHAPTER C.  QUI TAM ENFORCEMENT OF PROHIBITIONS RELATING TO ABORTION-INDUCING DRUGS

**Sec. 171A.101.  QUI TAM ACTION AUTHORIZED.**  (a)  A person, other than this state, a political subdivision of this state, or an officer or employee of this state or a political subdivision of this state, has standing to bring and may bring a qui tam action against a person who:

(1)  violates Section 171A.051; or

(2)  intends to violate Section 171A.051.

(b)  An action brought under this section must be brought in the name of the qui tam relator, who is an assignee of this state's claim for relief. Notwithstanding any other law, the transfer of this state's claim to the qui tam relator is absolute, with the state retaining no interest in the subject matter of the claim.

(c)  A qui tam relator may not bring an action under this section if the action is preempted by 47 U.S.C. Section 230(c).

(d)  A qui tam action may not be brought under this section:

(1)  against a woman for using, obtaining, or seeking to obtain abortion-inducing drugs to abort or attempt to abort her unborn child;

(2)  against a person acting under the direction of a federal agency, contractor, or employee who is carrying out a duty under federal law if the

imposition of liability would violate the doctrine of preemption or intergovernmental immunity;

(3)  by any person who:

(A)  impregnated a woman through conduct constituting sexual assault under Section 22.011, Penal Code, or aggravated sexual assault under Section 22.021, Penal Code;

(B)  committed an offense for which an affirmative finding of family violence was made under Article 42.013, Code of Criminal Procedure;

(C)  provided an abortion-inducing drug to a pregnant woman for the purpose of performing, inducing, or attempting an abortion without the woman's consent or knowledge;

(D)  has been convicted of an offense under Section 42.072, Penal Code; or

(E)  acts in concert or participation with a person described by this subdivision;

(4)  against a transportation network company or a driver for using a transportation network company's digital network to provide a digitally prearranged ride;

(5)  against a delivery network company or a delivery person for using a delivery network company's digital network to provide a digitally prearranged delivery;

(6)  against an air carrier conducting domestic or flag operations under 14 C.F.R. Part 121 or a foreign air carrier conducting scheduled operations under 14 C.F.R. Part 129;

(7)  against a person to whom this chapter does not apply and against whom a civil action under this chapter may not be brought under Section 171A.002(a);

(8)  against a health care provider or physician, unless the qui tam relator pleads and proves that the provider or physician engaged in conduct constituting a violation of Section 171A.051 while located outside this state; or

(9)  against a pharmaceutical manufacturer, pharmaceutical distributor, or common carrier, unless the qui tam relator pleads and proves that the defendant failed to adopt and implement a policy to not distribute, mail, transport, deliver, provide, or possess abortion-inducing drugs other than for one or more of the purposes described by Section 171A.002(a)(9).

(e)  Notwithstanding any other law, including rules of civil procedure adopted under Chapter 26, Civil Practice and Remedies Code, an action brought under this section may not be litigated on behalf of a claimant class or a

defendant class, and a court may not certify a class in the action.

(f)  In an action brought under this chapter, a qui tam relator or a defendant against whom an action is brought under this section may not, without the consent of the person to whom the information belongs, publicly disclose or improperly obtain:

(1)  any personally identifiable information of a pregnant woman who sought or obtained an abortion-inducing drug from a defendant against whom a qui tam action is brought under this section, including any written, electronic, audio, or visual document or media that identifies the pregnant woman;

(2)  any information protected from public disclosure under the Health Insurance Portability and Accountability Act of 1996 (Pub. L. No. 104-191) and regulations adopted under that Act; or

(3)  any personal data of a pregnant woman who sought or obtained an abortion-inducing drug from a defendant against whom a qui tam action is brought under this section that is protected from public disclosure under federal or state law.

(g)  Notwithstanding any other law, a court may not order in response to the filing of a petition by a qui tam relator the taking of a deposition under Rule 202, Texas Rules of Civil Procedure, of a woman who is the subject of a violation of Section 171A.051 unless the woman consents to the deposition.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


**Sec. 171A.102.  DEFENSES.**  (a)  It is an affirmative defense to an action brought under Section 171A.101 that the defendant:

(1)  was unaware the defendant was engaged in the conduct prohibited by Section 171A.051; and

(2)  took reasonable precautions to ensure the defendant would not violate Section 171A.051.

(b)  It is an affirmative defense to an action brought under Section 171A.101 that:

(1)  the imposition of civil liability on the defendant will violate the defendant's rights under federal law, including the United States Constitution;

(2)  the defendant:

(A)  has standing to assert the rights of a third party under

the tests for third-party standing established by the United States Supreme Court; and

(B)  demonstrates that the imposition of civil liability on the defendant will violate the third party's rights under federal law, including the United States Constitution;

(3)  the imposition of civil liability on the defendant will violate the defendant's rights under the Texas Constitution; or

(4)  the imposition of civil liability on the defendant will violate limits on extraterritorial jurisdiction imposed by the United States Constitution or the Texas Constitution.

(c)  The defendant has the burden of proving an affirmative defense under this section by a preponderance of the evidence.

(d)  The following are not defenses to an action brought under Section 171A.101:

(1)  a defendant's ignorance or mistake of law, including a defendant's mistaken belief that the requirements or provisions of this chapter are unconstitutional or were unconstitutional;

(2)  a defendant's reliance on a state or federal court decision that is not binding on the court in which the action has been brought;

(3)  a defendant's reliance on a federal agency rule or action that has been repealed, superseded, or declared invalid or unconstitutional, even if the federal agency rule or action had not been repealed, superseded, or declared invalid or unconstitutional when the cause of action accrued;

(4)  the laws of another state or jurisdiction, including an abortion shield law, unless the Texas Constitution or federal law compels the court to enforce that law;

(5)  non-mutual issue preclusion or non-mutual claim preclusion;

(6)  sovereign immunity, governmental immunity, or official immunity, other than sovereign immunity, governmental immunity, or official immunity applicable to:

(A)  a hospital owned, maintained, or operated by this state that facilitates the availability of or makes available abortion-inducing drugs solely for one or more of the purposes described by Section 171A.002(a)(9);

(B)  a political subdivision of this state, including a hospital district, that facilitates the availability of or makes available abortion-inducing drugs solely for one or more of the purposes described by Section 171A.002(a)(9); or

(C)  a physician or health care professional employed by a

hospital owned or operated by this state or a political subdivision of this state, including a hospital district, acting within the scope of the physician's or professional's employment who prescribes, distributes, administers, or otherwise makes available abortion-inducing drugs solely for one or more of the purposes described by Section 171A.002(a)(9);

(7)  a claim that the enforcement of this chapter or the imposition of civil liability against the defendant will violate the constitutional or federally protected rights of third parties, except as provided by Subsection (b); or

(8)  consent to the abortion by the claimant or the unborn child's mother.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


Sec. 171A.103.  STATUTE OF LIMITATIONS.  A person may bring an action under Section 171A.101 not later than the sixth anniversary of the date the cause of action accrues.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


Sec. 171A.104.  REMEDIES.  (a)  Notwithstanding any other law and except as provided by Subsection (b), if a qui tam relator prevails in an action brought under Section 171A.101, the court shall award to the relator:

(1)  injunctive relief sufficient to prevent the defendant from violating Section 171A.051;

(2)  an amount of not less than $100,000 for each violation of Section 171A.051, to be allocated in accordance with Subsection (b); and

(3)  costs and reasonable attorney's fees.

(b)  In awarding the amount described by Subsection (a)(2), the court shall ensure that:

(1)  the qui tam relator receives the entire amount awarded under Subsection (a)(2) for an action in which the relator is:

(A)  a woman who was pregnant at the time the woman obtained or received an abortion-inducing drug that was manufactured, distributed, mailed, transported, delivered, prescribed, provided, or possessed in violation of Section 171A.051; or

(B)  the father, sibling, or grandparent of the unborn child with which the woman described by Paragraph (A) was pregnant at the time the woman obtained or received the abortion-inducing drug; and

(2)  for an action in which the qui tam relator is a person other than a person described by Subdivision (1):

(A)  the relator receives $10,000 of the total amount awarded under Subsection (a)(2); and

(B)  the remainder of the amount awarded under Subsection (a)(2) is held in trust by the relator for the benefit of a charitable organization designated by the relator, except that the relator may not designate a charitable organization under this paragraph from which the relator or any of the relator's family members receives a salary, stipend, or any type of remuneration or financial benefit.

(c)  A court may not award relief under Subsection (a)(2) or (3) in response to a violation of Section 171A.051 if the defendant demonstrates that:

(1)  a court previously ordered the defendant to pay an amount under Subsection (a)(2) in another action for that particular violation; and

(2)  the court order described by Subdivision (1) has not been vacated, reversed, or overturned.

(d)  A court may not award costs or attorney's fees under the Texas Rules of Civil Procedure or any other rule adopted by the supreme court under Section 22.004, Government Code, to a defendant against whom an action is brought under Section 171A.101.

(e)  Subsection (d) does not preclude a court from:

(1)  awarding sanctions under Chapter 10, Civil Practice and Remedies Code; or

(2)  sanctioning a litigant or attorney for frivolous, malicious, or bad-faith conduct.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


Sec. 171A.105.  COORDINATED ENFORCEMENT PROHIBITED.  (a) This state, a political subdivision of this state, or an officer or employee of this state or a political subdivision of this state may not:

(1)  act in concert or participation with a qui tam relator bringing an action under Section 171A.101;

(2)  establish or attempt to establish any type of agency or fiduciary relationship with a qui tam relator bringing an action under Section 171A.101;

(3)  attempt to control or influence a person's decision to bring an action under Section 171A.101 or that person's conduct of the litigation; or

(4)  intervene in an action brought under Section 171A.101.

(b)  This section does not prohibit this state, a political subdivision of this state, or an officer or employee of this state or a political subdivision of this state from filing an amicus curiae brief in an action brought under Section 171A.101 if this state, the political subdivision, the officer, or the employee does not act in concert or participation with the qui tam relator.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


**Sec. 171A.106.  JURISDICTION; APPLICABILITY OF STATE LAW.** (a)  Notwithstanding any other law, including Subchapter C, Chapter 17, Civil Practice and Remedies Code, the courts of this state have personal jurisdiction over a defendant sued under Section 171A.101 to the maximum extent permitted by the Fourteenth Amendment to the United States Constitution, and the defendant may be served outside this state.

(b)  Notwithstanding any other law, the law of this state applies to an action brought under Section 171A.101 to the maximum extent permitted by the Texas Constitution and federal law, including the United States Constitution.

(c)  Notwithstanding any other law, any contractual provision that requires or purports to require application of the laws of a different jurisdiction, or that requires or purports to require a qui tam action under Section 171A.101 to be litigated in a particular forum, is void based on this state's public policy and is not enforceable in any court.

(d)  Notwithstanding any other law, Chapter 27, Civil Practice and Remedies Code, does not apply to an action brought under Section 171A.101.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


**Sec. 171A.107.  APPEALS.**  The Fifteenth Court of Appeals has exclusive intermediate appellate jurisdiction over any appeal or original

proceeding arising out of an action brought under Section 171A.101 in the courts of this state.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


**Sec. 171A.108.  APPLICATION OF OTHER LAW.**  Notwithstanding any other law, a court may not apply the law of another state or jurisdiction to any qui tam action brought under Section 171A.101 unless the Texas Constitution or federal law compels the court to apply that law.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.


SUBCHAPTER D.  PROTECTION FROM CERTAIN COUNTERACTIONS

**Sec. 171A.151.  EFFECT OF CLAWBACK PROVISIONS.**  (a)  For purposes of this section, the term "clawback provision" refers to any law of another state or jurisdiction that authorizes the bringing of a civil action against a person for:
(1)  bringing or engaging in an action authorized by this chapter, including Subsection (f);
(2)  bringing or engaging in an action that alleges a violation of Section 171A.051;
(3)  attempting, intending, or threatening to bring or engage in an action described by Subdivision (1) or (2); or
(4)  providing legal representation or any type of assistance to a person who brings or engages in an action described by Subdivision (1) or (2).
(b)  Notwithstanding any other law and except as otherwise provided by federal law or the Texas Constitution, the laws of this state apply to:
(1)  conduct described by Subsection (a);
(2)  an action brought against a person for engaging in conduct described by Subsection (a);
(3)  an action brought under a clawback provision against a resident of this state; and
(4)  an action brought under Subsection (f).
(c)  Notwithstanding any other law, in an action described by Subsection

(a)(1) or (2), the court shall, on request, issue a temporary, preliminary, or permanent injunction that restrains each defendant in the action, each person in privity with the defendant, and each person with whom the defendant is in active concert or participation from:

(1)  bringing an action under any clawback provision against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor; and

(2)  continuing to litigate an action under any clawback provision that has been brought against a claimant or prosecutor, a person in privity with the claimant or prosecutor, or a person providing legal representation or any type of assistance to the claimant or prosecutor.

(d)  Notwithstanding any other law, the doctrines of res judicata and collateral estoppel preclude a defendant against whom a judgment is entered in an action described by Subsection (a)(1) or (2) and each person in privity with the defendant from litigating or relitigating any claim or issue under any clawback provision against a claimant, prosecutor, or person in privity with the claimant or prosecutor that was raised or could have been raised as a claim, cross-claim, counterclaim, or affirmative defense under the federal or this state's rules of civil procedure.

(e)  Notwithstanding any other law, a court of this state may not enforce an out-of-state judgment obtained in an action brought under a clawback provision unless federal law or the Texas Constitution requires the court to enforce the judgment.

(f)  Notwithstanding any other law, if an action is brought or judgment is entered against a person under a clawback provision based wholly or partly on the person's decision to engage in conduct described by Subsection (a), that person is entitled to injunctive relief and damages from any person who brought the action or obtained the judgment or who sought to enforce the judgment. Notwithstanding any other law, the relief described by this subsection must include:

(1)  compensatory damages, including money damages in an amount equal to the judgment damages and costs, expenses, and reasonable attorney's fees spent in defending the action;

(2)  costs, expenses, and reasonable attorney's fees incurred in bringing an action under this subsection;

(3)  additional amounts consisting of the greater of:

(A)  twice the sum of the damages, costs, expenses, and fees

described by Subdivisions (1) and (2); or

(B) $100,000; and

(4) injunctive relief that restrains each person who brought the action under the clawback provision, each person in privity with the person, and each person acting in concert or participation with the person from:

(A) bringing further actions under any clawback provision against the person against whom the action was brought, each person in privity with the person, or any person providing legal representation or any type of assistance to the person;

(B) continuing to litigate any actions brought under a clawback provision against the persons described by Paragraph (A); and

(C) enforcing or attempting to enforce any judgment obtained in any actions brought under a clawback provision against the persons described by Paragraph (A).

(g) It is not a defense to an action brought under Subsection (f) that:

(1) the claimant failed to seek recovery under Subsection (f) in an action brought against the claimant under a clawback provision; or

(2) a court in a preceding action brought against the claimant declined to recognize or enforce Subsection (f) or held any provision of that subsection invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.

(h) Notwithstanding any other law, Chapter 27, Civil Practice and Remedies Code, does not apply to an action brought under Subsection (f).

(i) The Fifteenth Court of Appeals has exclusive intermediate appellate jurisdiction over any appeal or original proceeding arising out of a civil action brought under Subsection (f) in the courts of this state.

Added by Acts 2025, 89th Leg., 2nd C.S., Ch. 5 (H.B. 7), Sec. 2, eff. December 4, 2025.